C. Adam Buck (023128)
**RADIX LAW**
15205 N. Kierland Blvd., Suite 200
Scottsdale, AZ 85254
buck@radixlaw.com
(602) 606-9300
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Xfinity Mobile, et al.,<br><br>Plaintiffs,<br>v.<br><br>GlobalguruTech, LLC, et al.<br><br>Defendants. | Case No. 2:22-cv-01950-SMB<br><br>**DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**(Oral Argument Requested)** |

Defendants Global Guru Tech, LLC d/b/a SellLocked, Guru Holdings LLC, and Jakob Zahara hereby move the Court to dismiss Plaintiffs' Complaint for Damages and Injunctive Relief (the "Complaint"). (Doc. 1). Defendants are moving to dismiss all twelve causes of action, but for organizational purposes, Defendants will discuss these claims out of order.

Plaintiffs' Common Law Fraud and Fraudulent Misrepresentation claim (Count Six) fails because Plaintiffs failed to plead fraud with particularity. Plaintiffs' Civil Conspiracy claim (Count Four) fails because there is only one individual named in the complaint and a person cannot have a conspiracy with himself. Plaintiffs' Tortious Interference with Contractual Relations (Count Three) and Tortious Interference with

Business Relationships and Prospective Advantage (Count Two) should be dismissed because 1) it is not alleged that Jakob Zahara knew of the terms of the Xfinity Customer Agreement and 2) GGT's general advertising on its website cannot constitute intentional interference. Plaintiffs' Trademark Infringement Claims (Counts Ten, Eleven and Twelve) fail because GGT use of the Xfinity logo on its website is permissible under the doctrine of nominative fair use. Plaintiffs' Unfair Competition claim (Count One) and their Unjust Enrichment claim (Count Five) should be dismissed because GGT fairly negotiates a price for each phone and pays the agreed-upon amount to the seller. Plaintiffs' Trafficking in Computer Passwords (Count Seven), Unauthorized Access (Count Eight), and Unauthorized Access with Intent to Defraud (Count Nine) should be dismissed because these causes of action contain only threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, there are no specific allegations regarding who illegally obtained any security codes.

## I. INTRODUCTION.

GlobalGuruTech, LLC ("GGT") is in the business of buying cell phones from individuals that are the legal and rightful owners of the device they are seeking to sell and then reselling them for a profit. Plaintiffs' Complaint does not allege that the Defendants purchased any phones directly from Xfinity or from an Xfinity dealer. Plaintiffs Complaint also does not allege that any of the Defendants were a party to any "My Xfinity Mobile Customer Agreement."

## II. LEGAL ARGUMENT

### A. Legal Standard

In a Motion to Dismiss based on Rule 12(b)(6), "the tenet that a court must accept as true all of the allegations contained in a complaint, is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. The Court must analyze each cause of

action in Plaintiffs' Complaint to determine "whether the complaint's well-pleaded facts are sufficient to state a claim." *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1005 (9th Cir. 2010). If not, the claim should be dismissed.

To survive a Fed. R. Civ. P. ("Rule") 12(b)(6) motion for failure to state a claim, the Complaint must contain specific factual allegations, not merely legal conclusions. *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010); *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). After eliminating such unsupported legal conclusions, the Court identifies "'well-pleaded factual allegations,' which we assume to be true, 'and then determine whether they plausibly give rise to an entitlement to relief.'" *Telesaurus*, 623 F.3d at 1003, quoting *Ashcroft, 1*29 S.Ct. at 1950.

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft*, 29 S. Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. "*The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* quoting *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007).*

B. **Plaintiffs' Common Law Fraud and Fraudulent Misrepresentation claim (Count Six) should be dismissed because they failed to plead fraud with particularity**.

Fed. R. Civ. P. 9(b) states:

> **(b) Fraud or Mistake; Conditions of Mind**. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

The allegations of fraud in the Complaint must "be specific enough to give defendants notice of the particular misconduct...so that they can defend against the charge and not just deny that they have done anything wrong." *Cavan v. Maron*, 182 F. Supp. 3d 954, 964 (D. Ariz. 2016) quoting *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir.2003). "The allegations must include 'the who, what, when, where, and how' of the misconduct charged and 'must set forth more than the neutral facts necessary to identify the transaction.'" Id. "the plaintiff must set forth what is false or misleading about a statement, and why it is false," *Id*.

