**BURCH & CRACCHIOLO, P.A.**
1850 NORTH CENTRAL AVENUE
SUITE 1700
PHOENIX, ARIZONA 85004
TELEPHONE 602.274.7611

Bryan F. Murphy, SBA #006414
bmurphy@bcattorneys.com
Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Xfinity Mobile, et al.,<br><br>Plaintiffs,<br>v.<br><br>Globalgurutech LLC, et al.,<br><br>Defendants. | No. CV-22-01950-PHX-SMB<br><br>**RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |

Plaintiffs Comcast OTR1, LLC and Comcast Cable Communications, LLC for themselves and their Xfinity Mobile brand and Comcast Corporation (collectively, "Plaintiffs") hereby file this response in opposition to Defendants' Motion to Dismiss the Complaint (the "Motion") [D.E. 24], showing the Court has follows:

**INTRODUCTION**

As set forth in greater detail in Plaintiffs' Complaint for Damages and Injunctive Relief ("Complaint") [D.E. 1], Defendants Globalgurutech LLC d/b/a SellLocked.com f/n/a iBuyLocked.com, Guru Holdings LLC, and Jakob Zahara (collectively, "Defendants") and their co-conspirators are engaged in, and knowingly facilitate and encourage others to engage in, unlawful business practices involving the unauthorized and deceptive purchase and resale of wireless communications handsets under the brand Xfinity Mobile ("XM Phones"), the theft of Xfinity Mobile's investment and incentives, the unlawful access of Xfinity Mobile's protected computer systems and wireless network, the trafficking of Xfinity Mobile's protected and confidential computer codes, and the willful infringement of Plaintiffs' trademarks (collectively, the "Scheme").

The Complaint asserts claims against Defendants for: unfair competition (Count One); tortious interference with business relationships and prospective advantage (Count Two); tortious interference with contractual relations (Count Three); civil conspiracy (Count Four); unjust enrichment (Count Five); common law fraud and fraudulent misrepresentation (Count Six); trafficking in computer passwords under 18 U.S.C. § 1030(a)(6) (Count Seven); unauthorized access under 18 U.S.C. 1030(a)(5)(C) (Count Eight); unauthorized access with intent to defraud under 18 U.S.C. § 1030(a)(4) (Count Nine); federal trademark infringement under 15 U.S.C. § 1114 (Count Ten); federal common law trademark infringement and false advertising under 15 U.S.C. § 1125(a)(1)(A) & (B) (Count Eleven); and contributory trademark infringement (Count Twelve).

Defendants' Motion seeks to dismiss all counts in the Complaint for failure to state a claim for relief. As detailed herein, Defendants' arguments are factually and legally incorrect, and many of the arguments raised by Defendants have already been considered and rejected

by other courts. Accordingly, Defendants' Motion should be denied in its entirety.

## ARGUMENT AND CITATION OF AUTHORITY

### A. Legal Standard

Motions to dismiss for failure to state a claim are disfavored, and are proper only in "extraordinary" cases. *See Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir. 1997). The pleading threshold of "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Bell Atlantic v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 8(a) "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements. *Twombly*, 550 U.S. at 545.

In deciding a motion to dismiss, "the court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir. 1987). Even if the face of the pleading suggests that the chance of recovery is remote, the Court must allow plaintiff to develop its case at this stage of the proceeding. *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

### B. Other Courts Have Denied Similar Motions to Dismiss

Several district courts have reviewed very similar allegations brought by Plaintiffs and other wireless handset carriers and found that they satisfy the federal pleading standards. *See, e.g., Xfinity Mobile v. Devin Tech Inc.,* Case No. 1:19-cv-03294 (N.D. Ga. Sept. 28, 2020) (denying partial motion to dismiss for failure to state a claim), a copy of which is attached hereto as **Exhibit A**). For example, in *Devin Tech*, Plaintiffs filed suit against defendants that were engaged in the unauthorized and deceptive purchase and resale of XM Phones. Plaintiffs' complaint in the *Devin Tech* case included the same claims as those brought here. The defendants in that case moved to dismiss Plaintiffs'

tortious interference, trademark, and false advertising claims. The district court denied the defendants' motion and held that the plaintiffs' complaint – which was pled with the same level of specificity as the Complaint in this action – satisfied the federal pleading standard under Rule 8. *See id.; see also Sprint Nextel Corp. v. Welch*, No. 1:13-CV-01174-AWI, 2014 WL 68957 (E.D. Cal. Jan. 8, 2014) (report and recommendation to grant partial default judgment in Sprint's favor on claims for, *inter alia* civil conspiracy, tortious interference with business relationships and prospective advantage, fraud, trafficking in computer passwords under 18 U.S.C. § 1030(a)(6), unauthorized access under 18 U.S.C. § 1030(a)(5)(C), and unauthorized access with intent to defraud under 18 U.S.C. § 1030(a)(4)); *Sprint Nextel Corp. v. Simple Cell, Inc.*, No. CIV. CCB-13-617, 2013 WL 3776933 (D. Md. July 17, 2013); *Sprint Nextel Corp. v. Carangi,* Case No. 12-6473 (E.D. Pa. May 3, 2013) (denying motion to dismiss for failure to state a claim), a copy of which is attached hereto as **Exhibit B**; *TracFone Wireless, Inc. v. Zip Wireless Prods., Inc.*, 716 F. Supp. 2d 1275 (N.D. Ga. 2010) (same).

### C. The Complaint Sufficiently Alleges Facts to Support Plaintiffs' Claims

#### 1. Unfair Competition (Count One) and Federal Trademark Infringement Claims (Counts Ten, Eleven, and Twelve)

To state a claim for federal trademark infringement, a plaintiff must demonstrate that (1) it has a valid, protectable mark, and (2) that Defendant's use of the mark is "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. §§ 1114(1)(a) and 1125(a)(1)(A).

Defendants argue for dismissal because (1) there is nothing "unfair" about the way Defendants' "acquire" the XM Phones and (2) Defendants' admitted use of the Marks on their website constitutes nominative fair use. As detailed herein, there are numerous allegations detailing the unlawful nature by which Defendants acquire XM Phones. As for Defendants' nominative fair use affirmative defense, that is generally not appropriate at the motion to dismiss stage. Indeed, "it would be highly unusual for a Court to 'dismiss' a complaint on 12(b)(6) grounds based on Defendants having proven an affirmative

defense." *Designer Skin, LLC v. S&L Vitamins, Inc.*, No. CV 05-3699 PHXJAT, 2007 WL 841471, at *2 (D. Ariz. Mar. 19, 2007); *see also Health Indus. Bus. Commc'ns Council Inc. v. Animal Health Inst.*, 481 F. Supp. 3d 941, 955 (D. Ariz. 2020) (while nominative fair use can be decided on a motion to dismiss, that is a "rare situation.).

