C. Adam Buck (023128)
**RADIX LAW**
15205 N. Kierland Blvd., Suite 200
Scottsdale, AZ 85254
buck@radixlaw.com
(602) 606-9300
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**FOR THE**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Xfinity Mobile, et al.,<br><br>Plaintiffs,<br>v.<br><br>Globalgurutech, LLC, et al.<br><br>Defendants. | Case No. 2:22-cv-01950-SMB<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |

Defendants GlobalGuruTech, LLC d/b/a SellLocked ("GGT"), Guru Holdings LLC, and Jakob Zahara (collectively referred to as "Defendants") hereby file this Reply in support of their Motion to Dismiss Plaintiffs' Complaint for Damages and Injunctive Relief (Doc 24).

## I. <u>INTRODUCTION</u>

As set forth previously in Defendants' Response to Motion for Expedited Discovery, there is nothing civilly or criminally improper about GlobalGuruTech, LLC's business practices. GGT is in the business of buying cell phones from their legal and rightful owners. GGT requires those from whom they purchase to warrant that they

are the legal and rightful owner of the device they are selling. GGT has never bought any XM phones (either singly or in bulk) directly from Xfinity Mobile or any Xfinity Mobile dealer. GGT primarily purchases its phones from individuals one-at-a-time through its website SellLocked.com. Occasionally, GGT buys phones in bulk but never from an unknown individual. For example, GGT has purchased phones in bulk from airlines and police departments. GGT does not buy XM phones from Xfinity either directly or in concert with others. GGT generally advertises that it buys cell phones and when contacted by a customer, negotiates a purchase price that is fair to both parties. Despite how often Plaintiffs allege it, GGT does not defraud anyone or commit any crimes.

From Plaintiffs Response to Defendants' Motion to Dismiss Complaint for Damages and Injunctive Relief, it is clear that they have no specifics regarding any of the allegations made in the Complaint. A complaint must be both "well grounded in fact" and "legally tenable." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S. Ct. 2447, 2454, 110 L. Ed. 2d 359 (1990). Plaintiffs' Response primarily argues that the Complaint is legally tenable. But it offers no additional support that it is well grounded in fact. Plaintiffs have made general assertions that Plaintiffs' counsel has developed in over ten years suing a wide variety of people. But those generic assertions do not make the Complaint "well grounded in fact." Defendants have been inadvertently caught up in the cell phone industry's massive litigation dragnet.

Cell phone carriers act in concert, all using Plaintiffs' counsel, to sue any and all phone resellers. They typically assert at least twelve complex causes of action in federal court. They then quickly serve a deluge of subpoenas on the company's entire business network which cripples the business. *See Sprint Sols., Inc. v. Pac. Cellupage Inc.*, No. CV137862CASJCGX, 2015 WL 12656909, at *1 (C.D. Cal. Apr. 3, 2015). This forces the company into settlement, which includes a covenant not to ever buy or sell any phones ever again, along with a multimillion-dollar stipulated judgment to hang over the business owner's head in perpetuity. This litigation scheme is evidenced by all of

the cases submitted to the court in Exhibits R-T of Plaintiffs' Complaint. The Complaint should be dismissed because Plaintiffs' Response shows it is not well grounded in fact nor legally tenable.

## II. LEGAL ARGUMENT

### A. Plaintiffs have failed to plead fraud with particularity.

In their Response, Plaintiffs argue that the court should hold them to a relaxed pleading standard for their fraud claims (Count Six) because "the facts supporting the allegation of fraud are exclusively within the defendants' possession." But this is not true. Paragraph 114 of Count Six alleges that Defendants "regularly and systematically represent to Xfinity mobile that the XM phone orders are authorized, and/or that the phones are being purchased by a legitimate customer for use in accordance with the governing Terms and Conditions." If these representations were made to Xfinity, then Xfinity should have a record of who made the representations and when.

