**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Xfinity Mobile, et al., | No. CV-22-01950-PHX-SMB |
| Plaintiffs, | **ORDER** |
| v. | |
| Globalgurutech LLC, et al., | |
| Defendants. | |

Pending before the Court is Defendants GlobalGuruTech, LLC, Guru Holdings LLC, and Jakob Zahara's (collectively "GGT") Motion to Strike Paragraphs 74–76 and Exhibits R–T of the Complaint. (Doc. 22.) Plaintiffs Comcast OTR1, LLC, Comcast Cable Communications LLC, Xfinity Mobile brand, and Comcast Corporation's (collectively "Xfinity") filed a Response (Doc. 28), and GGT filed a Reply (Doc. 32). Also before the Court is GGT's Motion to Dismiss. (Doc. 24.) Xfinity filed a Response (Doc. 31), and GGT filed a Reply (Doc. 33). The Court will exercise its discretion to resolve these motions without oral argument. *See* LRCiv 7.2(f) ("The Court may decide motions without oral argument."). After reviewing the briefing and relevant law, the Court will grant GGT's Motion to Strike and grant in part and deny in part GGT's Motion to Dismiss for the reasons discussed below.

## I.   BACKGROUND

Xfinity accuses GGT of unlawfully obtaining cell phones to be lucratively resold. Xfinity sells cell phones to customers that buy its high-speed internet service. (Doc. 1 at 2

¶ 1.) Customers are offered financial incentives to purchase the phones, and Xfinity recoups its investment by servicing customer accounts on its mobile wireless network. (*Id.*) GGT is solely owned and operated by Defendant Jakob Zahara. (Doc. 32-2 at 1 ¶¶ 1–2.) Operating websites SellLocked.com and iBuyLocked.com, GGT buys and resells cell phones. (*Id.* at ¶ 4; Doc. 1 at 5 ¶ 17.)

Xfinity filed this lawsuit November 2022, alleging the following claims: (1) unfair competition; (2) tortious interference with business relationships and prospective advantage; (3) tortious interference with contractual relations; (4) civil conspiracy; (5) unjust enrichment; (6) common law fraud and fraudulent misrepresentation; (7) trafficking in computer passwords; (8) unauthorized access; (9) unauthorized access with intent to defraud; (10) federal trademark infringement; (11) federal common law trademark infringement and false advertising; and (12) contributory trademark infringement. (Doc. 1 at 21–36.) More broadly, Xfinity alleges GGT is using fake or stolen identities to obtain Xfinity phones (*id.* at 2 ¶ 4), and that GGT "unlocks" those phones before reselling them abroad for a profit. (*Id.* at 3 ¶¶ 6–7.) Xfinity also alleges that GGT is infringing on its trademarks in the process. (*Id.* at 4 ¶ 10.)

GGT moves to strike some paragraphs in the Complaint and three attached exhibits. (*See* Doc. 22 at 1.) GGT also moves to dismiss all twelve of Xfinity's claims under Federal Rule of Civil Procedure 12(b)(6). (Doc. 24 at 1.)

## II.    LEGAL STANDARD

### A.    Rule 12(f)

On its own or by motion by either party, "the court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). These motions are generally disfavored "because they are often used to delay and because of the limited importance of the pleadings in federal practice." *Richardson v. Wright Med. Tech. Inc.*,

No. CV-21-00594-PHX-SMB, 2021 WL 5998517, at *5 (D. Ariz. Dec. 17, 2021) (quoting *Bilyeu v. Morgan Stanley Long-Term Disability Plan*, No. CV-08-02071-PHX-SRB, 2013 WL 12365543, at *1 (D. Ariz. Sept. 18, 2013)).

**B.    Rule 12(b)(6)**

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Rule 9(b) requires parties alleging fraud to "state with particularity the circumstances constituting fraud." This particularity requires ordinary factual allegations to be "accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal citation omitted).

