1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BURCH & CRACCHIOLO, P.A.**
702 E. OSBORN ROAD, SUITE 200
PHOENIX, AZ 85014
TELEPHONE 602.274.7611

Bryan F. Murphy, SBA #006414
bmurphy@bcattorneys.com
Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

XFINITY MOBILE, a brand of
COMCAST OTR1, LLC and
COMCAST CABLE
COMMUNICATIONS, LLC, and
COMCAST CORPORATION,

Plaintiffs,

v.

GLOBALGURUTECH LLC d/b/a
SELLLOCKED.COM f/n/a
IBUYLOCKED.COM, GURU
HOLDINGS LLC, AND JAKOB
ZAHARA,

Defendants.

Case No.: 2:22-CV-01950-SMB
_____

**AMENDED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF**

**JURY TRIAL DEMANDED**

Plaintiffs Comcast OTR1, LLC and Comcast Cable Communications, LLC for themselves and their Xfinity Mobile brand ("Xfinity Mobile") and Comcast Corporation (collectively, "Plaintiffs"), sue Defendants Globalgurutech LLC d/b/a SellLocked.com f/n/a iBuyLocked.com, Guru Holdings LLC, and Jakob Zahara (collectively, "Defendants"), and state:

**BACKGROUND**

1. Xfinity Mobile sells wireless communications handsets under the brand Xfinity Mobile ("XM Phones" or "Phones") to its customers who also purchase Xfinity high speed internet service ("Xfinity Internet"). Xfinity Mobile offers financial

incentives to its customers, such as zero-interest installment payment plans for Phones, device credits subsidizing Phones for customers for 24 months, and prepaid gift cards. Xfinity Mobile recoups its investment in those financial incentives by, among other things, usage and service charges that are paid by customers who use their Phones on the Xfinity Mobile wireless network.[1]  In an effort to protect Xfinity Mobile customers and to reduce fraud, the Phones are only shipped to the address where the Xfinity Mobile customer receives Xfinity internet service.

2.      Defendants and their co-conspirators are perpetrators of an unlawful scheme to enrich themselves by stealing XM Phones and the financial incentives that are intended to benefit legitimate consumers who use Xfinity Mobile's network, thereby causing significant harm to Plaintiffs and Xfinity Mobile's customers (the "Scheme").

3.      Defendants and their co-conspirators are handset traffickers who exploit Xfinity Mobile's financial incentives to acquire Phones by using various unlawful methods to circumvent the policies and procedures that are intended to protect Xfinity Mobile and its legitimate customers, and then resell the unlawfully obtained Phones for a substantial profit.

4.      Xfinity Mobile has identified various fraudulent methods used by Defendants and their co-conspirators to unlawfully obtain new XM Phones, including, *inter alia*, using fake or stolen identities to access customer accounts or to set up fraudulent accounts and opening accounts for the sole purpose of obtaining as many phones as possible for resale and misrepresenting their intentions to use the Phones with Xfinity Mobile service, as required.  In addition to adding Phones to legitimate customer accounts without authority, Defendants and their co-conspirators sometimes use fraudulent identities and credit cards to pay for the Phones.  As Xfinity Mobile will only ship phones to a recognized customer

---

[1] Xfinity Mobile operates on its own Wi-Fi network as well as being a mobile virtual network operator ("MVNO") on the Verizon network. Xfinity Mobile contracts with Verizon to purchase service on its network for use by Xfinity Mobile's customers when not on the Xfinity Wi-Fi network, the latter of which is provided by Xfinity Mobile and its affiliates via more that 20 million hotspots nationwide.

130588225.v3

1  account address, traffickers will intercept the fraudulent orders from the delivery company

2  or before delivery to the legitimate customer.

3       5.    Plaintiffs and the entire Comcast family of companies hold their customers

4  and customer privacy in the highest regard.  Filing this lawsuit and others like it is an

5  important aspect of Plaintiffs' ongoing commitment to protect customers and their

6  privacy from traffickers and others who seek to profit by stealing the financial incentives

7  offered by Xfinity Mobile to legitimate consumers.

8       6.    As part of the Defendants' Scheme, XM Phones are resold multiple times,

9  usually in larger and larger consolidated lots by and among various other handset

10  traffickers who know or should have known the unlawful status of the Phones.  With each

11  new sale, the price of the stolen XM Phone goes up, and a new round of traffickers

12  knowingly profit at the expense of Plaintiffs.  Ultimately, the Phones end up in a foreign

13  country where they can be sold at higher prices than in the U.S. and where wireless service

14  providers generally do not provide financial incentives to facilitate the acquisition of

15  wireless handsets.  Along the way, the Phones must be "unlocked" so they will operate on

16  a wireless network other than Xfinity Mobile's.

17       7.    Ultimately, the Phones are sold at or above market value to an end user in a

18  foreign country who believes they are purchasing a new phone, not one that was

19  manufactured and sold for use on Xfinity Mobile's wireless network in the United States,

20  and that has been tampered with and altered from its original and intended state.

21       8.    The Scheme illicitly converts Xfinity Mobile's substantial investment in its

22  Phones directly into profits for Defendants and their co-conspirators.  Although each

23  trafficker may participate in less than all of the steps in the process of unlawfully

24  diverting XM Phones, they are necessarily reliant on their co-conspirators to obtain,

25  purchase, sell, advertise, unlock, ship, repackage, and resell, to make money from the

26  Scheme.  Therefore, every act by a trafficker in furtherance of the conspiracy renders that

27  trafficker liable to Plaintiffs for the harm caused by the entire Scheme.

28

9.      The Scheme causes harm to Plaintiffs and Xfinity Mobile's customers. Plaintiffs suffer pecuniary losses from the theft of the XM Phones and the loss of financial incentives Xfinity Mobile provides to its legitimate customers, as well as its lost investment in sales, marketing and related costs, and the loss of expected customer revenue from service allocated to each Phone.   Additionally, the misconduct by Defendants and their co-conspirators significantly harms Xfinity Mobile's relationships with its customers and others.   For example, legitimate customers whose accounts are targeted and attacked by Defendants and their co-conspirators are distressed and may seek to blame Xfinity Mobile.   Further, Defendants and their co-conspirators often target a particular make and model of Phone and will attempt to collect as many of those Phones as possible through fraud and theft, creating a shortage or delay for legitimate customers.

10.     The Scheme also involves the willful infringement of the XFINITY and XFINITY MOBILE trademarks, causing substantial damage to Plaintiffs' goodwill, image, and reputation.

11.     Plaintiffs seek to recover damages for the harm they have and continue to suffer due to Defendants' Scheme and to obtain an injunction prohibiting Defendants from continuing to perpetrate the Scheme and harm Plaintiffs, and Xfinity Mobile's legitimate customers.

12.     All conditions precedent to filing this action have been performed, waived or excused.

13.     Plaintiffs have retained the undersigned attorneys to represent them in this action and has agreed to pay their attorneys a reasonable fee for their services.

### PARTIES, JURISDICTION, AND VENUE

14.     This is an action for damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

15.     Plaintiff Comcast OTR1, LLC ("Comcast OTR1") is a Delaware limited liability company, with its principal place of business in Philadelphia, Pennsylvania.   The

130588225.v3

sole member of Comcast OTR1 is Comcast Phone, LLC, a Delaware limited liability company that maintains its principal place of business in Philadelphia, Pennsylvania. The sole member of Comcast Phone, LLC is Comcast Cable Communications, LLC, a Delaware limited liability company that maintains its principal place of business in Philadelphia, Pennsylvania. The sole member of Comcast Cable Communications, LLC is Comcast Holdings Corporation, a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania.