The Complaint alleges:

> As part of their Scheme, each Defendant, directly or indirectly through co-conspirators, regularly and systematically misrepresent to Xfinity Mobile that the Phone orders are authorized, that the identifying information being provided is legitimate and authorized, and/or that the Phones are being purchased by a legitimate customer for use in accordance with the governing Terms and Conditions. (Complaint, ¶114)

The Complaint does not allege what misrepresentations were made, which one of the Defendants allegedly made the statements, who allegedly ordered phones directly from Xfinity, when the misrepresentations were made or how they were made.

Paragraph 115 of the Complaint contains a general conclusion that each Defendant "defrauded Xfinity Mobile to acquire XM Phones." Again, there is no specificity on who defrauded, who they spoke to at Xfinity, when these alleged misrepresentations were made and most importantly, how Xfinity was defrauded by GGT, Guru Holdings, LLC or Jakob Zahara. Plaintiffs' Complaint contains a significant number of *general* allegations of Plaintiffs' alleged cell phone schemes, but the Complaint never specifically says who did the illegal conduct or who made the misrepresentations. The Complaint merely refers to the Defendants collectively as a group or generally to some unnamed co-conspirators. The Complaint alleges generally that Defendants "are fraudulently acquiring and reselling XM Phones in bulk." (Complaint, ¶40) But there are no specific allegations regarding how these phones are

allegedly fraudulently acquired. The Complaint shows that GGT acquired XM Phones from Plaintiffs' private investigator through arms-length transactions at freely negotiated prices. Those allegations do not support a fraud claim. Plaintiffs allege that the "new Phones acquired through theft or fraud that are not shipped overseas are often sold in bulk domestically. . ." (Complaint, ¶41) But there are no specific factual allegations that Defendants are stealing XM Phones. There are also no specific allegations how Defendants, or any alleged co-conspirator is fraudulently acquiring phones from Xfinity. If Jakob Zahara did not make fraudulent misrepresentations, then who did? Plaintiffs have not named a single "co-conspirator" that is involved in this alleged scheme. When did they make the misrepresentations? How did they make the misrepresentations and to whom did they make the misrepresentations? Plaintiffs' Complaint is filled with general conclusory statements, but it is entirely lacking in the specificity required by Rule 9(b). So, Count Six (Common Law Fraud and Fraudulent Misrepresentation) should be dismissed.

**C. Plaintiffs' Civil Conspiracy claim (Count Four) should be dismissed because there is only one individual named in the complaint and a person cannot have a conspiracy with himself.**

In the Complaint, Plaintiffs alleged that Jakob Zahara is the sole owner of both GGT and Guru Holdings, LLC. Paragraph 19 states "Defendant Jakob Zahara ("Zahara") is an individual residing in Fountain Hills, Arizona. Upon information and belief, he is the owner and manager of SellLocked [GGT] and Guru Holdings, and is personally engaged in, and helps facilitate, the improper conduct described herein." There are no allegations that anyone other than Jakob Zahara is involved in any way in GGT or Guru Holdings, LLC. Although, the Complaint uses the word "co-conspirators" at least 52 times, it does not provide any details whatsoever regarding who the alleged co-conspirators are. There are no well-pleaded factual allegations to support Plaintiffs' Civil Conspiracy claim (Count Four).

Paragraph 104 states in part "An agreement and conspiracy existed and continues to exist between and among Defendants and other co-conspirators. . ." Again, this is a conclusory statement with no facts alleged to support it. Plaintiffs' Civil Conspiracy claim (Count Four) should be dismissed because it only contains "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements...." *Ashcroft v. Iqbal, 556 U.S. at 678.*

"Under Arizona law, civil conspiracy requires that 'two or more individuals agree and thereupon accomplish an underlying tort which the alleged conspirators agreed to commit.'" *Health Indus. Bus. Commc'ns Council Inc. v. Animal Health Inst.*, 481 F. Supp. 3d 941, 959 (D. Ariz. 2020) quoting *Wojtunik v. Kealy*, 394 F. Supp. 2d 1149, 1172 (D. Ariz. 2005). Plaintiffs' Complaint only alleges wrongdoing by one individual, Jakob Zahara, and Jakob Zahara cannot have a civil conspiracy with himself. Because Plaintiffs failed to allege any improper conduct by any other individual, Plaintiffs' Civil Conspiracy claim (Count Four) must be dismissed.

Furthermore, "[a] civil conspiracy is not an independent tort, but rather 'requires an underlying tort which the alleged conspirators agreed to commit.'" *Id*. quoting *Baker ex rel. Hall Brake Supply, Inc. v. Stewart Title & Trust of Phoenix, Inc.*, 197 Ariz. 535, 545, 5 P.3d 249 (Ct. App. 2000). So, if the tort claims in the Complaint are dismissed, then so should the Civil Conspiracy claim.