Moreover, Defendants' nominative fair use defense fails because they used more of the Mark than necessary and Plaintiffs' Complaint alleges that Defendants falsely suggested that they were sponsored or endorsed by Plaintiffs. *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1181 (9th Cir. 2010) ("As for the second and third steps of our nominative fair use analysis, Toyota suggests that use of the stylized Lexus mark and "Lexus L" logo was more use of the mark than necessary and suggested sponsorship or endorsement by Toyota. This is true: The Tabaris could adequately communicate their message without using the visual trappings of the Lexus brand."); *Chiro-Med Centers, P.C. v. Healthy You MD, LLC*, No. CV-12-00375-PHX-ROS, 2012 WL 12871655, at *2 n.2 (D. Ariz. June 28, 2012) ("[T]his defense is not available when the use suggests sponsorship or endorsement.").[1] The Complaint demonstrates that Defendants are unlawfully using the Xfinity logo in selling their fraudulently acquired XM Phones. Compl., ¶ 51. Plaintiffs' Complaint also alleges that Defendants' and/or their co-conspirators' use of at least one of the Xfinity Mobile Marks evokes an immediate, favorable impression or association and constitutes a false representation that the products and business of Defendants have some connection, association or affiliation with Plaintiffs, and thus constitutes false designation of origin and is likely to mislead the trade and public into believing that Defendants' products and services originate from, are affiliated with, or are sponsored, authorized, approved or sanctioned by Plaintiffs. *Id.* at ¶¶ 160, 170. When construing all reasonable inferences in Plaintiffs' favor, Defendants fail to establish their fair use defense.

Further, Defendants ignore Plaintiffs' reliance on the material difference exception

---

[1] Defendants' reliance on *Volkswagenwerk Aktiengesellschaft v. Church*, 411 F.2d 350 (9th Cir. 1969) is misplaced because the defense was presented at a bench trial, not a motion to dismiss. *Id.* at 351-52.

to support their trademark claims. Plaintiffs have alleged, among other things, that Defendants' and/or their co-conspirators' aforementioned conduct constitutes use of the Xfinity Mobile Marks without authorization in connection with their conspiracy to sell and offer for sale unlocked, materially-different XM Phones, which downstream customers will discover have been altered from their original state, are inoperable on Xfinity Mobile service, and do not include the warranties, accessories, manuals and related items that constitute part of the XM Phone package. Compl., ¶¶ 156, 166. The Complaint further alleges that Defendants' and/or their co-conspirators' use of at least one of the Xfinity Mobile Marks in connection with the sale of unlocked, materially-different XM Phones has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendants' materially-different products, and the relationship between Plaintiffs and Defendants. *Id.* at ¶¶ 157, 167.

In virtually identical situations to the one here, courts in the Eleventh Circuit have previously held that reselling wireless handsets without their warranty information and in packaging not approved by the wireless carrier's quality controls constitutes a material difference. *TracFone Wireless, Inc. v. Pak China Group Co. Ltd.*, 843 F. Supp. 2d 1284, 1296-98 (S.D. Fla. 2012); *TracFone v. Anadisk,* 685 F. Supp. 2d 1304, 1313-15 (S.D. Fla. 2010); *see also Enesco Corp. v. Price/Costco Inc.,* 146 F.3d 1083, 1087 (9th Cir. 1998) (quoting *Warner–Lambert Co. v. Northside Dev. Corp.,* 86 F.3d 3, 6 (2d Cir. 1996)) (holding that a non-conforming product is not genuine and "its distribution constitutes trademark infringement"); *Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.,* 112 F.3d 1296, 1302 (5th Cir. 1997); *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.,* 982 F.2d 633, 644 (1st Cir. 1992); *Original Appalachian Artworks, Inc. v. Granada Electronics, Inc.,* 816 F.2d 68, 73 (2d Cir. 1987).

In addition, Plaintiffs properly pled their trademark claims. The Complaint alleges that Plaintiffs have valid and protectable marks. It clearly states that Comcast Corporation obtained registered XFINITY® and XFINITY MOBILE® trademarks, Xfinity Mobile has a license to use said trademarks, and the Marks acquired secondary meaning. Compl, ¶¶

31-34, 156. The Lanham Act and the Ninth Circuit strongly presume registered marks to be valid. 15 U.S.C. § 1057(b) and *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1022 (9th Cir. 2018). Moreover, the Complaint alleges that Defendants' use of the XFINITY® and XFINITY MOBILE® marks "has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendants' infringing products, and the relationship between Comcast Corporation and Defendants," thereby alleging facts in support of Plaintiffs' trademark infringement claims. Compl., ¶¶ 157, 167. Because Plaintiffs' federal trademark claims are properly pled, Plaintiffs' state law unfair competition claim, which contain very similar allegations, is also properly pled. *See Ratones Ciegos v. Mucha Lucha Libre Taco Shop 1 LLC*, No. CV-16-04538-PHX-DGC, 2017 WL 4284570, at *2 (D. Ariz. Sept. 27, 2017) (holding that a state law unfair competition claim is subject to the same analysis as a federal trademark claim).

Plaintiffs also properly alleged a claim for contributory trademark infringement. "[C]ontributory trademark liability is applicable if defendant (1) intentionally induces another to infringe on a trademark or (2) continues to supply a product knowing that the recipient is using the product to engage in trademark infringement." *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996) (citing *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844, 854 (1982)).

Plaintiffs allege that by misappropriating and using the Xfinity Mobile Marks, Defendants knowingly aided and enabled distributors and/or sellers of their products to market them to members of the general public in a way that infringes the Xfinity Mobile Marks by placing in the hands of distributors and/or sellers an instrument of consumer deception. Compl., ¶ 179. Plaintiffs also allege that Defendants' unlawful, unauthorized, and unlicensed sale of unlocked and materially-different XM Phones has contributed to the creation of express and implied misrepresentations that the XM Phones, as sold by Defendants, were created, authorized or approved by Plaintiffs, may be activated on Xfinity Mobile service, and include warranties. *Id.* at ¶ 180. The Complaint further

alleges that upon information and belief, Defendants' conduct leads to post-sale confusion by causing consumers in the United States who purchase XM Phones from Defendants or their co-conspirators to believe that they are purchasing legitimate XM Phones approved by Plaintiffs that can be activated on Xfinity Mobile service and contain original warranties. *Id.* at ¶ 181. Therefore, Plaintiffs properly pled a claim for contributory infringement.