Paragraph 115 of the Complaint is not any more helpful. It simply alleges the "Defendant defrauded Xfinity Mobile to acquire XM Phones. . ." But to survive a Motion to Dismiss, Count Six must allege the "the who, what, when, where, and how" of the alleged fraud. *Cavan v. Maron*, 182 F. Supp. 3d 954, 964 (D. Ariz. 2016).

In *State of Cal. ex rel. Mueller v. Walgreen Corp*., 175 F.R.D. 631, 635 (N.D. Cal. 1997), the Court dismissed plaintiff's fraud claim because the complaint "fail[ed] to provide any specific examples of the time, place, or content of the allegedly fraudulent scheme" but instead relied entirely on general allegations. The Court held this was not sufficient to meet Rule 9(b)'s particularity requirements because "Plaintiff's generalized allegations prevent defendant from being able to defend against the alleged misconduct." *Id*. "This result is contrary to the purpose underlying Rule 9(b)'s particularity requirement." *Id*. citing *Semegen v. Weidner*, 780 F.2d 727, 730 (9th Cir.1985) (noting that Rule 9(b) is intended to "ensure[ ] that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the

fraud charged so that they can defend against the charge and not just deny that they have done anything wrong”).

The plaintiff in *Mueller* also argued that he need not plead the specific circumstances of the time, place, and manner of defendant's alleged fraud because he was alleging *corporate* fraud. *Id*. However, the court rejected that argument because “even where allegations are based upon information and belief, a plaintiff still must: (1) specifically allege that the necessary information lies within the defendant's control; and (2) include a statement of the facts upon which plaintiff's information and belief is based.” *Id*. The Court held that the plaintiff failed to meet either prong of this two-part test. Similarly, Count Six of Xfinity’s Complaint fails to meet either prong of the two-part test required to entitled it to a relaxed fraud pleading standard. Xfinity’s Complaint does not allege that any of the necessary facts are exclusively within the Defendants’ control. And it would be difficult for Xfinity to make such an allegation because Defendants supposedly made the fraudulent misrepresentations to Xfinity and Xfinity should have a record of it or an employee who would know the details of the fraudulent misrepresentations that were allegedly made. Accordingly, Count Six (Common Law Fraud and Fraudulent Misrepresentation) of the Complaint should be dismissed.

**B. It is legally impossible for Jakob Zahara to have a civil conspiracy with himself.**

In their Response, Plaintiffs do not dispute that Jakob Zahara is the sole member of both GlobalGuruTech, LLC and Guru Holdings, LLC. So, there is no one other than Jakob Zahara who can take any actions on behalf of either LLC. But Plaintiffs insist that two legal entities, solely owned by the same individual, can engage in a civil conspiracy. Plaintiffs rely on *Health Indus. Bus. Commc'ns Council Inc. v. Animal Health Inst.*, 481 F. Supp. 3d 941, 949 (D. Ariz. 2020) to support this novel legal theory. But in *Animal Health Inst.*, the two defendants were two completely unrelated business entities. One (Animal Health Institute) was “a trade association for animal

medicine manufacturers in the veterinary health industry" while the other (DXC Technology Services LLC) was an information technology software company.

Plaintiffs also cite *In re Arizona Dairy Prod. Litig*., No. CIV 74-569 A PHX CAM, 1984 WL 21984, at *2 (D. Ariz. Nov. 5, 1984) to support their civil conspiracy claim. This case also involves two completely separate companies: Shamrock Foods Co. and Beatrice Foods Co. But Defendants are not arguing that two business entities cannot have a civil conspiracy with each other – but rather that two single member LLCs owned by the same person cannot.

"Under Arizona law, civil conspiracy requires that 'two or more individuals agree and thereupon accomplish an underlying tort which the alleged conspirators agreed to commit.'" *Animal Health Inst.*, 481 F. Supp. 3d at 959 quoting *Wojtunik v. Kealy*, 394 F. Supp. 2d 1149, 1172 (D. Ariz. 2005). "A limited liability company, like a corporation, 'is not a living person, [and] it can act only through its agents.'" *In re Blast Fitness Grp., LLC*, 602 B.R. 208, 230 (Bankr. D. Mass. 2019). So, any conspiracy in this case would have to have been between Jakob Zahara as member of GlobalGuruTech, LLC and Jakob Zahara as member of Guru Holdings, LLC, which is a legal impossibility.