**III. DISCUSSION**

    **A. Motion to Strike**

GGT argues paragraphs 74–76 and Exhibits R, S, and T to Xfinity's Complaint should be stricken. In its Reply, GGT cites another case from the Central District of California, where the court granted a motion to strike similar paragraphs and exhibits from the operative complaint—a complaint also prepared by Xfinity's counsel. (Doc. 32 at 9) (citing *Sprint Sols. Inc. v. Pac. Cellupage Inc.*, No. 2:13–cv–07862–CAS(JGx), 2014 WL 12607836, at *12 (C.D. Cal. Apr. 28, 2014)). The Court agrees with the rationale in *Sprint Solutions*, 2014 WL 12607836, at *12. Paragraphs 74 and 75 describe civil actions in other federal courts and their outcomes on behalf of Xfinity, AT&T, T-Mobile, and others. (Doc. 1 at 18 ¶¶ 74–75.) Paragraph 76 outlines numerous criminal proceedings related to bulk trafficking of mobile phones. (*Id.* at 18–21 ¶ 76.) Exhibits R, S, and T include many examples of final judgments with permanent injunctions; civil and criminal contempt orders; news articles about criminal charges levied against crime families, the black market for cell phones, raids by homeland security; and press releases from prosecutors about charges and/or convictions. (Docs. 1-18; 1-19; 1-20.) None of these paragraphs or exhibits are pertinent to this case because they do not allege or implicate conduct by GGT. *See* Fed. R. Civ. P. 12(f)(2) ("the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter . . . on motion made by a party."). The Court will therefore grant GGT's Motion to Strike.

    **B. Motion to Dismiss**

        1. <u>Unfair Competition and Unjust Enrichment Claims</u> (Counts 1 and 5)

First, GGT asserts Xfinity cannot maintain these claims because GGT "fairly" negotiates and purchases phones from their owners. (Doc. 24 at 2.) Other than this conclusory statement, GGT does not explain which aspects of Xfinity's claim are insufficiently pled. In contrast, Xfinity cites *3 Ratones Ciegos v. Mucha Lucha Libre Taco Shop 1 LLC*, No. CV-16-04538-PHX-DGC, 2017 WL 4284570, at *2 (D. Ariz. Sept. 27, 2017), to assert that its pleading sufficiency for this claim is tied to its allegations for

trademark infringement. (Doc. 31 at 7.) In its Reply, GGT again simply asserted that no aspects of its business is unfair because the prices it pays for phones are fairly negotiated. (Doc. 33 at 8.) GGT provides no legal authority to support this argument and fails to specify what allegations are missing from the Complaint. The Court will therefore deny GGT's Motion for the unfair competition claim.

Xfinity argues GGT makes only factual arguments as to the unjust enrichment claim and fails to address whether the claim's elements are sufficiently pled. (Doc. 31 at 11.) To bring an unjust enrichment claim, plaintiffs must allege "(1) plaintiff conferred a benefit upon the defendant; (2) defendant's benefit is at plaintiff's expense; and (3) it would be unjust to allow defendant to keep the benefit." *USLife Title Co. of Ariz. v. Gutkin*, 732 P.2d 579, 584 (Ariz. Ct. App. 1986). The Complaint alleges that GGT's unlawful acquisition of Xfinity cell phones has led to GGT's financial gain at Xfinity's expense. (Doc. 1 at 3–4 ¶ 8, 25 ¶¶ 109–11.) And the Complaint alleges it would be unjust to allow GGT to keep those benefits without compensating Xfinity for whatever value GGT received. (*Id.* at 25 ¶ 111.) The Court will thus deny GGT's Motion as to the unjust enrichment claim.

2. <u>Tortious Interference Claims</u> (Counts 2 and 3)

Second, GGT asserts Xfinity's two tortious interference claims must be dismissed because Xfinity does not allege that Defendant Zahara ever knew the terms of Xfinity's customer agreement. (Doc. 24 at 1–2.) GGT also contends that its website advertising is inequivalent to intentional interference. (*Id.* at 2.) Xfinity simply responds that it pled the elements of each claim. (Doc. 31 at 9.)