16.     Plaintiff Comcast Corporation is a Pennsylvania corporation, with its principal place of business in Philadelphia, Pennsylvania.

17.     Defendant Globalgurutech LLC d/b/a SellLocked.com f/n/a iBuyLocked.com ("SellLocked") is a Wyoming limited liability company. Upon information and belief, its principal place of business is in Fountain Hills, Arizona.

18.     Defendant Guru Holdings LLC ("Guru Holdings") is an Arizona corporation with its principal place of business in Oro Valley, Arizona. Upon information and relief, Guru Holdings and SellLocked are related companies.

19.     Defendant Jakob Zahara ("Zahara") is an individual residing in Fountain Hills, Arizona. Upon information and belief, he is the owner and manager of SellLocked and Guru Holdings, and is personally engaged in, and helps facilitate, the improper conduct described herein.

20.     Upon information and belief, at all times relevant hereto, Defendants have failed to observe the corporate formalities required by law, have acted as a single entity, and have shared resources and corporate infrastructure, including, but not limited to computer services, telephone numbers, employees, and office space. Accordingly, each Defendant is liable for the acts and omissions of every other Defendant pursuant to piercing of the corporate veil, among other legal principles.

21.     Each Defendant is the partner, joint venturer, accomplice, agent, and alter ego of each of the other Defendants.

5

22.     Each Defendant is equally liable in relation to the illegal activities described herein on the basis of that Defendant's material participation in the Scheme.

23.     Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§1331, 1332, and 1338 because Plaintiffs' claims for violation of the United States Trademark Act, Title 15 of the United States Code and the Computer Fraud and Abuse Act, 18 U.S.C. §1030, *et seq.*, arise under federal law, and because diversity exists between the parties and the amount in controversy exceeds $75,000 exclusive of costs, fees, and interest.  Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiffs' state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

24.     Defendants are subject to the personal jurisdiction of this Court because they reside in Arizona, regularly transact business in Arizona, and committed tortious acts in Arizona.

25.     Venue is proper pursuant to 28 U.S.C. §1391(b) because the Defendants reside in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## XFINITY MOBILE'S BUSINESS MODEL

26.     Comcast Corporation is an international media and technology company with three primary operating companies: Comcast Cable, NBCUniversal, and Sky. Comcast Cable, among other things, offers high-speed Internet, video, voice, and security and home automation services in the United States individually and as bundled services at a discounted rate over its cable distribution system to residential and business customers.  Xfinity Mobile uses Comcast Cable's extensive Wi-Fi network of hotspots and Verizon's wireless network to provide its customers with a superior wireless experience, for less money, on the most popular high-end devices.

27.     Xfinity Mobile currently provides wireless phone service to approximately 5 million customer lines, and provides its customers with high quality, discounted services with innovative pricing plans and self-service tools. Xfinity Mobile and its

1    affiliates highly value the outstanding business reputation they have worked hard to
2    develop.

3         28.    Xfinity Mobile provides unlimited nationwide talk and text and either
4    unlimited or by the Gig data plans for use on the most popular wireless devices on the
5    Xfinity Mobile wireless network.  In addition to being available online, through telesales,
6    and in its stores, XM Phones and wireless service are available through authorized Xfinity
7    Mobile dealers around the country.

8         29.    Xfinity Mobile's business model is based upon the ability to deliver
9    affordable quality products and services to consumers.   Therefore, Xfinity Mobile
10   provides discount pricing, zero-interest installment payment plans, and/or other financial
11   incentives.  Xfinity Mobile recoups these financial incentives in part through profits
12   earned on the sale of Xfinity Mobile monthly service, which is required to make and
13   receive calls and text messages on, and transmit data through, the XM Phones.  Xfinity
14   Mobile is able to offer its XM Phones and wireless service to customers with financial
15   incentives only if the XM Phones are used as intended on the Xfinity Mobile network.

16        30.    Manufacturers that produce the XM Phones for Xfinity Mobile install
17   proprietary software, requested and paid for by Xfinity Mobile.  Among other things, this
18   software prevents XM Phones from being used outside the Xfinity Mobile network
19   without authorization.

20                    **XFINITY MOBILE'S TRADEMARK RIGHTS**

21        31.    Comcast Corporation owns the standard character and stylized XFINITY®
22   and XFINITY MOBILE® marks and authorizes the right to use said marks to Comcast
23   OTR1 (collectively, the "Xfinity Mobile Marks").[2]   The stylized Xfinity and Xfinity
24   Mobile marks are depicted below:

25
26



27   _____

28   [2]  True and correct copies of the certificates of registration issued by the United States
     Patent and Trademark Office for XFINITY® and stylized XFINITY MOBILE® are
     attached hereto as **Composite Exhibit A**.

                                        7

32.   Xfinity Mobile uses the Xfinity Mobile Marks on and in connection with its communications products and services.

33.   As a result of the high quality of Xfinity Mobile's products, services, sales, promotion and advertising thereof, the Xfinity Mobile Marks have become an intrinsic part of the valuable goodwill and property of Comcast Corporation.  The Xfinity Mobile Marks are well known and established to customers and the trade as symbols identifying and distinguishing Xfinity Mobile's products and services, and signifying distinctive products and services of high quality.  Only Plaintiffs and their authorized, affiliated agents or partners are permitted to use the Xfinity Mobile Marks.  The Xfinity Mobile Marks are valid, distinctive, protectable, famous, have acquired secondary meaning, and are associated exclusively with Comcast Corporation and Xfinity Mobile.

34.   Defendants are not in any way or for any purpose affiliated with Plaintiffs and, therefore, cannot lawfully use the Xfinity Mobile Marks.

35.   Plaintiffs have never authorized Defendants to use the Xfinity Mobile Marks in any way or for any purpose.

36.   Defendants' unlawful use of the Xfinity Mobile Marks began after the Marks became famous and acquired distinctiveness.

37.   Defendants use the Xfinity Mobile Marks to obtain and resell the Phones that they illicitly acquire through the Scheme.

38.   Defendants advertise and sell materially-different Phones bearing the Xfinity Marks.  The XM Phones that Defendants sell are materially-different because they have been altered from their original state, namely, they are unlocked, they are not approved by Xfinity Mobile's quality controls, they do not include the warranties, accessories, manuals, and related items that constitute part of the XM Phone package, and/or they are inoperable on Xfinity Mobile service.

8

1
2

## TERMS AND CONDITIONS REGARDING
## THE USE OF XFINITY MOBILE PHONES

3   39.   XM Phones are sold subject to terms and conditions ("Terms and

4   Conditions") that restrict and limit the sale and use of the Phones.  A copy of the current

5   Terms and Conditions is attached hereto as **Exhibit B**.  The Terms and Conditions are

6   publicly available on Xfinity Mobile's website at

7   https://www.xfinity.com/mobile/policies/customer-agreement and

8   https://www.xfinity.com/mobile/policies/device-payment-plan-agreement. All purchasers

9   must agree to the Terms and Conditions.  Anyone who does not agree to the Terms and

10   Conditions has the option to return the Phone(s) to Xfinity Mobile in accordance with the

11   posted policies.

12   40.   Limitations set out in the Terms and Conditions provide notice that XM

13   Phones are only to be used with Xfinity Mobile's wireless services.   The Terms and

14   Conditions: (a) require that the customer pay monthly service charges and other related

15   fees; (b) require the customer to use the Phone for Xfinity Mobile's wireless services; (c)

16   prohibit modifying the Phone from the manufacturer's specifications; (d) prohibit stealing

17   from or making false statements to Xfinity Mobile, such as to obtain new XM Phones for

18   the purpose of resale and not for use with XM service; (e) prohibit resale of XM Phones in

19   violation of the terms and conditions; and (f) prohibit acting in any manner that damages or

20   is otherwise adverse to Xfinity Mobile or its customers.