**D. Plaintiffs' Tortious Interference with Contractual Relations (Count Three) and Tortious Interference with Business Relationships and Prospective Advantage (Count Two) should be dismissed because 1) it is not alleged that Jakob Zahara knew of the terms of the Xfinity Customer Agreement and 2) GGT's general advertising on its website cannot constitute intentional interference.**

Count Three of Plaintiffs' Complaint is Tortious Interference with Contractual Relations. "Tort liability may be imposed upon a defendant who intentionally and improperly interferes with the plaintiff's rights under a contract with another if the interference causes the plaintiff to lose a right under the contract." *Riley v. City of*

*Prescott, Ariz.*, No. CV-11-08123-PCT-JAT, 2014 WL 641632, at *13 (D. Ariz. Feb. 19, 2014), *aff'd*, 647 F. App'x 753 (9th Cir. 2016).

> To plead a prima facie case of intentional interference with contract, the plaintiff must allege: (1) the existence of a valid contractual relationship; (2) knowledge of the relationship on the part of the interferor; (3) intentional interference inducing or causing a breach; (4) resultant damage to the party whose relationship has been disrupted; and (5) that the defendant acted improperly. *Id*.

Plaintiffs have not alleged any facts that would show that Jakob Zahara knew of the terms of the "My Xfinity Mobile Customer Agreement" that is attached as Exhibit B to Plaintiffs' Complaint. Plaintiffs have not alleged that Defendants ever signed a Customer Agreement. Plaintiffs have not alleged that the individuals GGT bought Xfinity phones from ever provided Defendants with a copy of their Customer Agreement. Instead, Plaintiffs allege that the Customer Agreement is "publicly available on Xfinity Mobile's website at https://www.xfinity.com/mobile/policies/customer-agreement and https://www.xfinity.com/mobile/policies/device-payment-plan-agreement." (Complaint, ¶38). However, this allegation is insufficient to show that Defendants knew of the terms of the Xfinity Customer Agreement.

To be subject to liability, Defendants must have knowledge of the contract with which they are interfering and of the fact that they are interfering with the performance of the contract. See Restatement (Second) of Torts § 766 (1979). Here, Plaintiffs have not alleged that Jakob Zahara had any knowledge of the existence or terms of the phone seller's contract with Xfinity. Because Plaintiffs have not alleged facts showing that Jakob Zahara knew the terms of each phone seller's Customer Agreement with Xfinity, Count Three should be dismissed.

Plaintiffs have also failed to provide any factual allegations that Defendants intentionally interfered with a customer's contract with Xfinity. Plaintiffs have alleged the following in the Complaint:

- "Defendants own and operate the website www.selllocked.com and have been denominated the "#1 Rated Blacklisted Phone Buyer Online" (Complaint, ¶49)
- "Defendants advertise themselves as 'one of the few buyers who purchase locked and blacklisted iPhones.'" (Complaint, ¶50) Plaintiffs even included as Exhibit D to the Complaint, a sample advertisement on SellMyCellPhones.com.
- "Defendants advertise that they are trafficking phones that have been "activation locked," are still owned by a service provider under a finance contract or are blocked, by anyone for any reason." (Complaint ¶52).
- Defendants "openly solicit for the purchase of new, factory sealed phones that are financed, blacklisted/blocked, activation locked, or unlocked (which includes previously locked provider phones) on their website www.selllocked.com.

In other words, the only alleged intentional interference of Defendants with Xfinity and their customers is that GGT generally advertises on its website that it will buy new, factory sealed phones that are financed, blacklisted/blocked, activation locked, or unlocked phones. But general advertisement cannot constitute intentional interference. Plaintiffs have not alleged (nor can they allege) that Defendants intentionally seek out and contact Xfinity customers. Rather, Defendants advertise and then wait for interested people to contact them. Plaintiffs have not alleged (nor can they allege) that Defendants use intimidation or persuasion to get Xfinity customers to sell them their phones. GGT is simply advertising its services to the public through its website. Under the circumstances, any interference with the contract between Xfinity and its customer would be a "minor and incidental consequence and so far removed from the defendant's objective that as against the plaintiff the interference may be found to be not improper." Restatement (Second) of Torts § 766 (1979). GGT, through its website, is simply offering to purchase phones. This type of conduct is not tortious. Id. GGT advertises its services generally on the internet and if they are interested, phone sellers reach out to GGT through the GGT website to sell their phone. GGT is *not* offering to replace the wireless services people are getting through Xfinity. GGT is *not*

trying to induce people to breach their contracts with Xfinity. In other words, GGT is not saying directly or indirectly "switch to GGT for your wireless services and breach your contract with Xfinity." Other carriers may advertise that but GGT is not a wireless carrier. GGT simply advertises that it buys and sells Xfinity phones. Under the facts alleged, Plaintiffs' Tortious Interference with Contractual Relations (Count Three) and Tortious Interference with Business Relationships and Prospective Advantage (Count Two) should be dismissed.