Plaintiffs also properly pled a claim for false advertising. Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)(1)(B)) makes it unlawful for "[a]ny person who … in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). The Complaint specifically states that Defendants' use of at least one of the Xfinity Mobile Marks in commercial advertising and/or promotion misrepresents the nature, characteristics, and/or qualities of their infringing products; such advertising and/or promotion is false and/or misleading and deceives, or has the capacity to deceive, consumers; and the deception and misrepresentations have a material effect on purchasing decisions and affect interstate commerce. Compl., ¶ 173. Thus, Plaintiffs properly pled a claim for false advertising.

Accordingly, the Court should deny Defendants' Motion with respect to Plaintiffs' trademark and unfair competition claims.

**2. Tortious Interference with Business Relationships and Prospective Advantage (Count Two) and Tortious Interference with Contractual Relations (Count Three)**

To state a claim for tortious interference with business relationships and prospective economic advantage, a plaintiff must plead: "(1) The existence of a valid contractual relationship or business expectancy; (2) the interferer's knowledge of the relationship or expectancy; (3) the interferer's intentional interference inducing or causing a breach or termination of the expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." *Helal v. Winski*, No. 1 CA-CV 14-0201,

2015 WL 8927725, at *7 (Ariz. Ct. App. Dec. 15, 2015). Similarly, to properly allege a tortious interference with contract claim, a plaintiff must allege facts showing: "(1) existence of a valid contractual relationship, (2) knowledge of the relationship on the part of the interferor, (3) intentional interference inducing or causing a breach, (4) resultant damage to the party whose relationship has been disrupted, and (5) that the defendant acted improperly." *R. Prasad Indus. v. Flat Irons Env't Sols. Corp.*, No. CV 12-8261-PCT-JAT, 2013 WL 2217831, at *15 (D. Ariz. May 20, 2013).

Defendants assert that these claims should be dismissed because there are no allegations showing Jakob Zahara knew of the terms of the "My Xfinity Mobile Customer Agreement" or that Defendants intentionally interfered with a customer's contract. Motion, p. 7. On the contrary, however, the Complaint adequately alleges all of the elements for both claims. *See* Compl., ¶¶ 1-73; 84-93; 95-102.

The Complaint asserts the following allegations:

- Defendants have knowledge of and have intentionally and unjustifiably interfered with, and/or have knowingly facilitated a conspiracy to interfere with (1) current and prospective business relationships between Xfinity Mobile and legitimate Xfinity Mobile customers or prospective customers of its XM Phones and wireless service; and (2) the contractual relationship and an expectancy of a contractual relationship between Xfinity Mobile and its customers and prospective customers, the purchasers of its XM Phones and wireless service;
- There is a high probability of future economic benefit to Xfinity Mobile as a result of these current and prospective business relationships and there is a reasonable likelihood that these prospective business relationships and contracts would occur but for the unlawful interference of Defendants and/or their co-conspirators.
- Specifically, but without limitation, Defendants knew that Xfinity Mobile has contractual relationships and business relationships, and an expectancy of business relationships, with legitimate consumers of XM Phones, internet, and wireless service. In fact, Defendants and their co-conspirators rely on and exploit the contractual relationship

between Xfinity Mobile and its customers to unlawfully obtain and resell XM Phones. Defendants interfered with these relationships by engaging in their Scheme, which includes affecting the supply of XM Phones and sowing discontent in Xfinity Mobile customers whose accounts were subjected to fraudulent activations and unauthorized Phone orders by Defendants and/or their co-conspirators;

- As part of their unlawful Scheme, Defendants are intentionally interfering with Xfinity Mobile's business relationships and prospective advantages and contractual relationships through improper means and are not motivated by legitimate business reasons; and
- Defendants engaged in the acts of interference with a conscious desire to prevent the relationships from occurring or continuing or Defendants knew that the interference was certain or substantially certain to occur as a result of their conduct.

Compl., ¶¶ 38-39, 84-93; 95-102.

With all well-pled facts as true and viewed in the light most favorable to the non-movant, Xfinity Mobile has pled the elements of claims for tortious interference with business relationships (Count Two) and contractual relationships (Count Three). The Court should therefore deny Defendants' request to dismiss these claims.

**3. Civil Conspiracy (Count Four)**

Defendants move to dismiss Plaintiffs' civil conspiracy claim because Zahara is the only individual referenced in the Complaint, and he cannot commit a conspiracy by himself. Motion, p. 5. Defendants' argument fails for at least two reasons.

First, Zahara is not the only named Defendant in the Complaint. The Defendants include Zahara, Global Guru Tech, LLC d/b/a SellLocked, and Guru Holdings LLC. The very case cited by Defendants allowed a conspiracy claim to proceed where, as here, the claim was asserted against two entities. *See Animal Health Inst.*, 481 F. Supp. 3d at 959. Defendants cite no authority to the contrary.

Second, the Complaint alleges that an agreement and conspiracy existed and continues to exist between and among the Defendants and other co-conspirators to

unlawfully acquire in bulk, traffic, and resell unlawfully unlocked and materially-altered XM Phones, which results in unfair competition, tortious interference, trademark infringement, among other things; each Defendant knowingly agreed to engage, and did engage, in one or more overt acts in pursuit of the conspiracy as set forth with more particularity in this Complaint; and Plaintiffs have been proximately damaged by the conspiracy and Defendants' actions in furtherance thereof. Compl., ¶¶ 104-107.

Plaintiffs have made a sufficient showing of civil conspiracy to prevail on a motion to dismiss. *See Animal Health Inst.*, 481 F. Supp. 3d at 959; *In re Arizona Dairy Prod. Litig.*, No. CIV 74-569 A PHX CAM, 1984 WL 21984, at *2 (D. Ariz. Nov. 5, 1984).

**4. Unjust Enrichment (Count Five)**

Defendants move to dismiss Xfinity Mobile's unjust enrichment claim on the grounds that they "fairly negotiate[] a price with the legal owner of the phone" and then purchase the phones. Motion, p. 12. Defendants' argument, however, fails for several reasons. First, whether or to what extent Defendants "fairly negotiated" a purchase price is outside the scope of the Complaint, and, therefore, cannot be considered on a motion to dismiss. *See In re Zappos.com, Inc.*, 888 F.3d 1020, 1028 (9th Cir. 2018) (argument that relies on facts outside the complaint cannot be considered at the motion to dismiss stage).