**C. Plaintiffs have not alleged any conduct of Defendants that would constitute "intentional interference" with Xfinity and its customers.**

In Counts Two (Tortious Interference with Business Relationships and Prospective Business Advantage) and Count Three (Tortious Interference with Contractual Relations). In their Motion to Dismiss, Defendants allege that there are no factual allegations that Jakob Zahara knew the content of the Xfinity Terms and Conditions. Mr. Zahara has never purchased a phone directly from Xfinity (which would have provided him with the Terms and Conditions) and Plaintiffs have not alleged that anyone else provided him a copy of the Terms and Conditions. In their Response, Plaintiffs simply make a general, unsupported assertion that "Defendants have knowledge of" Xfinity and its customers. (Response, page 8; lines 14-17) This is a

textbook example of "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Without any well-pleaded facts to support Defendants' knowledge of the Terms and Conditions between Xfinity and its customers, Counts Two and Three should be dismissed.

Regarding the "intentional interference" requirement for Counts Two and Three, Plaintiffs allege that Defendants "exploit the contractual relationship between Xfinity Mobile and its customers." (Response, page 8; line 28, page 9; line 1) Defendants apparently do this by advertising for and purchasing cell phones. But there is nothing wrongful about advertising to purchase cell phones. "[T]he tort of interference with financial expectations requires the existence of independent tortious conduct such as fraud, duress, or defamation." *Paint Prod. Co. v. Minwax Co.*, 448 F. Supp. 656, 658 (D. Conn. 1978). GGT's general advertising does not fall into any of these categories.

In addition, a tortious interference with prospective economic advantage claim "requires that the defendant's conduct be 'wrongful by some legal measure other than the fact of interference itself.'" *San Miguel v. HP Inc.*, 317 F. Supp. 3d 1075, 1094–95 (N.D. Cal. 2018); *Name.Space*, 795 F.3d at 1133 (quoting *Kor. Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 131 Cal.Rptr.2d 29, 63 P.3d 937, 950 (2003). The only "intentional interference" alleged in the Complaint is that GGT is generally advertising to purchase all types of cell phones, including Xfinity phones. GGT's general advertisement, without more, does not intentionally interfere with Xfinity and its customers. For example, the GGT's website does not say people do not have to honor their contracts with Xfinity nor does it induce them or encourage them to breach their contracts with Xfinity. So, there is nothing wrongful about the general advertising on GGT's website. Finally, the act of purchasing someone's cell phone does not interfere with their relationship with Xfinity. The sale of the phone does not terminate the contract with Xfinity, nor does it relieve the Xfinity customer of their legal obligations to Xfinity. Accordingly, Counts Two and Three should be dismissed.

**D. The Court should dismiss Counts Ten, Eleven and Twelve because nominative fair use appears on the face of the Complaint.**

The doctrine of nominative fair use applies when a third party uses a mark for the purpose of referring to the mark-owner's product or service and creates no likelihood of consumer confusion. *See Adobe Systems Inc. v. Christenson*, 891 F. Supp. 2d 1194, 84 A.L.R. Fed. 2d 587 (D. Nev. 2012).