"The elements of a claim for tortious interference are the existence of a contractual or business relationship, knowledge of the relationship on the part of the interferor, and intentional and improper interference causing damage to the relationship." *Sunshine Media Grp., Inc. v. Goldberg*, No. CV-10-0761-PHX-DGC, 2010 WL 2899081, at *6 (D. Ariz. July 22, 2010). Courts evaluate the following seven factors to determine whether a defendant's actions are "improper": (1) nature of the defendant's conduct; (2) motive; (3) interests with which the defendant's conduct interferes; (4) interests sought to be advanced

by the defendant; (5) social interests in protecting the action versus the other party's contractual interests; (6) closeness of the actor's conduct to the interference; and (7) relations, if any, between the parties. *Neonatology Assocs., Ltd. v. Phx. Perinatal Assocs. Inc.*, 164 P.3d 691, 694 (Ariz. Ct. App. 2007).

(a) Business Expectancy

The Court finds the first four elements of this claim are sufficiently pled. The Complaint alleges that Xfinity has current and prospective business relationships with customers who purchase Xfinity mobile phones and its wireless service. (*See* Doc. 1 at 22 ¶ 84.) The Complaint also alleges that GGT knew of these relationships with Xfinity customers, and GGT has been intentionally interfering with those relationships by "affecting the supply of [Xfinity] Phones and sowing discontent in Xfinity Mobile customers whose accounts were subjected to fraudulent activations and unauthorized . . . orders by [GGT]." (*Id.* at 22–23 ¶¶ 87–90.) The Complaint continues, alleging Xfinity has suffered significant losses as a result of this interference. (*Id.* at 15 ¶¶ 63–65, 23 at ¶ 92.) While GGT contends that it only lawfully advertises and buys or sells cell phones, the Court is unpersuaded that Xfinity failed to state this claim. The Court also finds that several factors, including the nature of GGT's alleged conduct, the business interests being interfered with, and the social interests in protecting Xfinity's investment and economic activity, plausibly suggest that GGT's interference was improper. *See Neonatology*, 164 P.3d at 694.

(b) Contractual Relations

The Court finds the Complaint sufficiently sets forth the first four elements of this claim. Despite GGT's contention that Defendant Zahara lacked knowledge of Xfinity's customer agreements, the Complaint sufficiently alleges that GGT knew of Xfinity's contractional relationships with legitimate customers. (Doc. 1 at 12 ¶ 52, 24 ¶ 98.) For example, GGT's website expressly inquires as to whether phones to be sold are currently under a finance contract and whether a phone is subject to such a contract will allegedly affect the price GGT is willing to pay. (*Id.* at 12 ¶ 52, 15–16 ¶ 65.) The Complaint also

alleges that GGT exploited these contractual relationships in part by encouraging or causing Xfinity's customers to breach their customer agreements to obtain cellphones for later reselling. (*Id.*) These contractual breaches have allegedly led to Xfinity's damages. For the reasons stated above, the Court also finds the Complaint adequately asserts that GGT's interference was improper. *See Neonatology*, 164 P.3d at 694. As such, the Court will deny GGT's Motion as to Xfinity's tortious interference claims.

          3.        <u>Conspiracy Claim</u> (Count 4)

Third, GGT contends Xfinity's conspiracy claim insufficient because Defendant Zahara is the only individual named in the Complaint. (Doc. 24 at 1.) Xfinity counters that Zahara is not the only named *defendant*. (*See* Doc. 31 at 10.) Civil conspiracy requires that "two or more individuals agree and thereupon accomplish an underlying tort which the alleged conspirators agreed to commit." *Wojtunik v. Kealy*, 394 F. Supp. 2d 1149, 1172 (D. Ariz. 2005) (cleaned up). The Complaint alleges that Zahara owns and manages the other two named Defendants GlobalGuruTech LLC and Guru Holdings LLC. (Doc. 1 at 5 ¶¶ 17–19.) The Complaint also alleges that Zahara and the entities he owns "have acted as a single entity." (*Id.* ¶ 20.) Xfinity named no other defendants. The Court will therefore grant GGT's Motion without prejudice because the Complaint fails to assert enough individuals to comprise a conspiracy.