21   ## DEFENDANTS' MISCONDUCT

22   41.   Although large quantities of XM Phones are being acquired throughout the

23   United States, Xfinity Mobile has learned that a number of them are not being activated for

24   use on the Xfinity Mobile network.  Instead, entities and individuals, such as Defendants

25   and their co-conspirators, with no intention of lawfully connecting to or using Xfinity

26   Mobile's wireless services, are fraudulently acquiring and reselling XM Phones in bulk.

27   The Phones are acquired, either directly by Defendants or through their co-conspirators,

28   and then sold for a substantial profit and shipped directly overseas to be used on foreign

carriers' networks.  At some point before being shipped overseas, the Phones are usually taken out of their original packaging, and all accessories, warranties, and manuals are removed.  The Phones are unlocked either by Defendants or their co-conspirators, to increase their value and enable their use on foreign wireless networks.

42.   Those new Phones acquired through theft or fraud that are not shipped overseas are often sold in bulk domestically for inclusion in larger overseas shipments or for the warranty market.  Defendants and their co-conspirators undertake these actions for their own profit.

43.   When an XM Phone is unlocked and shipped overseas or resold domestically to be used on other wireless networks, Xfinity Mobile has no revenue source to recoup its financial investment in that Phone.

44.   If Xfinity Mobile identifies a Phone as connected with theft, fraud, or other loss, the International Mobile Station Equipment Identity ("IMEI") is logged into Xfinity Mobile's system and the Phone can no longer be activated or used on the Xfinity Mobile network unless or until that designation is changed by Xfinity Mobile.  Xfinity Mobile also provides the IMEI to the Global System for Mobile Communications Association (GSMA) for inclusion in the industry list of "blocklisted" phones.  This is done in an attempt to deter fraud and criminal activity.  The Phone is thereafter referred to in the handset trafficking community as having a "Bad IMEI."  As it is no longer a functioning XM Phone, the only value of a Bad IMEI Phone is in unlocking the phone for use on other domestic wireless networks and for overseas resale.

45.   Defendants are not and have never been authorized Xfinity Mobile distributors or retailers.

46.   Defendants have no legitimate connection to Xfinity Mobile.

47.   Defendants are not licensed or authorized to use the Xfinity Mobile Marks.

48.   In an effort to prevent unlawful business practices, such as those perpetrated by Defendants and their co-conspirators, Xfinity Mobile has, among other things, implemented policies limiting the number of XM Phones an individual may

130588225.v3

purchase and instituted extensive fraud detection and prevention protocols and procedures. Xfinity Mobile also denominates all phones identified as stolen, confirmed fraud or otherwise connected to illicit activities as "blocklisted" f/k/a "blacklisted," which prevents the phones from being activated on Xfinity Mobile or any other participating network. Defendants and/or their co-conspirators intentionally flout and work to circumvent these preventative measures in perpetrating their Scheme.

49.     Defendants are knowingly and willfully engaged in an illegal enterprise that unlawfully traffics in and resells XM Phones.  Defendants have purchased and sold large quantities of XM Phones through or with various co-conspirators.  By its nature, fraud schemes, such as the one perpetrated by the Defendants, are intentionally concealed to avoid detection.  While the complete extent of Defendants' activities in the Scheme is not yet known, Defendants are actively involved in several integral components of the conspiracy.  Some of those components are discussed below.

50.     Defendants own and operate the website www.selllocked.com and have been denominated the "#1 Rated Blacklisted Phone Buyer Online."  *See* "Sell a Blacklisted Phone with a Bad ESN/Blacklisted IMEI", www.bankmycell.com (last visited November 14, 2022), a copy of which is attached hereto as **Exhibit C**.

51.     Defendants advertise themselves as "one of the few buyers who purchase locked and blacklisted iPhones." A sample advertisement on SellMyCellPhones.com is attached hereto as **Exhibit D**.

52.     As part of its website, Defendants allow co-conspirators to sell brand new carrier-locked phones by clicking on their respective logos:



53.     It is unnecessary for Defendants to use the carriers' logos as part of their business.   Using the Xfinity logo suggests an affiliation or endorsement by Plaintiffs when there is none.

54.     Other than to further illicit commercial activity—to gauge the difficulty of illegally unlocking the phones, the likelihood the phones will relock after being unlawfully unlocked, or the possible ramifications or repercussions of dealing in particular phones—the name of the carrier is irrelevant Defendants' business as these phone are ultimately unlocked for use on other networks.

55.     Defendants advertise that they are trafficking phones that have been "activation locked," are still owned by a service provider under a finance contract or are blocked, by anyone for any reason:



56.     Defendants make clear that they traffic phones in bulk, which includes blocked, new Xfinity Mobile phones:

130588225.v3



57.     Xfinity Mobile investigators discovered that Defendants have been engaged in this illicit business for some time. Before SellLocked, Defendants operated iBuyLocked using an identical model of trafficking illicitly obtained phones to profit at the expense of the service providers, including Xfinity Mobile.

13

1      58.     On October 21, 2021, Xfinity Mobile's undercover investigator visited

2    Defendants' www.selllocked.com website and, through the website's online portal,

3    offered to sell Defendants a brand new, factory sealed, blocklisted Xfinity Mobile iPhone

4    SE, 64 GB device with IMEI 356468108689406.  Defendants offered to purchase the

5    device for $80.00.  A copy of Defendants' offer is attached as **Exhibit E**.

6      59.     After accepting the offer, Xfinity Mobile's undercover investigator received

7    a shipping label from UPS Ground that identified the shipping address as Selllocked.com,

8    13771 N Fountain Hills Blvd #114, Fountain Hills, AZ  85268.  A copy of the shipping

9    label is attached as **Exhibit F**.  The brand new, factory sealed, blocklisted Xfinity Mobile

10   iPhone SE, 64 GB device was sold and shipped to Defendants on November 11, 2021.

11   To date, this iPhone SE has not been activated on the Xfinity Mobile wireless network.

12     60.     Xfinity Mobile continued its investigation of Defendants and on April 5,

13   2022, Defendant Zahara sent Xfinity Mobile's undercover investigator a list of phones

14   Defendants were offering for sale.  A copy of this communication is attached hereto as

15   **Exhibit G**.  The list included eleven Xfinity Mobile iPhone 13s.  Xfinity Mobile

16   confirmed that at least five of these devices were connected to a larger fraud incident

17   involving fabricated IDs that was impacting Xfinity Mobile phones at that time.

18     61.     When Xfinity Mobile's undercover investigator responded to Defendant

19   Zahara expressing interest in buying the Xfinity Mobile devices, Zahara said that he sold

20   them to a Dubai buyer, but he would be receiving more XM Phones.  A copy of these

21   communications are attached hereto as **Exhibit H**.

22     62.     On May 6, 2022, Defendant Zahara sent Xfinity Mobile's undercover

23   investigator a list of phones Defendants were offering for sale, which included an Xfinity

24   Mobile iPhone 11 with IMEI 356460909943991.  A copy of this communication is

25   attached hereto as **Exhibit I**.  When Xfinity Mobile's undercover investigator offered to

26   purchase the device, Zahara said that he sold it.  A copy of these communications are

27   attached hereto as **Exhibit J**.