**E. Plaintiffs' Trademark Infringement Claims (Counts Ten, Eleven and Twelve) should be dismissed because GGT's use of the Xfinity logo on its website is permissible under the doctrine of nominative fair use.**

Counts Ten, Eleven and Twelve all involve alleged trademark infringement. Count Ten is Federal Trademark Infringement. Count Eleven is Federal Common Law Trademark Infringement and False Advertising. And Count Twelve is Contributory Trademark Infringement. But if there is no trademark infringement by Defendants, all three claims would fail. In the Complaint Plaintiffs allege that "Defendants' and/or their co-conspirators" used Xfinity's federally registered marks without authorization in selling or offering for sale XM Phones to downstream customers. (Complaint, ¶156). However, there are no factual allegations that any of the named Defendants actually sell any phones to individual downstream customers. Rather, Plaintiffs allege that Defendants sell the phones in bulk to someone else and the phones are "resold multiple times, usually in larger and larger consolidated lots" and "[u]ltimately, the Phones end up in a foreign country where they can be sold at higher prices than in the U.S." (Complaint, ¶6) So, the Complaint does not allege that any of the named defendants use Xfinity marks in selling the phones to any individuals – only in buying them.

The Complaint generally alleges that "[t]he Scheme also involves the willful infringement of the XFINITY and XFINITY MOBILE trademarks" (Complaint, ¶10) but there are no factual allegations to support that. The only trademark-related allegations made in the Complaint against the named Defendants are that GGT's

website allows the potential phone seller to click on the logo of their wireless carrier and Xfinity is one of the seven options listed. (Complaint, ¶51) The only trademark-related allegation is that Defendants advertise that they will buy Xfinity phones. Plaintiffs do not allege that Defendants advertise that they are an authorized Xfinity dealer.

To establish a trademark infringement claim under section 32 of the Lanham Act or an unfair competition claim under section 43(a) of the Lanham Act, Plaintiff must establish that Defendants are using a mark confusingly similar to a valid, protectable trademark of Plaintiffs. *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999); *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348 (9th Cir.1979). But Defendants use of the mark is permissible under the doctrine of nominative fair use. This doctrine of nominative fair use applies when a third party uses a mark for the purpose of referring to the mark-owner's product or service and creates no likelihood of consumer confusion. *See Adobe Systems Inc. v. Christenson*, 891 F. Supp. 2d 1194, 84 A.L.R. Fed. 2d 587 (D. Nev. 2012). Use of a mark is permissible if 1) the product in question is not readily identifiable without use of the trademark; 2) only so much of the mark or marks are used as is reasonably necessary to identify the product; and 3) the user does nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder. *See Playboy Enterprises, Inc. v. Welles*, 279 F.3d 796, 801 (9th Cir. 2002). "[C]ourts will hold as a matter of law that the original producer does not sponsor or endorse another product that uses his mark in a descriptive manner. *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 306 (9th Cir. 1992). In the Complaint, Plaintiffs allege that Defendants use the Xfinity mark on the GGT website to describe and identify the phone seller's carrier. There is no way for GGT to identify who the phone carrier is without using Xfinity's name. Secondly, GGT only uses as much of the Xfinity mark as is reasonably necessary to identify the individual's carrier. And third, GGT's website does nothing to suggest sponsorship or endorsement by Xfinity.