Second, Defendants' argument does not acknowledge, let alone, address the elements of an unjust enrichment claim. In order to prevail on an unjust enrichment claim, "a plaintiff must establish that, (1) plaintiff conferred a benefit upon the defendant; (2) defendant's benefit is at plaintiff's expense; and (3) it would be unjust to allow defendant to keep the benefit." *In re Arizona Theranos, Inc., Litig.,* 308 F. Supp. 3d 1026, 1057 (D. Ariz. 2018). Xfinity Mobile adequately pled each of these elements.

Xfinity Mobile alleges that by unlawfully acquiring XM Phones for use with wireless services other than Xfinity Mobile's services and reselling the XM Phones for profit through various means, namely, theft and fraud, all in direct violation of the express provisions of the Terms and Conditions, Defendants have obtained benefits from Xfinity Mobile that have caused significant harm to Xfinity Mobile and resulted in significant

financial gain to Defendants through their resale of the illicitly-acquired XM Phones. Compl., ¶ 109. Xfinity Mobile further alleges that Defendants have acquired the benefits voluntarily and with full knowledge of the benefits; and Defendants have retained the benefits under such circumstances that make it unjust and inequitable for Defendants to retain the benefits without paying Xfinity Mobile the value of the benefits Defendants acquired. *Id.* at ¶¶ 110-112.

Because Xfinity Mobile has properly alleged each element, there is no basis to dismiss its unjust enrichment claim.

**5. Common Law Fraud and Fraudulent Misrepresentation (Count Six)**

Defendants argue that Xfinity Mobile's claim for common law fraud and fraudulent misrepresentation is not stated with the particularity required under Fed. R. Civ. P. 9(b). Motion, pp. 3-5. As detailed herein, Defendants' argument is without merit.

To establish a cause of action for fraud and fraudulent misrepresentation, Xfinity Mobile must plead the following elements:

> (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that the information should be acted upon by the hearer and in a manner reasonably contemplated, (6) the hearer's ignorance of the information's falsity, (7) the hearer's reliance on its truth, (8) the hearer's right to rely thereon, and (9) the hearer's consequent and proximate injury.

*Allstate Life Ins. Co. v. Robert W. Baird & Co.*, 756 F. Supp. 2d 1113, 1164 (D. Ariz. 2010). Each of these elements is present in the Complaint. Compl., ¶¶ 4, 40-67, 114-121.

As a threshold issue, "Rule 9(b)'s particularity requirement is relaxed in instances of corporate fraud where the facts supporting the allegation of fraud are exclusively within the defendants' possession." *Estate of Migliaccio v. Midland Nat'l. Life Ins. Co.*, 436 F. Supp. 2d 1095, 1106 (C.D. Cal. 2006) (citation omitted); *see also United States ex rel. Tamanaha v. Furukawa Am., Inc.*, 445 F. App'x 992, 994 (9th Cir. 2011) (same); *Deutsch v. Flannery*, 823 F.2d 1361, 1366 (9th Cir. 1987) (same). Regardless, Xfinity Mobile has properly pled its claim.

For example, Xfinity Mobile alleges that each Defendant, directly or indirectly through co-conspirators, regularly and systematically misrepresent to Xfinity Mobile that the XM Phone orders are authorized, that the identifying information being provided is legitimate and authorized, and/or that the Phones are being purchased by a legitimate customer for use in accordance with the governing Terms and Conditions. *Id.* at ¶ 114. The Complaint further alleges that each Defendant defrauded Xfinity Mobile to acquire XM Phones to be unlocked, resold and in many cases ultimately shipped overseas for activation on foreign carrier networks; when Defendants, directly or through their co-conspirators, acquire XM Phones as part of their Scheme, they do not intend to use the Phones for a legitimate purpose or to activate them or maintain them as active with respect to Xfinity Mobile's wireless services, or otherwise perform in accordance with the Terms and Conditions; and Defendants and their co-conspirators know, when they affirmatively act to circumvent Xfinity Mobile's fraud prevention tools to place new Phone orders, that they are not authorized to access and place orders on Xfinity Mobile customer accounts, or to open new Xfinity Mobile accounts using fraud and forged or stolen identity information, and that they are required to activate the XM Phones for use with Xfinity Mobile's wireless services, pay the monthly service charges, and otherwise comply with the Terms and Conditions. *Id.* at ¶¶ 115-117.[2]

The Complaint further alleges that Defendants intended to induce Xfinity Mobile to rely on their misrepresentations and Xfinity Mobile reasonably relied on Defendants' misrepresentations. *Id.* at ¶¶ 118-119. The materiality of these representations is demonstrated by the allegations showing Defendants, directly or through their co-conspirators, were able to acquire XM Phones based on these false representations. *Id.* at ¶¶ 114-115. The Complaint further states that Xfinity Mobile has been damaged and continues to suffer damages as a result of Defendants' conduct. *Id.* at ¶ 120.

In addition to these allegations, the Complaint details Xfinity Mobile's extensive

[2] Under Rule 9(b), "malice, intent, knowledge, and other conditions of mind may be alleged generally." *Van Go LLC v. Potts*, No. CV-16-00054-PHX-JJT, 2016 WL 4974968, at *3 (D. Ariz. June 7, 2016) (citing Fed. R. Civ. P. 9(b)).

investigation into Defendants' unlawful activities. For example, Xfinity Mobile describes and attached Defendants' unlawful advertisements to buy and sell XM Phones. *Id.* at ¶¶ 49-54, Exs. C and D. The Complaint also describes in detail how the XM Phones Defendants sell are initially procured from Xfinity Mobile through unauthorized access to legitimate customer accounts or creation of fraudulent customer accounts. *Id.* at ¶¶ 4, 48-51, 63, 114. Xfinity Mobile also identify dates when Defendants offered to sell XM Phones to its private investigators, along with the specific XM Phones that were obtained through fraudulent orders. *Id.* at ¶¶ 59, 62-63. *See Craigslist Inc. v. Autopostero, Inc.*, No. 08-05069, 2009 WL 890896, at *4 (N.D. Cal. 2009) (denying motion to dismiss plaintiff's fraud claim where plaintiff alleged that: (1) defendants intended to comply with the terms of use when in fact they did not; (2) the misrepresentation occurred when the defendants used plaintiff's website or clicked on the "ACCEPT terms of use" option; (3) the location of the misrepresentation occurred on the plaintiff's website; and (4) the plaintiff and defendant were parties to the representations).