"To prevail on a Rule 12(b)(6) motion to dismiss based on an affirmative defense ... a defendant must show that 'the defense is "apparent on the face of the complaint" and documents relied on in the complaint.' " *Digital Dream Labs, LLC. v. Living Tech. (Shenzhen) Co*., 587 F. Supp. 3d 305, 313 (W.D. Pa. 2022); *Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 130 (3d Cir. 2018) (quoting *Bohus v. Restaurant.com, Inc.*, 784 F.3d 918, 923 n.2 (3d Cir. 2015)). "To grant a motion to dismiss based on the affirmative defense of nominative fair use, the Court must determine whether nominative fair use appears on the face of the Complaint." *Id*. at *325*. Here, nominative fair use appears on the face of the Complaint and in the exhibits. The Complaint alleges that Defendants have infringed on Xfinity's trademark by advertising that GGT buys cell phones and the potential customer can start the process by clicking on one of five logos (Xfinity being one of them). (Complaint, ¶51). The Xfinity logo simply has the work "Xfinity" and nothing else. It is not possible for GGT to have used any less of Xfinity's name. There is no allegation that GGT used the "XFINITY MOBILE" trademark on its website.

The Complaint and exhibits even include screen shots of GGT's website. It is clear on the face of the Complaint and the exhibits that GGT only used the "Xfinity" logo for the sole purpose of referring to Xfinity's phones. There is nothing on GGT's website that might confuse a customer into thinking they are dealing with Xfinity or an Xfinity dealer. Accordingly, the Court should dismiss Counts Ten, Eleven and Twelve based on the doctrine of nominative fair use.

**E. GGT and the owners of the phones freely negotiate the purchase price of the cell phones so there is no unfair competition or unjust enrichment**.

GGT does not purchase phones directly from Xfinity or any Xfinity dealers. Rather, GGT generally advertises on its website to buy cell phones from individuals who would like to sell their phones. Xfinity negotiates deals directly with its customers, so if it is losing money from those customers then it means Xfinity is making bad deals and it needs to adjust its business practices. But, the fact that GGT negotiates at arms-length with the owner of the cell phone does not mean GGT is illegally appropriating Xfinity Mobile's investment in the phones. And GGT's subsequent arms-length deal with the owner of the phone has no impact on whether the deal Xfinity made with its customer is lucrative or not.

In its Response, Plaintiffs allege that "whether or to what extent Defendants 'fairly negotiated' a purchase price is outside the scope of the Complaint, and, therefore, cannot be considered on a motion to dismiss." (Response, page 10; lines 14-16). This simply is not true. The Complaint details an arms-length transaction between GGT and Plaintiff's investigator where GGT purchased a phone at the agreed-upon price of $80.00. (Complaint, ¶¶ 55-56). There are no allegations in the Complaint that GGT coerced Plaintiff's investigator to sell for that price or used any improper or illegal means in entering into that agreement. GGT made an offer which Plaintiff's investigator accepted. This is simply the free market system at work. So, the fact that GGT fairly negotiates a purchase price when buying phones is squarely in the Complaint and may properly be considered by the court in considering this Motion to Dismiss.

Whatever deals Xfinity cuts to make their customer the legal owner of the phone is theirs to make; just like whatever deal GGT cuts with the legal owner of the phone to purchase the phone is theirs to make. Again, this is simply the free market system at work. If Xfinity's customers are selling their phones in breach of their contracts, then Xfinity has legal remedies they can pursue against their customers. But there is no legal

basis for Plaintiffs to make GGT liable for Xfinity's customers' breach of contract. There are no well-pleaded facts to support Plaintiffs' Unfair Competition or Unjust Enrichment claims so Count One and Count Five should be dismissed.

**F. Plaintiffs do not own the XM Phones, so they have no standing to bring claims under the Computer Fraud and Abuse Act.**

Counts Seven, Eight and Nine contain only formulaic recitations of the elements of claims under the Computer Fraud and Abuse Act ("CFAA"). There are no specific details. While a complaint does not need detailed factual allegations, it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 127 S. Ct. 1955, 1964–65, 167 L. Ed. 2d 929 (2007); see *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). *Twombly*, 550 U.S. at 555–56. "Factual allegations must be enough to raise a right to relief above the speculative level" *Id.*; see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed.2004) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). So, the Court should dismiss Counts Seven, Eight and Nine on those grounds.