          4.        <u>Fraud and Fraudulent Misrepresentation Claim</u> (Count 6)

Fourth, GGT asserts that Xfinity failed to plead its fraud and fraudulent misrepresentation claim with sufficient particularity. GGT specifically criticizes the Complaint's lack of specificity about: what misrepresentations were made, which defendant made them, and when they were made; how the cell phones were fraudulently acquired from Xfinity or who ordered them; how the phones were stolen. (Doc. 24 at 4–5.) The Complaint alleges GGT has used fake or stolen identities to "steal" or wrongfully acquire Xfinity cell phones. (*See* Doc. 1 at 2–3 ¶ 4.) These allegations explain the "who" (Defendant Zahara and through his two companies), "what" and "how" (representations that GGT was a real Xfinity customer to acquire the cell phones), and "where" (through

Xfinity's system). (*Id.* at 13–16 ¶¶ 55–65.) The Complaint also alleges "when" (late 2021 to mid-2022) GGT bought and sold cell phones from Xfinity's undercover investigator. (*Id.*) The Court finds the fraud and fraudulent misrepresentation claim satisfies Rule 9(b). *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). GGT's Motion will therefore be denied as to this claim.

        5.      <u>CFAA Claims</u> (Counts 7–9)

Sixth, GGT asserts the Complaint contains only threadbare recitals of the claims' elements and is lacking sufficient allegations about which party allegedly obtained the unauthorized access of Xfinity's devices. (Doc. 24 at 2.) The Complaint alleges claims under the Computer Fraud and Abuse Act ("CFAA") for trafficking in computer passwords (Count 7) in violation of 18 U.S.C. § 1030(a)(6), unauthorized access (Count 8) in violation of 18 U.S.C. § 1030(a)(5)(C), and unauthorized access with intent to defraud (Count 9) in violation of 18 U.S.C. § 1030(a)(4). (Doc. 1 at 27, 30–31.) The Court is not persuaded by GGT's assertion that the Complaint contains only "formulaic recitations of the elements." (Doc. 33 at 9.) The Complaint includes numerous paragraphs explaining how the alleged scheme amounts to trafficking computer passwords and unauthorized access. (*See* Doc. 1 at 27–31.) The allegations for unauthorized access with intent to defraud overlap with the Complaint's unauthorized access claim. (*Id.* at 31–32.) Each Count specifies how GGT's alleged conduct in the scheme amounts to violations of the three cited statutes. GGT argues for the first time in its Reply that Xfinity has no standing under the CFAA because GGT owned the phones in question. (Doc. 33 at 9.) The Court will not address this argument. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1289 n.4 (9th Cir. 2000) ("[I]ssues cannot be raised for the first time in a reply."). GGT's Motion will be denied as to the CFAA claims.

        6.      <u>Trademark Claims</u> (Counts 10–12)

Lastly, GGT argues Xfinity's trademark claims require dismissal because GGT's

website use of Xfinity's logo is permissible under the fair use doctrine. (Doc. 24 at 2.) Xfinity brings claims for federal trademark infringement (Count 10), federal common law trademark infringement and false advertising (Count 11), and contributory trademark infringement (Count 12). (Doc. 1 at 32, 34, 36.) GGT asserts the defense of nominative fair use (Doc. 24 at 10), which protects a defendant's use of a plaintiff's mark "to describe the plaintiff's product, even if the defendant's goal is to describe its own product." *Health Indus. Bus. Commc'ns Council Inc. v. Animal Health Inst.*, 481 F. Supp. 3d 941, 955 (D. Ariz. 2020).

A nominative fair use defense may be established by proving the following three elements:

> First, the [plaintiff's] product or service in question must be one not readily identifiable without use of the trademark; second, only so much of the mark or marks may be used as is reasonably necessary to identify the [plaintiff's] product or service; and third, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.

*Id.* (quoting *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992)). Xfinity recognizes that while rare, this Court may determine nominative fair use at the dismissal stage. (Doc. 31 at 4–5); *Health Indus. Bus. Commc'ns Council*, 481 F. Supp. 3d at 955.