28

14

63.     On June 9, 2022, Xfinity Mobile's undercover investigator visited Defendants' www.selllocked.com website and offered to sell Defendants two brand new, factory sealed, blocklisted Xfinity Mobile iPhone 13 Pro Max, 128 GB devices through its online portal.  Defendants offered to purchase these devices for $515 per device.  A copy of Defendants' offer is attached as **Exhibit K**.

64.     After accepting the offer, Xfinity Mobile's undercover investigator received a shipping label from UPS Ground that identified the shipping address as Selllocked.com, 13771 N Fountain Hills Blvd #114, Fountain Hills, AZ  85268.  A copy of the shipping label is attached as **Exhibit L**.  Rather than sending the iPhone 13 Pro Max devices, Xfinity Mobile's undercover investigator sent Defendants two brand new, factory sealed, blocklisted Xfinity Mobile iPhone 13 Pro, 128 GB devices. The two Xfinity Mobile iPhone 13 Pro, 128 GB devices with IMEIs 352129380935792 and 352129380910860 were shipped to Defendants on June 9, 2022.  Within days, SellLocked contacted Xfinity Mobile's investigator regarding the discrepancy, confirming that Defendants inspect the phones they receive. A copy of these communications is attached as **Exhibit M**. To date, these iPhone 13 Pro devices have not been activated on the Xfinity Mobile wireless network.

65.     On July 11, 2022, Xfinity Mobile's undercover investigator received an offer list from Defendant Zahara that included 8 brand new XM Phones.  A copy of this communication is attached as **Exhibit N**.

66.     Virtually all of the Xfinity Mobile phones that Defendants offered to the investigator had recently been obtained (from January through April 2022) through fraudulent orders of financed phones placed on newly established accounts via the Xfinity Mobile online webpage or by telephone. The phones were all the latest, most expensive iPhones—the 13 Pro Max, with the majority being the 512GB or the 1TB models. None of the phones appeared on the Xfinity Mobile network and all of the phones were a total loss for Xfinity Mobile.

67.     By their own admission, Defendants routinely traffic new Xfinity Mobile phones and they continue to openly solicit for the purchase of new phones that are financed, blacklisted/blocked, activation locked, or unlocked (which includes previously locked provider phones) on their website www.selllocked.com:



A copy of the relevant pages of Defendants' website are attached hereto as **Exhibit O**.

68.     As of October 31, 2022, Defendants were willing to pay $535.00 for a brand new, factory sealed, blocklisted Xfinity Mobile iPhone 14 Pro Max, 512 GB device—a phone that was just released on October 7, 2022 and retails new for $1,399.  A copy of the offer from Defendants' website is attached hereto as **Exhibit P**.  If the same iPhone was unlocked or still subject to a finance contract, Defendants would purchase it for $570.00.  A copy of the offer from Defendants' website is attached hereto as **Exhibit Q**.

69.     By their own admission, Defendants sell and ship new Xfinity Mobile phones overseas for use on other networks. Upon information and belief, many of the Xfinity Mobile Phones that Defendants sell and ship overseas are not factory-sealed. Additionally, in researching the phones identified by Defendants in their communications with the investigator, Xfinity Mobile confirmed overseas activation.

70.     Defendants use the Xfinity Mobile Marks in numerous ways outside of their public facing website.  Upon information and belief, Defendants use the Xfinity Mobile Marks in the advertising, promotion, and resale of their materially-different Phones.

16

130588225.v3

71.     Defendants' use of the Xfinity Mobile Marks exceeds fair use.

72.     Because Defendants deal with traffickers located throughout the United States and around the world and their unlawful transactions are often concealed, discovery, including third party depositions and other discovery, will be necessary to identify all of Defendants' co-conspirators and determine the extent of their activity, and to quantify the totality of the harm they caused to Xfinity Mobile, its customers, and United States consumers.

**SUBSTANTIAL HARM CAUSED BY DEFENDANTS' MISCONDUCT**

73.     Defendants' actions substantially harm Plaintiffs in several ways, including *inter alia*: (1) Xfinity Mobile is deprived of the opportunity to recoup its substantial investment in new Xfinity Mobile Phones; (2) Xfinity Mobile is deprived of the opportunity to earn profits by providing wireless service to legitimate Xfinity Mobile consumers; (3) Defendants' actions seriously and irreparably interfere with Xfinity Mobile's relationships with its customers and others; (4) Defendants' infringement of the Xfinity Mobile name and Xfinity Mobile Marks causes significant ongoing and irreparable losses and harm to Plaintiffs' goodwill, image, and reputation; and (5) Defendants' misconduct and the harm it causes undermines Xfinity Mobile's competitive position in the wireless industry.

74.     The conduct of Defendants, their known and unknown co-conspirators, and others who engage in the unlawful acquisition and resale of new XM Phones impacts the number of available XM Phones for customers, particularly the most in-demand models such as the XM iPhone 13 Pro and Pro Max devices trafficked by Defendants. This misconduct substantially harms Xfinity Mobile and its relationship with consumers when Xfinity Mobile is not able to meet the demand from legitimate consumers who, as a result, go elsewhere for their communications services.

75.     Xfinity Mobile suffers additional, irreparable harm when the XM Phones are removed from the original packaging and altered, because Xfinity Mobile is deprived of the means to control the quality of its product.  This becomes especially damaging

when a potential legitimate Xfinity Mobile customer within the United States acquires a Phone from Defendants that the customer believes is a genuine XM Phone that is usable for Xfinity Mobile services, and is later disappointed in Xfinity Mobile when the Phone does not work as intended with Xfinity Mobile because it has been denominated a Bad IMEI Phone or otherwise altered by Defendants or their co-conspirators.

76.     Furthermore, the process of unlocking and reselling an XM Phone voids the manufacturer's warranty on the device.  The unlocked, repackaged XM Phones are resold without the original manufacturer's warranty documentation.  Both consumers and Xfinity Mobile are harmed when an XM Phone that has been altered or sold by Defendants or their co-conspirators is submitted for warranty repair.  Unsuspecting consumers who purchase unlocked and/or flagged XM Phones from Defendants or their co-conspirators are unable to obtain warranty service in the event they experience problems with their Phones and cannot activate banned Phones with Bad IMEIs because they were obtained by theft or fraud, which diminishes Xfinity Mobile's reputation.

77.     Defendants' continuing conduct results in substantial harm to Plaintiffs' business reputation and goodwill; a greater likelihood of confusion, mistake, and deception as to the source of origin of Xfinity Mobile products unlawfully sold by the Defendants; and confusion as to what, if any, relationship exists between Plaintiffs and Defendants.

78.     In addition, Defendants' and their co-conspirators' improper and unauthorized fraudulent purchases of XM Phones on the accounts of legitimate customers results in calls by confused and angry consumers to Xfinity Mobile's customer relations department.  Xfinity Mobile incurs significant costs associated with resolving such situations, and investigating such fraud, and its reputation suffers further as a result of the unlawful conduct.

130588225.v3

## COUNT ONE

## UNFAIR COMPETITION

79.    Plaintiffs reassert the allegations set forth in Paragraphs 1-78 as though fully set forth herein.

80.    Defendants' conduct in acquiring and/or inducing others to acquire XM Phones, disabling or unlocking, inducing others to disable or unlock, and/or assisting others to disable or unlock the Phones, and reselling and/or assisting others to resell the Phones as new for activation on other wireless networks or for use as warranty replacement Phones constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices in violation of the common law of the State of Arizona.