In *Volkswagenwerk Aktiengesellschaft v. Church,* 411 F.2d 350 (9th Cir.1969), the Ninth Circuit held that Volkswagen could not prevent an automobile repair shop from using the Volkswagen mark. The Court recognized that in "advertising [the repair of Volkswagens, it] would be difficult, if not impossible, for [Church] to avoid altogether the use of the word 'Volkswagen' or its abbreviation 'VW,' which are the normal terms which, to the public at large, signify appellant's cars." *Volkswagenwerk Aktiengesellschaft v. Church*, 411 F.2d 350, 352 (9th Cir.), *supplemented,* 413 F.2d 1126 (9th Cir. 1969). Similarly, in GGT's advertising it would be difficult, if not impossible, to avoid using Xfinity's name, which is a normal term which the public at large uses to identify a particular carrier. As in the *Church* case, GGT does not suggest to customers that it is part of the Xfinity organization or that GGT is an authorized Xfinity dealer. In fact, paragraph 51 of the Complaint shows that alongside the Xfinity logo on GGT's website are the AT&T logo, the Verizon logo, the Sprint logo and the T-Mobile logo. Because the logos of all carriers are used (not just Xfinity's), no reasonable person would believe that GGT was a Xfinity dealer or part of the Xfinity organization. GGT simply uses the Xfinity mark (and the other marks) to identify the types of phones it buys. Therefore, as a matter of law, GGT's use of the Xfinity trademark is not an infringing use.

The Ninth Circuit created a three-part test that must be satisfied to bar a federal trademark claim. In *Adobe Systems Inc. v. Christenson*, 891 F. Supp. 2d 1194, 84 A.L.R. Fed. 2d 587 (D. Nev. 2012), the court found that the developer of computer software could not succeed on its trademark infringement claim against an Internet retailer of that software acquired from third parties because the retailer's limited use of the mark on its website was necessary to identify the software as an item for sale, and it did not create a likelihood that a reasonably prudent purchaser would have believed that the retailer was sponsored or endorsed by the developer. Similarly, in this case, GGT only uses Xfinity marks to refer to the type of cell phone that it buys and sells on its

website. Accordingly, Plaintiffs' trademark infringement claims should be dismissed based on the doctrine of nominative fair use.

**F. Plaintiffs' Unfair Competition claim (Count One) and Unjust Enrichment claim (Count Five) should be dismissed because GGT fairly negotiates a price for each phone and pays the agreed-upon amount to the seller.**

Count One alleges that it is unfair for GGT to unlock Xfinity phones and resell them to others. First, GGT does not unlock phones. But even if they did, it would be permissible. Once GGT fairly negotiates a price with the legal owner of the phone, GGT can do whatever it likes with the phone. GGT is not bound by any of the Terms and Conditions on the Xfinity Customer Agreement. In other words, there is no privity of contract between Xfinity and GGT. "[A] claim for breach of contract requires privity." *Anderson v. Everest Nat. Ins. Co.*, 984 F. Supp. 2d 974, 978 (D. Ariz. 2013); *See Lofts at Fillmore Condo. Ass'n v. Reliance Commercial Constr., Inc.,* 218 Ariz. 574, 190 P.3d 733, 734 ¶ 5 (2008) ("[A]s a general rule only the parties and privies to a contract may enforce it.")

There is also nothing unfair about how GGT acquires its phones. Plaintiffs' own private investigator learned that GGT pays people to purchase their phones. The Complaint alleges the following:

- Xfinity Mobile's undercover investigator visited Defendants' www.selllocked.com website and, through the website's online portal, offered to sell Defendants a brand new, factory sealed, blocklisted Xfinity Mobile iPhone SE, 64 GB device with IMEI 356468108689406. (Complaint, ¶55)
- Defendants offered to purchase the device for $80.00. (Complaint, ¶55)
- Xfinity Mobile's undercover investigator accepted the offer. (Complaint, ¶56)
- The investigator shipped the phone to Defendants. (Complaint, ¶56)

So, Plaintiffs' undercover investigator learned that potential customers contact GGT through its website to sell their phones. GGT then makes an offer to purchase the phone that the individual can either accept or reject. If accepted, the individual ships the

phone to GGT and GGT pays the individual the agreed-upon amount. These allegations do not support an unjust enrichment claim or an unfair competition claim. GGT is not unjustly enriched. To the contrary, GGT negotiates a purchase price with each individual and then pays them the agreed-upon price for the phone. Finally, as explained in Section E above, there is nothing improper about GGT's use of the Xfinity logo on its website under the doctrine of nominal fair use. Accordingly, Plaintiffs' Unfair Competition claim (Count One) and their Unjust Enrichment claim (Count Five) should be dismissed.