Additional evidence regarding Defendants' improper conduct is in their exclusive knowledge and control and will be uncovered during discovery. Compl., ¶ 67. Accordingly, Xfinity Mobile's claim is properly pled and the Court should deny Defendants' request to dismiss this claim.

**6. Computer Fraud and Abuse Act Claims**

Defendants argue that Xfinity Mobile's CFAA claims should be dismissed because it only provided "threadbare recitals of the elements" and "mere conclusory statements" in support of these claims. Motion, pp. 13-14. Even a cursory review of the Complaint demonstrates that these arguments lack merit.

**A. Trafficking in Computer Passwords (Count Seven)**

To state a claim under 18 U.S.C. § 1030(a)(6), Xfinity Mobile must allege that (1) the Defendants knowingly and with intent to defraud[3]; (2) trafficked in; (3) a computer password

[3] Intent to defraud under 18 U.S.C. 1030(a)(4) and (6) "simply means wrongdoing … whereby the defendant participated in dishonest methods to obtain the plaintiff's secret information." *T-Mobile USA, Inc. v. Terry*, 862 F. Supp. 2d 1121, 1130 (W.D. Wash.

or similar information through which a computer may be accessed without authorization; (4) in a manner that affects interstate commerce. *See* 18 U.S.C. §§ 1030(a)(6); 1030(c)(4)(A)(i)(I); 1030(g). Xfinity Mobile alleged that Defendants and their co-conspirators are doing exactly that—they systematically and knowingly trafficked in Xfinity Mobile's confidential codes to access its proprietary computer systems for use in the Scheme. Compl., ¶¶ 123-154. The Complaint states that Xfinity Mobile prevents unauthorized access to its computers, including its ordering system, national communications and WiFi computer networks, electronic customer account and billing portal, and the XM Phones, by utilizing confidential codes/passwords.[4] *Id.* at ¶¶ 123-124. *See Welch*, 2014 WL 68957, at *7 (finding that Sprint stated cognizable claims under the CFAA where it alleged that "Defendant traffics in using the proprietary codes stored on the phones which access Sprint's network and selling those codes along with the phones"). The Complaint further alleges that the Defendants and/or their conspirators obtain these security codes through unlawful means (e.g., through the Dark Web or identity theft), and knowingly trafficked in those security codes with the intent to harm Xfinity Mobile. Compl., ¶¶ 125-26.

The Complaint also alleges that Defendants' trafficking of the Phones substantially affects interstate commerce and that Xfinity Mobile suffered the requisite "loss"[5] and

---

2012) (citing *Shurguard Storage Ctrs., Inc. v. Safeguard Self Storage, Inc.*, 119 F. Supp. 2d 1121, 1126 (W.D. Wash. 2000); *see also U.S. v. Willis*, 476 F.3d 1121, 1125 (10th Cir. 2007); *Simple Cell,* 2013 WL 3776933, at * 6 (same). To the extent that allegations for unauthorized access with intent to defraud must be pled under the heightened standard of Fed. R. Civ. P. 9(b), Xfinity Mobile has met this standard as detailed in Section C.5.

[4] Xfinity Mobile's national telecommunications computer network and computer billing network both constitute a "protected computer" for purposes of the CFAA, as defined at 18 U.S.C. §1030(e)(2)(B). *See United States v. Trotter*, 478 F.3d 918, 920-22 (8th Cir. 2007) (company's computer network is a "protected computer" under the statute); *T-Mobile USA,* 862 F. Supp. 2d at 1130 (holding that "T-Mobile's wireless telecommunications network as well as its proprietary computer system for activations are each a "protected computer" as defined in 18 U.S.C. §1030(e)(2).").

[5] According to the statute, "loss" includes "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, systems, or information to its condition prior to the offense, and any

"damage"[6] as defined under the CFAA. *Id.* at ¶¶ 130-135.

As to loss, the Complaint alleges that Xfinity Mobile spent well in excess of $5,000 assessing its computers for damage, investigating Defendants' intrusions, taking steps to prevent further unauthorized access by Defendants and/or or their co-conspirators, assessing the possible impairment to the integrity of its computers, conducting a damage assessment regarding Defendants' collection and dissemination of XM Phones and security codes, tracking down fraudulently sold XM Phones, and discovering Defendants' identities and/or the methods utilized by Defendants to access Xfinity Mobile's computers . *Id.* at ¶¶ 131-134. The Complaint further alleges that with respect to damage, by infiltrating Xfinity Mobile's computers and collecting and disseminating the illegally activated XM Phones and codes, Defendants have substantially impaired the integrity of Xfinity Mobile's protected computer networks in an amount in excess of $5,000. *Id.* at ¶ 135. Moreover, Defendants' actions have deprived Xfinity Mobile of the means to control the quality of its products and services. *Id.*

Therefore, Xfinity Mobile has properly alleged a claim under 18 U.S.C. § 1030(a)(6). *See T-Mobile USA*, 862 F. Supp. 2d at 113 (finding damages and losses to include "the cost of investigating and remedying the breaches and paying third-party carriers for roaming and overseas calls made on the SIM card…depriving it of the means to control the quality of its product, harming T-Mobile's business reputation and goodwill and leading to a greater likelihood of confusion…as to the source of origin of T-Mobile products, and depriving T-Mobile of the opportunity to earn profits by providing wireless service to legitimate T-Mobile consumers."); *Simple Cell*, 2013 WL 3776933, at *6-7 (denying defendants' motion to dismiss Sprint's similarly pled CFAA claims).

**B. Unauthorized Access (Count Eight)**

Xfinity Mobile alleges that Defendants are violating 18 U.S.C. § 1030(a)(5)(C),

---

revenue lost, cost incurred, or other consequential damages incurred because of the interruption of service." *See* 18 U.S.C. §1030(e)(11).

[6] The term "damage" is defined in the statute to mean "any impairment to the integrity or availability of data, a program, a system, or information." *See* 18 U.S.C. §1030(e)(8).

which makes it unlawful to intentionally access a protected computer without authorization and cause damage and loss. The Complaint alleges that: (1) Xfinity Mobile's Protected Computers hold confidential information, are connected to the Internet, and assist in providing federally-regulated communications services; (2) XM Phones are connected to and activated on at least one of Xfinity Mobile's Protected Computers when purchased from Xfinity Mobile; (3) Defendants and/or their co-conspirators use fraud and misrepresentation to acquire XM Phones, including the most in-demand smartphones, and, in so doing, void any purchase agreement and any legitimate, authorized access to Xfinity Mobile's Protected Computers; (4) in using fraud or deception to create Xfinity Mobile accounts or to access customer accounts to place orders for XM Phones, Defendants' and/or their co-conspirators' access into at least one of Xfinity Mobile's Protected Computers is unauthorized; (5) by unlawfully acquiring and unlocking the XM Phones, Defendants necessarily access at least one of Xfinity Mobile's Protected Computers because the XM Phones are programmed to connect to several of Xfinity Mobile's Protected Computers when Defendants unlawfully acquired them from Xfinity Mobile; and (6) Defendants' illegal and unauthorized access into at least one of Xfinity Mobile's Protected Computers allows them to improperly steal Xfinity Mobile's substantial financial investment in XM Phones. Compl., ¶¶ 140-146.