However, the Court should also dismiss Counts Seven, Eight and Nine because Plaintiffs do not own the XM Phones that Defendants are allegedly accessing and altering. The Complaint alleges that XM Phones are Xfinity "Protected Computers" under the CFAA. (Complaint, ¶123). Although cell phones may meet the definition of a "computer" under 18 U.S.C. § 1030(e)(1), they are not Plaintiffs' computers so Xfinity has no standing to recover under the CFAA.

The Complaint alleges that after acquiring XM Phones, the phones "are unlocked either by Defendants or their co-conspirators." (Complaint, ¶40) It also alleges that Defendants then alter XM Phones. (Complaint, ¶¶7, 70, 71, 104, 156, 166).

In paragraph 128 of the Complaint, Plaintiffs allege that Defendants:

> (1) acquire XM Phones; (2) perform various tests to confirm that the XM Phones they are purchasing are, in fact, active XM Phones; and/or (3) unlock the XM Phones, which requires the manipulation and oftentimes permanent deletion of the proprietary software that is installed in the XM Phone and make unauthorized changes in Xfinity Mobile's Protected Computers so the XM Phone will operate on other networks.

In other words, Plaintiffs are alleging violations of the Computer Fraud and Abuse Act because Defendants allegedly acquire XM Phones from Xfinity customers, access them and unlock them. First, pursuant to the Unlocking Consumer Choice and Wireless Competition Act signed into law by President Barack Obama in 2014, unlocking cell phones is permitted. The Act repealed a rulemaking determination by the United States Copyright Office that made it illegal for people to unlock their cellphones. The Act promotes consumer choice and wireless competition by permitting consumers to unlock mobile wireless devices. But second, none of the XM Phones that Defendants are allegedly accessing and unlocking belong to Xfinity, so they have no standing to bring claims under the CFAA.

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016). "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.*; See *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 473, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982); *Warth v. Seldin,* 422 U.S. 490, 498–499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). To have standing, a plaintiff must have suffered an injury in fact. *Id*. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 339. Because the XM Phones that GGT purchases

are not owned by Plaintiff, they have no injury in fact and all claims under the CFAA (Counts Seven, Eight and Nine) should be dismissed.

**G. Other courts have granted similar motions to dismiss**.

In their Response, Plaintiffs cite two other cases where the Court denied similar motions to dismiss. However, there are also instances where a court has *granted* a similar motion to dismiss. *See Sprint Sols. Inc. v. Pac. Cellupage Inc.*, No. 2:13-CV-07862-CAS, 2014 WL 3715122, (C.D. Cal. July 21, 2014). But because the complaints are different in each of these cases and because the motions to dismiss contain different legal arguments, they are not helpful.

## III. CONCLUSION

It is clear that fraud was not pled with the required level of particularity required by Rule 9(b) so, Count Six should be dismissed. Plaintiffs' Response did nothing to add any clarity or specificity to that claim. Also, common sense indicates that Jakob Zahara cannot have a conspiracy with himself or with the two LLCs he solely owns. Plaintiffs provided no case law to support such a claim. So, Count Four should be dismissed.

Also, because no intentional interference has been alleged, Counts Two and Three should be dismissed. Counts Ten, Eleven and Twelve should be dismissed because it is apparent from the face of the Complaint and exhibits that the doctrine of nominative fair use applies. GGT and the owners of the phones freely negotiate the purchase price of the cell phones, so there is no unfair competition or unjust enrichment and Counts One and Five should be dismissed. Plaintiffs' claims under the Computer Fraud and Abuse Act should be dismissed because the phones being unlocked are not owned by Plaintiffs, so, Counts Seven, Eight and Nine should be dismissed. Accordingly, Plaintiff's entire Complaint (Counts One through Twelve) should be dismissed.

DATED: January 18, 2023.

**RADIX LAW**

*/s/ C. Adam Buck*
C. Adam Buck
*Attorney for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 18, 2023, the attached document was electronically transmitted to the Clerk of the Court using the CM/ECF System which will send notification of such filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

By: */s/ K. Edmondson*