GGT contends the Complaint's only alleged use of the Xfinity mark was to identify the phone seller's carrier on GGT's websites. (Doc. 24 at 10.) Citing *Volkswagenwerk Aktiengesellschaft v. Church*, 411 F.2d 350 (9th Cir. 1969), GGT argues that using Xfinity's logo adjacent to the logos of other carriers—namely AT&T, Verizon, Sprint, and T-Mobile—does not suggest an endorsement on Xfinity's behalf. (*Id.* at 11.) Rather, it claims it advertises phones it sells as organized by the carrier. Xfinity counters that GGT's use of the mark was to sell a materially different product than Xfinity was offering, and that GGT "falsely suggested that they were sponsored or endorsed by [Xfinity]." (Doc. 31 at 5–6.)

1   The Complaint provides a snapshot into GGT's website use of the Xfinity mark.
2   (*See* Doc. 1 at 11 ¶ 51.)  This web feature allegedly "allow[s] co-conspirators to sell brand
3   new carrier-locked phones by clicking on their respective logos." (*Id.*)



10  This represents the only specific use of Xfinity's mark by GGT.  Turning to the Ninth
11  Circuit's three factor test, the Court concludes that nominative fair use warrants dismissal
12  of Counts 10–12.  Xfinity's product here are cell phones—the Complaint specifically
13  mentions iPhones.  (*Id.* ¶ 50.)  Given the large number of mobile service providers, the
14  mark's use in the Complaint was to differentiate the carrier of origin for the iPhones GGT
15  would buy.  Without use of the mark, it would not be apparent to GGT which carrier an
16  iPhone was associated with, if any.  Similarly, Xfinity's logo was used for the limited
17  purpose of this identification and differentiation.  Finally, nothing in the Complaint
18  suggests a use by GGT that suggests sponsorship or endorsement by Xfinity.  The website
19  provides an instruction to "select carrier" and allows users to choose between Xfinity and
20  many other carriers.  (*See id.* ¶ 51.)  At most, the Complaint alleges that GGT used Xfinity's
21  mark to advertise its willingness to purchase carrier-locked iPhones registered on Xfinity's
22  network.
23         The Court rejects Xfinity's material difference argument to the extent that the
24  Complaint's specific allegation about GGT's use of Xfinity's mark was limited to the
25  website's categorizing the phones GGT would purchase.  There are no allegations that
26  GGT has used Xfinity's mark to resell the phones it purchases.  Instead, the Complaint
27  asserts GGT uses the marks "in connection with the sale" of Xfinity phones.  (*Id.* at 32
28  ¶¶ 156–57, 159.)  The Complaint also alleges that the iPhones GGT sold are "new" and

"factory-sealed." (*See id.* at 13 ¶ 57.) The Court will therefore dismiss Counts 10–12 without prejudice.

### IV. LEAVE TO AMEND

"[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (cleaned up). Xfinity's amended complaint must address the deficiencies identified above and should follow the form detailed in Rule 7.1 of the Local Rules of Civil Procedure. Xfinity will have fourteen (14) days from the date of entry of this Order to submit another amended complaint, which must clearly designate on the fact of the document that it is the "First Amended Complaint." The First Amended Complaint must be retyped or rewritten in its entirety and may not incorporate any part of the original complaint by reference.

### V. CONCLUSION

Accordingly,

**IT IS ORDERED** granting GGT's Motion to Strike Paragraphs 74–76 and Exhibits R–T of the Complaint. (Doc. 22.)

**IT IS ORDERED** granting in part and denying in part GGT's Motion to Dismiss. (Doc. 24.)

**IT IS FURTHER ORDERED** dismissing without prejudice Counts 4, 10, 11, and 12. The Court grants Xfinity with leave to amend its complaint within fourteen (14) days of the date of entry of this Order. Even if Xfinity chooses not to resolve the deficiencies identified above, Xfinity must still amend its complaint to comply with the Court's orders regarding the Motion to Strike.

**IT IS FURTHER ORDERED** that GGT file an Answer no later than 20 days after the new complaint is filed.

Dated this 14th day of June, 2023.

Honorable Susan M. Brnovich
United States District Judge