81.    Defendants' conduct in acquiring, selling, inducing others to sell, and/or conspiring with others to sell new XM Phones undermines Xfinity Mobile's incentive programs, illegally appropriates Xfinity Mobile's investment in the Phones, and constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices in violation of State law.

82.    Defendants' use of at least one of the Xfinity Mobile Marks in connection with the sale of unlocked, materially-different XM Phones has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendants' materially-different products and services, and the relationship between Plaintiffs and Defendants.  Thus, Defendants have also engaged in unfair competition with Plaintiffs by selling and/or offering and promoting their products with the intention of trading upon the goodwill established by Plaintiffs and are thereby misappropriating the benefits of substantial effort and money expended by Plaintiffs in establishing its rights in and to the Xfinity Mobile Marks.

83.    Defendants' conduct complained of herein was and continues to be intentional, malicious, and willful, and has caused substantial harm to Plaintiffs.

19

84.     There is no adequate remedy at law to fully compensate Plaintiffs for the harm caused by Defendants' unfair competition.

**COUNT TWO**

**TORTIOUS INTERFERENCE WITH BUSINESS**

**RELATIONSHIPS AND PROSPECTIVE ADVANTAGE**

85.     Plaintiffs reassert the allegations set forth in Paragraphs 1-78 as though fully set forth herein.

86.     A business relationship, and an expectancy of business relationships, exists between Xfinity Mobile and the purchasers and prospective purchasers of its XM Phones and wireless service.

87.     There is a high probability of future economic benefit to Xfinity Mobile as a result of these current and prospective business relationships.

88.     Defendants have knowledge of and have intentionally and unjustifiably interfered with, and/or have knowingly facilitated a conspiracy to interfere with, these current and prospective business relationships between Xfinity Mobile and legitimate Xfinity Mobile customers or prospective customers.

89.     Specifically, but without limitation, Defendants knew that Xfinity Mobile has business relationships, and an expectancy of business relationships, with legitimate consumers of XM Phones, internet, and wireless service.  Defendants interfered with these relationships by engaging in their Scheme, which includes affecting the supply of XM Phones and sowing discontent in Xfinity Mobile customers whose accounts were subjected to fraudulent activations and unauthorized Phone orders by Defendants and/or their co-conspirators.

90.     Defendants are intentionally interfering with Xfinity Mobile's business relationships and prospective advantages through improper means and in violation of the law.

91.     Defendants engaged in the acts of interference set forth herein with a conscious desire to prevent the relationships from occurring or continuing or Defendants

20

knew that the interference was certain or substantially certain to occur as a result of their conduct.

92.     Defendants have knowledge of and have intentionally and unjustifiably interfered with, and/or have knowingly facilitated a conspiracy to interfere with, these business relationships between Xfinity Mobile and its legitimate Xfinity Mobile customers.

93.     Defendants' acts injured and continue to injure Xfinity Mobile's business relationships and contractual relationships.

94.     Xfinity Mobile has been proximately damaged and continues to be damaged as a result of Defendants' interference.

95.     There is no adequate remedy at law to fully compensate Xfinity Mobile for the harm caused by Defendants' tortious interference.

<u>**COUNT THREE**</u>

**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**

96.     Plaintiffs reassert the allegations set forth in Paragraphs 1-78 as though fully set forth herein.

97.     A contractual relationship and an expectancy of a contractual relationship exists between Xfinity Mobile and its customers and prospective customers, the purchasers of its XM Phones and wireless service.

98.     There is a reasonable likelihood that these prospective business relationships and contracts would occur but for the unjustified interference of Defendants and/or their co-conspirators.

99.     Defendants have knowledge of and have intentionally and unjustifiably interfered with, and/or have knowingly facilitated a conspiracy to interfere with, these contracts between Xfinity Mobile and legitimate Xfinity Mobile customers or prospective customers.

100.     Specifically, but without limitation, Defendants knew that Xfinity Mobile has contractual relationships with legitimate consumers of XM Phones and wireless

130588225.v3

service.  In fact, Defendants and their co-conspirators rely on and exploit the contractual relationship between Xfinity Mobile and its customers to unlawfully obtain and resell XM Phones.  Defendants interfered with these relationships by engaging in the Scheme and causing Xfinity Mobile customers to doubt or resent their relationship with Xfinity Mobile, encouraged or caused customers to breach their contracts with Xfinity Mobile, and caused, at least in part, Xfinity Mobile to have an insufficient supply of XM Phones available to meet legitimate consumer demand.

101.    Defendants engaged in the acts of unjustifiable interference set forth herein with a conscious desire to induce breach of contract, or Defendants knew that breach of contract was certain or substantially certain to occur as a result of their conduct.

102.    Defendants' acts are not motivated by legitimate business reasons.

103.    Xfinity Mobile has been proximately damaged and continues to be damaged as a result of Defendants' interference.

104.    There is no adequate remedy at law to fully compensate Xfinity Mobile for the harm caused by Defendants' tortious interference.

## COUNT FOUR

## CIVIL CONSPIRACY

105.    Plaintiffs reassert the allegations set forth in Paragraphs 1-78 as though fully set forth herein.

106.    An agreement and conspiracy existed and continues to exist between and among the Defendants and other co-conspirators to unlawfully acquire in bulk, traffic, and resell unlawfully unlocked and materially-altered XM Phones, which results in unfair competition, tortious interference with business relationships and prospective advantage, tortious interference with contract, unjust enrichment, and violation of the federal Computer Fraud and Abuse Act, among other things.

107.    Defendants' co-conspirators include, but are not limited to, the individuals and companies, whose identities are known to Defendants, that: (a) unlawfully obtained and sold XM Phones to the Defendants; (b) unlawfully unlocked the XM Phones to

130588225.v3

enable Defendants to resell devices; (c) knowingly shipped fraudulently acquired XM Phones to and from Defendants; and (d) purchased and resold materially-different XM Phones from Defendants.  The names and identities of these individuals and companies will be identified in discovery.  Representative examples include:

    a. Upon information and belief, Defendants conspired with notorious overseas bulk unlocker SNU Unlockers, to unlock illicitly obtained XM Phones for overseas resale.

    b. Upon information and belief, Defendants conspired with an individual identified to Xfinity Mobile as Juanita S. with a Michigan address to engage in the Scheme, namely, to use fraud and deception to unlawfully acquire brand new XM Phones with the sole intention to resell them at a substantial profit.[3]

    c. Upon information and belief, Defendants conspired with an individual identified to Xfinity Mobile as Morgan G. with a Texas address to engage in the Scheme, namely, to use fraud and deception to unlawfully acquire brand new XM Phones with the sole intention to resell them at a substantial profit.

108.   Each Defendant knowingly agreed to engage, and did engage, in one or more overt acts in pursuit of the conspiracy as set forth with more particularity in this Amended Complaint.

109.   Plaintiffs have been proximately damaged by the conspiracy and Defendants' actions in furtherance thereof.

110.   There is no adequate remedy at law to fully compensate Plaintiffs for the harm caused by Defendants' conspiracy.

---

[3] Out of an abundance of caution, in the event the co-conspirators engaged in identity theft, Xfinity Mobile is not publicly disclosing the full names and other information it received as part of the account opening process.

130588225.v3

## COUNT FIVE

### UNJUST ENRICHMENT

111.    Plaintiffs reassert the allegations set forth in Paragraphs 1-78 as though fully set forth herein.

112.    By unlawfully acquiring XM Phones for use with wireless services other than Xfinity Mobile's services and reselling the XM Phones for profit through various means, namely, theft and fraud, all in direct violation of the express provisions of the Terms and Conditions, Defendants have obtained benefits from Xfinity Mobile that have caused significant harm to Xfinity Mobile and resulted in significant financial gain to Defendants through their resale of the illicitly-acquired XM Phones.