**G. Plaintiffs' Trafficking in Computer Passwords (Count Seven) should be dismissed because it contains only threadbare recitals of the elements of the cause of action.**

Count Seven of the Complaint alleges that Xfinity has a password protected computer system and that a confidential security code is required to access their computer system. Plaintiffs allege generally that "Defendants and/or their co-conspirators" have obtained security codes through the Dark Web and through identity theft and have accessed Xfinity's computer systems. (Complaint, ¶125) If this is true, Xfinity would have the details of who it was and when this access occurred. But no such information was included in Plaintiffs' 39-page Complaint. Plaintiffs then allege that "Defendants and/or their co-conspirators" accessed the Xfinity computer system to acquire XM Phones. (Complaint, ¶128). But again, Plaintiffs failed to identify who it was, when it was and how many XM Phones were allegedly acquired. This cause of action contains only threadbare recitals of the elements of the cause of action, supported by mere conclusory statements. Accordingly, Count Seven (Trafficking in Computer Passwords) should be dismissed.

**H. Plaintiffs' Unauthorized Access claim (Count Eight) should be dismissed because it contains only threadbare recitals of the elements of the cause of action.**

Plaintiffs allege that "Defendants and/or their co-conspirators use fraud and misrepresentation to acquire XM Phones", that Defendants access Xfinity's computers

"using fraudulently obtained credentials or identities" and use "fraud or deception to create Xfinity Mobile accounts" "to place orders for XM Phones." (Complaint, ¶143) Again, these are allegations of fraud that must be pled with particularity. Who made fraudulent misrepresentations to Xfinity to order XM Phones? When were the misrepresentations made? What were the misrepresentations made? There are no specifics in Count Eight. Because there are no specific facts to support this claim, and because this cause of action contains only threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, Count Eight (Unauthorized Access) should be dismissed.

**I. Plaintiffs' Unauthorized Access with Intent to Defraud (Count Nine) should be dismissed because it contains only threadbare recitals of the elements of the cause of action.**

The analysis of Count Nine is similar to the analysis of Count Eight. In Count Nine, Plaintiffs allege that "Defendants are knowingly, intentionally, and with the intent to defraud, facilitating the unauthorized access into at least one of Xfinity Mobile's Protected Computers" (Complaint, ¶152) and that "Defendants and their co-conspirators" obtain brand new XM Phones that are resold for a profit. (Complaint, ¶153) Again, these are allegations of fraud that must be pled with particularity. Who made fraudulent misrepresentations to support Plaintiffs allegation of "intent to defraud?" When were the misrepresentations made? What were the misrepresentations made? Which Defendant or which co-conspirator accessed Xfinity's computer system? When did that computer access happen? There are no specifics in Count Nine either. This cause of action also contains only threadbare recitals of the elements of the cause of action, supported by mere conclusory statements. Accordingly, Count Nine (Unauthorized Access with Intent to Defraud) should be dismissed.

## V. <u>CONCLUSION.</u>

Plaintiffs' counsel, Carlton Fields, P.A., has been litigating on behalf of various cell phone carriers for at least the past 10 years. In fact, all opinions and judgments

attached as Exhibit R to the Complaint seem to be connected with that law firm. This Complaint appears to be a form Complaint that they have developed over the years that has been used against many different types of defendants under many different circumstances. But it does not appear that the Complaint has been tailored to these Defendants or the facts of this case. Plaintiffs' Complaint is filled with details about illegal cell phone schemes involving other people and organizations. It gives great detail about what "usually" happens or what "often" happens in these types of cases. (Complaint, ¶¶40-41). But the Complaint is lacking in detail on what exactly these Defendants did. Plaintiffs' Complaint is based on assumptions made from past experiences with other parties. Plaintiffs repeatedly reference other "co-conspirators" but never name a single one. Although Plaintiffs hired a private investigator, the investigator merely discovered that when GGT is contacted by the legal owner of a phone, it makes an offer to purchase the owner can accept or reject. If the owner accepts it, GGT pays the agreed-upon amount in exchange for the phone. Plaintiffs' investigator failed to identify any other co-conspirators, yet Plaintiffs allege Defendants are part of some large-scale illegal cell phone scheme.

In this Motion to Dismiss, the Court should analyze each cause of action in Plaintiffs' Complaint independently to determine "whether the complaint's well-pleaded facts are sufficient to state a claim." *Telesaurus VPC, LLC,* 623 F.3d at 1005. If not, the claim should be dismissed. Defendants request the Court dismiss Plaintiffs' entire Complaint (Counts One through Twelve).

DATED: December 20, 2022.

**RADIX LAW**

*/s/ C. Adam Buck*
C. Adam Buck
*Attorney for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 20, 2022, the attached document was electronically transmitted to the Clerk of the Court using the CM/ECF System which will send notification of such filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

By: */s/ K. Edmondson*