The Complaint also alleges that by trafficking in activated XM Phones, the Defendants are also knowingly, intentionally, and with the intent to defraud, facilitating the unauthorized access of Xfinity Mobile's protected computer networks and that Defendants' activities substantially affect interstate commerce. *Id.* at ¶¶ 144, 147. Finally, Xfinity Mobile alleges that it suffers loss and was damaged in the process set forth above. *Id.* at ¶¶ 131-135; 148-149. Thus, Xfinity Mobile has properly pled this claim.

**C. Unauthorized Access with Intent to Defraud (Count Nine)**

To state a claim under 18 U.S.C. § 1030(a)(4), Xfinity Mobile must allege that Defendants: (1) knowingly and with intent to defraud;[7] (2) accessed a protected computer

[7] See, *supra*, fn. 3.

without authorization; (3) obtained anything of value; and (4) caused a loss and damages aggregating at least $5,000. *See* 18 U.S.C. §§ 1030(a)(4), 1030(c)(4)(A)(i)(I), 1030(g). For the reasons discussed above, Defendants knowingly accessed Xfinity Mobile's protected computers without authorization. Compl., ¶¶ 123-154. The Complaint further alleges that Defendants and their co-conspirators obtain monetary value, (*i.e.*, brand new XM Phones that are resold for a substantial profit) through their unlawful access into at least one of Xfinity Mobile's Protected Computers (*e.g.*, using Security Codes fraudulently obtained from third party sources like the Dark Web and identity theft to log into Xfinity Mobile password protected ordering systems and the unauthorized use of XM Phones on Xfinity Mobile national communications and WiFi computer networks). *Id.* at ¶ 153. Xfinity Mobile also pled that it suffered the requisite minimum $5,000 "loss" and "damage" as defined under the CFAA. *Id.* at ¶¶ 131-135, 146.

Construing all well-pleaded facts as true and viewing them in the light most favorable to Xfinity Mobile, *see Usher,* 828 F.2d at 561, the Court should deny Defendants' request to dismiss the CFAA claims.

**CONCLUSION**

Based upon the foregoing, Plaintiffs respectfully request that this Court deny Defendants' Motion in its entirety. To the extent the Court believes that additional factual allegations are needed, Plaintiffs respectfully request leave to amend their Complaint. *See, e.g., Dobson Med. Grp., Inc. v. Midland Risk Ins. Co.*, 173 F.3d 860 (9th Cir. 1999) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) ("In dismissing for failure to state a claim, 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'")).

Respectfully submitted this 10th day of January, 2023.

By: /s/ Bryan F. Murphy
Bryan F. Murphy
BURCH & CRACCHIOLO, P.A.
1850 North Central Avenue
Suite 1700
Phoenix, Arizona 85004

Gail Podolsky
*Admitted pro hac vice*
Georgia Bar No. 142021
CARLTON FIELDS, P.A.
Email: gpodolsky@carltonfields.com
1201 West Peachtree Street, Suite 3000
Atlanta, GA 30309
Tel: (404) 815-3400
Fax: (404) 815-3415

Attorneys for Xfinity Mobile, brand of Comcast OTR1, LLC Comcast Cable Communications, LLC and Comcast Corporation

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2023, the attached document was electronically transmitted to the Clerk of the Court using the CM/ECF System which will send notification of such filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

By: /s/ Bryan F. Murphy
Bryan F. Murphy
BURCH & CRACCHIOLO, P.A.

# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| XFINITY MOBILE, a brand of COMCAST OTR1, LLC, COMCAST CABLE COMMUNICATIONS, LLC and COMCAST CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>DEVIN TECH INC., ABUZER EMRE OZER, SAMET ERASLAN and MEHMET TASKIN,<br><br>Defendants. | CIVIL ACTION NO.<br>1:19-cv-03294-JPB |

**ORDER DENYING PARTIAL MOTION TO DISMISS**

Before the Court is Defendants Devin Tech Inc., Abuzer Emre Ozer, Samet Eraslan and Mehmet Taskin's (collectively "Defendants") Partial Motion to Dismiss Complaint ("Motion"). ECF No. 25. Having reviewed and fully considered the papers filed therewith, the Court finds as follows:

## I. BACKGROUND

Plaintiffs Xfinity Mobile ("XM"), Comcast Cable Communications, LLC and Comcast Corporation (collectively "Plaintiffs") filed a complaint alleging several causes of action against Defendants, including unfair competition, tortious interference with business relations and trademark infringement, in connection

with Defendants' unauthorized acquisition and resale of XM branded mobile telephones.

As alleged in the Complaint, XM's business model is to provide its branded phones to customers through incentives such as discount pricing and zero-interest installment payment plans with the anticipation that it will recoup the incentives in part through profits earned from the sale of XM monthly service plans, which are required to use the phones. XM is able to offer these incentives only if the phones are used as intended on the XM network. To that end, the manufacturers of XM's phones install software on the phones that prevents their use outside the XM network without authorization. XM uses certain trademarks in providing its goods and services.

XM phones are sold to customers subject to specified terms and conditions that restrict the sale and use of the phones, including requiring the customer to use the phones only on XM's network and pay related monthly service charges; restricting resale of the phones; and prohibiting any actions that may damage or otherwise be adverse to XM or its customers' interest.

Plaintiffs assert that Defendants are not and have never been authorized XM distributors or retailers but are engaged in the practice of fraudulently acquiring XM phones in bulk and selling them for a substantial profit either domestically or

overseas to be used on other carriers' networks. The phones are taken out of their original packaging, and all accessories, warranties and manuals are removed. The software installed on the phones is also "unlocked" or altered to allow the phones to be used on networks other an XM's.

An investigator for XM was able to purchase five such phones from Defendants. Defendants also offered to sell the investigator additional phones and conveyed that they traffic in approximately forty to fifty new XM phones per week. XM's research of thirty-two XM phone identification codes Defendants provided to the investigators revealed that the phones had been fraudulently acquired through XM's telephone sales department.