113.    Defendants have acquired the benefits voluntarily and with full knowledge of the benefits.

114.    Defendants have retained the benefits under such circumstances that make it unjust and inequitable for Defendants to retain the benefits without paying Xfinity Mobile the value of the benefits Defendants acquired.

115.    There is no adequate remedy at law to fully compensate Xfinity Mobile for the harm caused by Defendants' unjust enrichment.

## COUNT SIX

### COMMON LAW FRAUD AND FRAUDULENT MISREPRESENTATION

116.    Plaintiffs reassert the allegations set forth in Paragraphs 1-78 as though fully set forth herein.

117.    As part of their Scheme, each Defendant, directly or indirectly through co-conspirators, regularly and systematically misrepresent to Xfinity Mobile that the XM Phone orders are authorized, that the identifying information being provided is legitimate and authorized, and/or that the Phones are being purchased by a legitimate customer for use in accordance with the governing Terms and Conditions.

130588225.v3

118.   On information and belief, each Defendant defrauded Xfinity Mobile to acquire XM Phones to be unlocked, resold and in many cases ultimately shipped overseas for activation on foreign carrier networks.

119.   When Defendants, directly or through their co-conspirators, acquire XM Phones as part of their Scheme, they do not intend to use the Phones for a legitimate purpose or to activate them or maintain them as active with respect to Xfinity Mobile's wireless services, or otherwise perform in accordance with the Terms and Conditions.

120.   Defendants and their co-conspirators know, when they affirmatively act to circumvent Xfinity Mobile's fraud prevention tools to place new Phone orders, that they are not authorized to access and place orders on Xfinity Mobile customer accounts, or to open new Xfinity Mobile accounts using fraud and forged or stolen identity information, and that they are required to activate the XM Phones for use with Xfinity Mobile's wireless services, pay the monthly service charges, and otherwise comply with the Terms and Conditions.

121.   Defendants intend for Xfinity Mobile to rely on their misrepresentations, and/or misrepresentations of their co-conspirators, to allow Defendants to acquire and unlock the XM Phones for improper purposes.

122.   Xfinity Mobile's reliance on Defendants' and their co-conspirators' misrepresentations is reasonable under the circumstances.

123.   Xfinity Mobile has been damaged and continues to suffer damages as a result of Defendants' actions.

124.   There is no adequate remedy at law to fully compensate Xfinity Mobile for the harm caused by Defendants' fraud.

## COUNT SEVEN

## TRAFFICKING IN COMPUTER PASSWORDS

### 18 U.S.C. § 1030(a)(6)

125.   Plaintiffs reassert the allegations set forth in Paragraphs 1-78 as though fully set forth herein.

126.    Xfinity Mobile has the following computers: (1) Xfinity Mobile password protected ordering system; (2) Xfinity Mobile national communications and WiFi computer networks; (3) Xfinity Mobile electronic customer account and billing portal; and (4) XM Phones (collectively, "Protected Computers").  The Protected Computers are "computers" as that term is defined in Section 1030(e)(1) of the Computer Fraud and Abuse Act because they are electronic and/or high speed data processing devices performing logical, arithmetic, or storage functions, and include data storage facilities and/or communications facilities directly related to or operating in conjunction with such devices.

127.    Xfinity Mobile prevents unauthorized access to its Protected Computers through, among other things, the confidential codes/passwords needed to access the Protected Computers ("Security Codes").

128.    Defendants and/or their co-conspirators obtain these Security Codes through various unlawful means, including the Dark Web and identity theft.

129.    Through their Scheme, Defendants are knowingly trafficking in the Security Codes with the intent to defraud and harm Xfinity Mobile.

130.    Defendants and their co-conspirators use the fraudulently-obtained Security Codes to gain unauthorized access to at least one of Xfinity Mobile's Protected Computers (*i.e.*, using Security Codes fraudulently obtained from third party sources like the Dark Web and identity theft to log into Xfinity Mobile password protected ordering systems, use XM Phones on Xfinity Mobile national communications and WiFi computer networks, log into the Xfinity Mobile electronic customer account and billing portal and/or access XM Phones).  This access into at least one of Xfinity Mobile's Protected Computers is not authorized in any way.  Defendants or their co-conspirators share these Security Codes among themselves and with their co-conspirators.

131.    Defendants or their co-conspirators unlawfully access at least one of Xfinity Mobile's Protected Computers using the fraudulently-obtained Security Codes to: (1) acquire XM Phones; (2) perform various tests to confirm that the XM Phones they are

purchasing are, in fact, active XM Phones; and/or (3) unlock the XM Phones, which requires the manipulation and oftentimes permanent deletion of the proprietary software that is installed in the XM Phone and make unauthorized changes in Xfinity Mobile's Protected Computers so the XM Phone will operate on other networks.

132.    Defendants' transfer of the XM Phones and Security Codes to others constitutes "trafficking" of the codes as defined in 18 U.S.C. § 1029 in that the Security Codes were transferred, or otherwise disposed of, to others, or Defendants obtained control of the codes with intent to transfer or dispose of them.

133.    Defendants' trafficking of the Security Codes substantially affects interstate commerce and communication in that the Security Codes are trafficked over the Internet, throughout the United States, and around the world, and Xfinity Mobile's Protected Computers are used in and affect interstate commerce and communication.

134.    Defendants' unlawful trafficking of Xfinity Mobile's Security Codes has caused and will continue to cause Xfinity Mobile to suffer injury, with "damages" and "losses" – as those terms are defined in Sections 1030(e)(8) and 1030(e)(11), respectively -- substantially in excess of $5,000 over a one-year period.

135.    With respect to loss, Xfinity Mobile has spent well in excess of $5,000 over a one-year period assessing its Protected Computers for damage and taking steps to prevent future unauthorized access by Defendants and/or their co-conspirators.

136.    Also with respect to loss, Xfinity Mobile has spent well in excess of $5,000 over a one-year period, investigating Defendants' intrusions into Xfinity Mobile's Protected Computers, assessing the possible impairment to the integrity of its Protected Computers and conducting damage assessment regarding Defendants' collection and dissemination of XM Phones and Security Codes, as well as tracking down fraudulently sold XM Phones.

137.    Moreover, with respect to loss, Xfinity Mobile has spent well in excess of $5,000 over a one-year period in costs to discover Defendants' identities and/or the

27

method by which Defendants access Xfinity Mobile's Protected Computers without authorization.

138.    With respect to damage, by unlawfully accessing Xfinity Mobile's Protected Computers and collecting and disseminating the illegally activated Phones and Security Codes, Defendants and their co-conspirators have substantially impaired the integrity of Xfinity Mobile's Protected Computers in an amount in excess of $5,000.   Moreover, Defendants' actions have impaired Xfinity Mobile's means of controlling the quality of its products and services.

139.    Defendants' activities constitute trafficking in computer passwords in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(6).

140.    Defendants' conduct is intentional, malicious, fraudulent, and willful.

141.    Pursuant to 18 U.S.C. § 1030(g), Xfinity Mobile is entitled to maintain this civil action against Defendants to obtain compensatory damages and injunctive and other equitable relief for the reasons identified above, and because Defendants' conduct involves at least one of the factors identified in 18 U.S.C. § 1030(c)(4)(A)(i), including the factor set forth in subclause (I): the loss to Xfinity Mobile and Xfinity Mobile customers as a result of Defendants' conduct during any one year period aggregated at least $5,000 in value.