Plaintiffs further allege that they have suffered substantial damages, including being deprived of the opportunity to recoup their substantial investment in new XM phones and to earn profits through the provision of monthly services to customers; lost business of customers who Defendants encouraged or caused to breach their contracts with XM; lost prospective sales to customers whose orders XM could not fill because Defendants' fraudulent acquisition of XM phones caused insufficient supply of phones to meet legitimate customer demand; harm to their goodwill, image and reputation as a result of Defendant's infringement of

XM's marks; and harm to their existing customer relationships due to unauthorized fraudulent phone purchases made on customers' accounts.

## II. ANALYSIS

Defendants filed the instant Motion seeking dismissal of Count Two (Tortious Interference with Business Relationships and Prospective Advantage), Count Three (Tortious Interference with Contractual Relations), Count Seven (Conversion), Count Twelve (Federal Trademark Infringement) and Count Thirteen (Federal Common Law Trademark Infringement and False Advertising). Their arguments are addressed in turn below.

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." *Traylor v. P'ship Title Co., LLC*, 491 F. App'x 988, 989 (11th Cir. 2012). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief[, however,] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal punctuation omitted). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (A complaint does not suffice "if it tenders naked assertions devoid of further factual

enhancement.") (internal punctuation omitted) (quoting *Twombly*, 550 U.S. at 557).

Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* "This standard does not require a party to plead facts with such particularity to establish a significant probability that the facts are true, rather, it requires a party's pleading of facts to give rise to a 'reasonable expectation that discovery will reveal evidence [supporting the claim].'" *Burch v. Remington Arms Co., LLC*, No. 2:13-cv-00185, 2014 WL 12543887, at *2 (N.D. Ga. May 6, 2014) (quoting *Twombly*, 550 U.S. at 555) (alteration in original). *See also Twombly*, 550 U.S. at 570 (dismissing complaint because the plaintiffs did not state facts sufficient to "nudge[] their claims across the line from conceivable to plausible").

At bottom, the complaint must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" (*Iqbal*, 556 U.S. at 678) and must instead "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Traylor*, 491 F. App'x at 990 (quoting *Iqbal*, 556 U.S. at 678).

### A. Count Two (Tortious Interference with Business Relationships and Prospective Advantage) and Count Three (Tortious Interference with Contractual Relations)

Defendants argue that Counts Two and Three should be dismissed because: (i) they are surplusage in that they are not separate causes of action under Georgia law; and (ii) Plaintiffs' conclusory assertions are not sufficient to plead key elements of these counts—that a third party breached a contract, discontinued a business relationship or failed to enter into same with Plaintiffs and that Plaintiffs suffered damages as a result.

Plaintiffs respond that the two counts are, in fact, separate causes of action under Georgia law and that the Complaint adequately pleads the disputed elements. Plaintiffs point to the Complaint's allegations that Defendants have caused customers to breach contracts with XM or prevented such relationships from occurring, causing XM damaged goodwill and lost profits, among other things.

As an initial matter, Georgia law is clear that "[t]ortious interference with business relations is a distinct and separate tort from that of tortious interference with contractual relations, although some of the elements of the two torts are similar." *Renden, Inc. v. Liberty Real Estate Ltd. P'ship III*, 444 S.E.2d 814, 817 (Ga. Ct. App. 1994). Thus, Defendants' first point of contention lacks merit.

Case 2:21-cv-00534-MBP Document 35 Filed 01/28/23 Page 28 of 36

Their second point similarly lacks merit. While it is true that a complaint that relies only on labels and conclusions or a formulaic recitation of the elements of a cause of action will not survive a motion to dismiss, it is also true that allegations need only raise the right to relief above the speculative level. The Court finds that Plaintiffs have met this bar. Construing the Complaint in the light most favorable to Plaintiffs, the allegations that each XM customer must agree to terms and conditions requiring a monthly service plan but that Defendants fraudulently acquired XM phones for resale and not for use with XM's wireless service are sufficient to show breached contracts by those customers who acquired the phones and did not follow through with the monthly service agreement. Likewise, the allegation that Defendants' scheme diminished the supply of XM phones such that XM could not fill legitimate customer orders is sufficient to show lost prospective business relationships or opportunity. These allegations are sufficient to raise XM's right to relief above the speculative level and show damages—all that is required at this stage.

Accordingly, the Court declines to dismiss Counts Two and Three of the Complaint.

**B. Count Seven (Conversion)**

Defendants argue that Count Seven should be dismissed because Plaintiffs failed to allege a necessary element of such claim—that Defendants currently have actual possession of XM's phones. Defendants further contend that even if Plaintiffs were able to allege that they had actual possession of the phones, their claim would nevertheless fail because they have neither demanded the return of the phones nor have Defendants refused such demand. Additionally, they argue that to the extent Plaintiffs contend that Defendants have converted proceeds from the resale of the phones, their claim similarly fails because a conversion cause of action does not support a claim for the return of money.

Plaintiffs, on the other hand, point to *Williams v. Nat'l Auto Sales, Inc.*, 651 S.E.2d 194, 197 (Ga. Ct. App. 2007), where the court expressly stated that "conversion does not require a showing of a demand and refusal; it requires only that the defendant, who comes into possession of the property unlawfully, disposes of the property without authority and retains the proceeds."

In that case, the court reasoned that "beyond the fact that an unauthorized sale of the property is itself an unlawful exercise of dominion over the property, selling the property puts it out of the defendant's power to return the property, rendering a demand a futile gesture." *Id.* (finding that the plaintiff stated a claim

for conversion where she alleged that the defendant unlawfully repossessed and resold her car). As such, it is of no moment that Defendants have sold the fraudulently acquired phones and no longer have them in their possession or that Plaintiffs have not made a demand for the return of the phones. Those allegations are not necessary where, as here, the Complaint asserts that Defendants resold the phones without authorization, and Plaintiffs are seeking relief other than the return of the phones. *See id*. Accordingly, the Court will not dismiss Count Seven of the Complaint.

### C. Count Twelve (Federal Trademark Infringement) and Count Thirteen (Federal Common Law Trademark Infringement and False Advertising)

The crux of Defendants' argument here is that Plaintiffs' claims for trademark infringement should be dismissed because Plaintiffs cannot show the cornerstone of such a claim—whether Defendants' use of the marks is likely to cause confusion. Defendants maintain that there can be no likelihood of confusion because the communications between Defendants and Plaintiffs' investigators, which are attached to the Complaint, reflect that Defendants explicitly disclosed the differences between genuine XM phones and the phones they were offering for sale. Defendants, however, concede "for the purposes of the motion to dismiss" that the phones they sold were "materially different" from genuine XM phones.