**COUNT EIGHT**

**UNAUTHORIZED ACCESS**

**18 U.S.C. § 1030(a)(5)(C)**

142.    Plaintiffs reassert the allegations set forth in Paragraphs 1-78 and 122-137 as though fully set forth herein.

143.    Xfinity Mobile's Protected Computers are "protected computers" as that term is defined in Section 1030(e)(2)(B) of the Computer Fraud and Abuse Act because they are used in interstate commerce and communications.

130588225.v3

144.    Xfinity Mobile's Protected Computers hold confidential information, are connected to the Internet, and assist in providing federally-regulated communications services.

145.    Typically, XM Phones are connected to and activated on at least one of Xfinity Mobile's Protected Computers when purchased from Xfinity Mobile.

146.    In furtherance of their Scheme, Defendants and/or their co-conspirators use fraud and misrepresentation to acquire XM Phones, including the most in-demand smartphones, and, in so doing, void any purchase agreement and any legitimate, authorized access to Xfinity Mobile's Protected Computers.  As such, Defendants' access to Xfinity Mobile's Protected Computers using fraudulently obtained credentials or identities is not authorized in any way.  Further, in using fraud or deception to create Xfinity Mobile accounts or to access customer accounts to place orders for XM Phones, Defendants' and/or their co-conspirators' access into at least one of Xfinity Mobile's Protected Computers is unauthorized.

147.    Defendants and/or their co-conspirators knowingly and with the intent to defraud access at least one of Xfinity Mobile's Protected Computers using, for example, fraudulently obtained credentials or identities.  Defendants are not authorized to do so.

148.    Further, by unlawfully acquiring and unlocking the XM Phones, Defendants necessarily access at least one of Xfinity Mobile's Protected Computers because the XM Phones are programmed to connect to several of Xfinity Mobile's Protected Computers when Defendants unlawfully acquired them from Xfinity Mobile.

149.    Defendants' illegal and unauthorized access into at least one of Xfinity Mobile's Protected Computers allows them to improperly steal Xfinity Mobile's substantial financial investment in XM Phones.

150.    Defendants' activities substantially affect interstate commerce and communication in that, by Defendants' own admission, the Phones are acquired and trafficked throughout the United States and around the world.

151. Defendants' unauthorized access of Xfinity Mobile's Protected Computers has caused and will continue to cause Xfinity Mobile to suffer injury, with "damages" and "losses" – as those terms are defined in Sections 1030(e)(8) and 1030(e)(11), respectively – substantially in excess of $5,000 over a one-year period.

152. With respect to loss, Xfinity Mobile has lost its investments in the illegally-acquired XM Phones.

153. Defendants' activities constitute unauthorized access in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(C).

<u>**COUNT NINE**</u>

**UNAUTHORIZED ACCESS WITH INTENT TO DEFRAUD**

**18 U.S.C. § 1030(a)(4)**

154. Plaintiffs reassert the allegations set forth in Paragraphs 1-78 and 122-149 as though fully set forth herein.

155. Defendants are knowingly, intentionally, and with the intent to defraud, facilitating the unauthorized access into at least one of Xfinity Mobile's Protected Computers.

156. Defendants and their co-conspirators obtain monetary value, (*i.e.*, brand new XM Phones that are resold for a substantial profit) through their unlawful access into at least one of Xfinity Mobile's Protected Computers (*e.g.*, using Security Codes fraudulently obtained from third party sources like the Dark Web and identity theft to log into Xfinity Mobile password protected ordering systems and the unauthorized use of XM Phones on Xfinity Mobile national communications and WiFi computer networks).

157. Defendants' activities constitute unauthorized access in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4).

130588225.v3

## COUNT TEN

### FEDERAL TRADEMARK INFRINGEMENT

### 15 U.S.C. 1114 [§32(1) of the Lanham Act]

158.    Comcast Corporation reasserts the allegations set forth in Paragraphs 1-78 as though fully set forth herein.

159.    Defendants' and/or their co-conspirators' use one or more of the federally registered XFINITY® marks without authorization in connection with their conspiracy to sell and offer for sale unlocked, materially-different XM Phones, which downstream customers will discover have been altered from their original state and do not include the warranties, accessories, manuals and related items that constitute part of the XM Phone package.

160.    Defendants' and/or their co-conspirators' use of certain federally-registered XFINITY® marks in connection with their sale of materially-different XM Phones has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendants' infringing products, and the relationship between Comcast Corporation and Defendants.

161.    Defendants' and/or their co-conspirators' unauthorized use of certain federally-registered XFINITY® marks is likely to continue in the future, all to the great and irreparable damage to the business, reputation and goodwill of Comcast Corporation.

162.    Defendants' and/or their co-conspirators' use of certain federally registered XFINITY® marks in connection with the advertising and sale of unlocked, materially-different XM Phones, which do not include warranties, manuals, accessories and related items made part of the XM Phone package, and may have been flagged as "Bad IMEI" Phones and not able to be activated with Xfinity Mobile service, constitutes a misappropriation of Comcast Corporation's distinguishing and identifying federally registered trademarks that were created as a result of significant effort and expense by Comcast Corporation over a long period of time.

130588225.v3

163.   Defendants' and/or their co-conspirators' use of certain federally registered XFINITY® marks in the advertising and sale of their materially-different XM Phones evokes an immediate, favorable impression or association and constitutes a false representation that the products and business of Defendants have some connection, association or affiliation with Comcast Corporation, and is likely to mislead the trade and public into believing that Defendants' products and services originate from, are affiliated with, or are sponsored, authorized, approved or sanctioned by Comcast Corporation.

164.   Defendants, in committing the foregoing acts in commerce, have damaged, and will continue to damage, Comcast Corporation and the reputation and goodwill of Comcast Corporation, and have been unjustly enriched and will continue to unjustly enrich themselves at the expense of Comcast Corporation.

165.   Comcast Corporation is without an adequate remedy at law to redress such acts, and will be irreparably damaged unless Defendants are preliminarily and, thereafter, permanently enjoined from committing and continuing to commit such acts.

166.   Defendants' aforesaid acts constitute willful infringement of Comcast Corporation's aforementioned federally registered trademarks in violation of 15 U.S.C. §1114.

167.   Defendants engaged in and continue to engage in the alleged activities knowingly, willfully and deliberately, justifying the assessment of exemplary damages and an award of, *inter alia*, Comcast Corporation's lost profits, Defendants' gross profits, and Comcast Corporation's attorneys' fees.  Defendants' conduct also warrants a finding that this is an exceptional case.

130588225.v3

## COUNT ELEVEN

### FEDERAL COMMON LAW TRADEMARK INFRINGEMENT
### AND FALSE ADVERTISING

**15 U.S.C. § 1125 (a)(1)(A) and (B) [§43(a) of the Lanham Act]**

168.    Plaintiffs reassert the allegations set forth in Paragraphs 1-78 as though fully set forth herein.

169.    Defendants' and/or their co-conspirators' use one or more of the Xfinity Mobile Marks without authorization in connection with their conspiracy to sell and offer for sale unlocked, materially-different XM Phones, which downstream customers will discover have been altered from their original state, are inoperable on Xfinity Mobile service, and do not include the warranties, accessories, manuals and related items that constitute part of the XM Phone package.

170.    Defendants' and/or their co-conspirators' use of at least one of the Xfinity Mobile Marks in connection with the sale of unlocked, materially-different XM Phones has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendants' materially-different products, and the relationship between Plaintiffs and Defendants.