Pointing to the Complaint's allegations that Defendants continue to traffic XM phones, Plaintiffs respond that the allegations in the Complaint are not limited to the phones sold to Plaintiffs' investigators. Thus, Defendants' conclusion that because they disclosed the differences in the phones they sold to XM's investigators, the investigators were not confused by such sales is not dispositive of the central issue, which is the likelihood of confusion for all purchasers of XM phones.

The Court agrees with Plaintiffs. The allegations in the Complaint are clearly not limited to the phones Plaintiffs' investigators purchased from Defendants. For example, Plaintiffs specifically allege that "Defendants' conduct leads to post-sale confusion by causing consumers in the United States who purchase XM Phones from Defendants or their co-conspirators to believe that they are purchasing legitimate XM Phones approved by Plaintiffs that can be activated on Xfinity Mobile service and contain original warranties." Indeed, it is not clear why messages attached to the Complaint as examples of Defendants' conduct would serve to limit the express allegations in the Complaint.

In any event, the Eleventh Circuit has held that "the resale of a trademarked product that is materially different can constitute a trademark infringement" because "materially different products that have the same trademark may confuse

consumers and erode consumer goodwill toward the mark." *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1302 (11th Cir. 2001). Given Defendants' concession that the products they resold were "materially different" from genuine XM phones and Plaintiffs' allegations that such sales have led to post-sale confusion among consumers, the Court finds that Plaintiffs have stated a claim for trademark infringement above the speculative level. Accordingly, the Court declines to dismiss Counts Twelve and Thirteen of the Complaint.

Based on the foregoing analysis, Defendants' Partial Motion to Dismiss Complaint (ECF No. 25) is **DENIED**.

**SO ORDERED** this 28th day of September, 2020.

**J. P. BOULEE**
United States District Judge

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SPRINT NEXTEL CORPORATION and SPRINT COMMUNICATIONS COMPANY, L.P.,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**NICHOLAS A. CARANGI and MARK JABBARIN,**<br>**Defendants.** | **CIVIL ACTION**<br><br>**NO. 12-6473** |

**<u>O R D E R</u>**

**AND NOW,** this 3rd day of May, 2013, upon consideration of Defendant Majd Jabbarin's Motion to Dismiss the Case/Complaint (Document No. 13, filed January 22, 2013), Defendant Majd Jabbarin's Motion to Dismiss the Case/Complaint (Document No. 15, filed February 7, 2013), Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss for Failure to State a Claim (Document No. 16, filed February 8, 2013), and Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Case/Complaint Filed on February 7, 2013, (Document No. 17, filed February 21, 2013), **IT IS ORDERED AS FOLLOWS:**

1. That part of Defendant Majd Jabbarin's Motions to Dismiss the Case/Complaint[1] which seeks dismissal of Counts One through Seven, and Nine through Fifteen of the Complaint, is **DENIED**.

2. That part of Defendant Majd Jabbarin's Motions to Dismiss the Case/Complaint which seeks dismissal of Count Eight of the Complaint, is **GRANTED**.

3. A preliminary pretrial conference will be scheduled in due course. Discovery may

1 Defendant Jabbarin submitted two identical Motions to Dismiss, identified as document thirteen and fifteen. For purposes of this Order, the Court refers to them collectively as "Defendant Majd Jabbarin's Motions to Dismiss the Case/Complaint."

Case 2:12-cv-06473-JD Document 20 Filed 03/06/13 Page 2 of 3

proceed in the meanwhile.

The Court's ruling is based on the following:

1. Sprint Nextel Corporation and Sprint Communications Co., L.P. (collectively "Sprint"), brought suit against two defendants, Nicholas Carangi and Majd Jabbarin for, inter alia, trademark infringement as a result of bulk sales of Sprint cellular phones.

2. Defendant Jabbarin moved to dismiss the Complaint on the grounds that, inter alia, it does not specifically allege activity beyond Jabbarin's sale of Sprint iphones via the classifieds website Craigslist. Jabbarin argues that while the Complaint generally alleges "bulk sales" and sales to overseas customers, no specific facts to that effect are alleged. It is Jabbarin's position that the Complaint does not state a claim against him for any of the violations alleged.

3. Jabbarin's Motion fails to address the Complaint in an organized fashion, and does not discuss with particularity the alleged deficiencies in each count. In sum, the Motion amounts to a general attack on the specificity of the facts alleged. The Motion is also entirely lacking in legal support, aside from stating the standard of review.

4. The Court concludes that Counts One through Four, Six, Seven, and Nine through Fifteen of the Complaint are properly pled against defendant Jabbarin. See e.g., TracFone Wireless, Inc. v. Zip Wireless Products, Inc., 716 F. Supp. 2d 1275, 1282 (N.D. Ga. 2010) (denying motion to dismiss similar claims). Defendant Jabbarin's Motion is denied as to such counts.

5. The Court denies defendant Jabbarin's Motion to Dismiss Count Five, Sprint's Unjust Enrichment claim. While "unjust enrichment is inapplicable when the relationship between the parties is founded on written agreements," where a defendant questions the enforceability of

the written agreement at issue, "it is improper to dismiss the unjust enrichment claim." Brown & Brown, Inc., 745 F. Supp. 2d at 625. Because defendant Jabbarin contests the enforceability of the Sprint phone contracts, his Motion is denied as to Count Five.

6. Counts Seven and Eight respectively allege Fraud and Fraudulent Misrepresentation. In its motion papers, Sprint states that the elements of fraud and fraudulent misrepresentation have the same essential elements under Pennsylvania law. Indeed, "[i]t is generally recognized . . . that the elements of fraud and fraudulent misrepresentation are essentially identical." A & F Corp. v. Brown, 1996 WL 466909, at *3 (E.D. Pa. Aug. 15, 1996). The facts alleged for Counts Seven and Eight are also similar. The Court concludes that as Count Eight is duplicative of Count Seven, Count Eight is not properly pled against defendant Jabbarin. See Giannone v. Ayne Inst., 290 F. Supp. 2d 553, 566 (E.D. Pa. 2003) (dismissing duplicative counts and collecting cases). Defendant Jabbarin's Motion is accordingly granted with respect to Count Eight.

**BY THE COURT:**

/s/ Hon. Jan E. DuBois

**DuBOIS, JAN E., J.**