171.    Defendants' and/or their co-conspirators' unauthorized use of at least one of the Xfinity Mobile Marks is likely to continue in the future, all to the great and irreparable damage to the business, reputation, and goodwill of Plaintiffs.

172.    Defendants' and/or their co-conspirators' use of at least one of the Xfinity Mobile Marks in connection with the advertising and sale of unlocked, materially-different XM Phones, which do not include warranties, manuals, accessories and related items made part of the XM Phone package, and, in some cases, have been flagged as "Bad IMEI" Phones and are not able to be activated on Xfinity Mobile service, constitutes a misappropriation of at least one of the distinguishing and identifying Xfinity Mobile Marks that was created as a result of significant effort and expense.

130588225.v3

173.     Defendants' and/or their co-conspirators' use of at least one of the Xfinity Mobile Marks in the advertising and sale of their materially-different XM Phones evokes an immediate, favorable impression or association and constitutes a false representation that the products and business of Defendants have some connection, association or affiliation with Plaintiffs, and thus constitutes false designation of origin and is likely to mislead the trade and public into believing that Defendants' products and services originate from, are affiliated with, or are sponsored, authorized, approved or sanctioned by Plaintiffs.  Defendants are not affiliated with Plaintiffs in any way.

174.     Defendants, in committing the foregoing acts in commerce, have damaged, and will continue to damage, Plaintiffs and the reputation and goodwill of Plaintiffs, and have been unjustly enriched and will continue to unjustly enrich themselves at Plaintiffs' expense.

175.     Plaintiffs are without an adequate remedy at law to redress such acts, and will be irreparably damaged unless Defendants are enjoined from committing and continuing to commit such acts.

176.     Defendants' use of at least one of the Xfinity Mobile Marks in commercial advertising and/or promotion, including, but not limited to, their efforts to sell their materially-different XM Phones, misrepresents the nature, characteristics, and/or qualities of their infringing products.   Such advertising and/or promotion is false and/or misleading and deceives, or has the capacity to deceive, consumers.  The deception and misrepresentations have a material effect on the purchasing decisions and affect interstate commerce.

177.     Defendants' activities constitute false designation of origin, false descriptions and representations, and false advertising in commerce in violation of § 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) and (B).

178.     Plaintiffs are entitled to appropriate relief as prayed for hereinafter, including preliminary and permanent injunctive relief.

130588225.v3

179.   Defendants knew or should have known that Plaintiffs have the right to use and enforce the Xfinity Mobile Marks and that Defendants had no legal right to use the Xfinity Mobile Marks on their materially-different, infringing products.

180.   Defendants are engaged in and continue to engage in the alleged activities knowingly, willfully and deliberately, justifying the assessment of exemplary damages and an award of, *inter alia*, Plaintiffs' lost profits, Defendants' gross profits, and Plaintiffs' attorneys' fees.  Defendants' conduct also warrants a finding that this is an exceptional case.

**COUNT TWELVE**

**CONTRIBUTORY TRADEMARK INFRINGEMENT**

181.   Plaintiffs reassert the allegations set forth in Paragraphs 1-78 as though fully set forth herein.

182.   By misappropriating and using at least one of the Xfinity Mobile Marks in their advertising and resale of materially-different XM Phones, Defendants knowingly aided and enabled distributors and/or sellers of their materially-different products to market them to members of the general public in a way that infringes the Xfinity Mobile Marks by placing in the hands of distributors and/or sellers an instrument of consumer deception.

183.   Defendants' unlawful, unauthorized, and unlicensed sale of unlocked and materially-different XM Phones has contributed to the creation of express and implied misrepresentations that the XM Phones, as sold by Defendants, were created, authorized or approved by Plaintiffs, may be activated on Xfinity Mobile service, and include warranties.

184.   In their commercial advertising, Defendants have misrepresented the nature of their products by referring to specific mobile phones as XM Phones when they are, in fact, not XM Phones.

185.   Upon information and belief, Defendants' conduct leads to post-sale confusion by causing consumers in the United States who purchase materially-different

35

XM Phones from Defendants or their co-conspirators to believe that they are purchasing legitimate XM Phones approved by Plaintiffs that can be activated on Xfinity Mobile service and contain original warranties.

186.   Defendants' conduct constitutes contributory infringement in violation of the Trademark Act.  Defendants' conduct is intentional, malicious and willful.

187.   Plaintiffs have been damaged and continue to suffer damages as a result of Defendants' actions.

188.   There is no adequate remedy at law to fully compensate Plaintiffs for the harm caused by Defendants' actions.

189.   Plaintiffs are without an adequate remedy at law to redress such acts, and will be irreparably damaged unless Defendants are preliminarily and, thereafter, permanently enjoined from committing and continuing to commit such acts.

190.   Defendants are engaged in and continue to engage in the alleged activities knowingly, willfully and deliberately, justifying the assessment of exemplary damages and an award of, *inter alia*, Plaintiffs' lost profits, Defendants' gross profits, and Plaintiffs' attorneys' fees.  Defendants' conduct also warrants a finding that this is an exceptional case.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all triable issues.

WHEREFORE, Plaintiffs respectfully request that this Court enter final judgment and injunctive relief in favor of Plaintiffs and against Defendants, as follows:

(a)   awarding Plaintiffs their compensatory, consequential, statutory and special damages including, without limitation, their lost profits, Defendants' profits, cost of corrective advertising, loss of goodwill and damage to reputation, as well as exemplary damages, together with pre and post judgment interest, as provided by law;

(b)    finding that Defendants' acts and participation in the Scheme was willful, intentional, and/or in malicious disregard of Plaintiffs' lawfully protected rights;

(c)    declaring that this is an exceptional case under the Lanham Act;

(d)    awarding Plaintiffs their costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a), Arizona law, and any other applicable provision of law.

(e)    granting preliminary and, thereafter, permanent injunctive relief in favor of Plaintiffs and against Defendants, enjoining Defendants from engaging in the unlawful practices described in this Amended Complaint;

(f)    requiring Defendants, pursuant to the Lanham Act, to deliver to Plaintiffs their entire inventory of phones and products bearing or infringing the Xfinity Mobile Marks or a confusingly similar copy thereof; and

(g)    granting such further relief as this Court deems just and proper.

Respectfully submitted this 7th day of July, 2023.

By:  */s/ Gail Podolsky*
     Bryan F. Murphy, SBA #006414
     bmurphy@bcattorneys.com
     BURCH & CRACCHIOLO, P.A.
     702 E. Osborn Road
     Suite 200
     Phoenix, AZ 85014

     Stacey K. Sutton (*Admitted pro hac vice*)
     Florida Bar No. 289530
     CARLTON FIELDS, P.A.
     1025 Thomas Jefferson Street, NW
     Suite 400 West
     Washington, DC  20007-5208

130588225.v3

(202) 965-8100
(202) 965-8104 (fax)
ssutton@carltonfields.com

Gail Podolsky (*Admitted pro hac vice*)
Georgia Bar No. 142021
CARLTON FIELDS, P.A.
1201 West Peachtree Street, Suite 3000
Atlanta, GA  30309
(404) 815-3400
(404) 815-3415 (fax)
gpodolsky@carltonfields.com

***Attorneys for Xfinity Mobile, brand of Comcast OTR1, LLC Comcast Cable Communications, LLC and Comcast Corporation***

130588225.v3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2023, the attached document was electronically transmitted to the Clerk of the Court using the CM/ECF System which will send notification of such filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

By:   */s/ Gail Podolsky*
Gail Podolsky
CARLTON FIELDS, P.A.

39