C. Adam Buck (023128)
**RADIX LAW**
15205 N. Kierland Blvd., Suite 200
Scottsdale, AZ 85254
buck@radixlaw.com
(602) 606-9300
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**FOR THE**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Xfinity Mobile, et al.,<br><br>Plaintiffs,<br>v.<br><br>GlobalguruTech, LLC, et al.<br><br>Defendants. | Case No. 2:22-cv-01950-SMB<br><br>**DEFENDANTS' MOTION TO DISMISS COUNTS FOUR, TEN, ELEVEN AND TWELVE OF PLAINTIFFS' AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**(Oral Argument Requested)** |

Defendants Global Guru Tech, LLC d/b/a SellLocked, Guru Holdings LLC, and Jakob Zahara hereby move the Court to dismiss Counts Four, Ten, Eleven and Twelve of Plaintiffs' Amended Complaint for Damages and Injunctive Relief (the "Amended Complaint"). (Doc. 39). On June 14, 2023, the Court entered an Order (Doc. 35) granting in part, Defendants' Motion to Dismiss and dismissed, without prejudice, Counts Four, Ten, Eleven and Twelve. The Court allowed Plaintiffs to file an Amended Complaint to try to address the deficiencies in the original Complaint. On July 7, 2023, Plaintiffs filed an Amended Complaint that re-alleged Counts Four, Ten, Eleven and Twelve with very few changes. Because Plaintiffs failed to cure the deficiencies

previously identified, the Court should dismiss Counts Four, Ten, Eleven and Twelve with prejudice.

Plaintiffs' Civil Conspiracy claim (Count Four) fails because 1) the Amended Complaint contains insufficient factual matter to indicate a conspiracy is plausible and 2) Jakob Zahara and his LLCs are still the only named Defendants in this lawsuit and Mr. Zahara cannot have a conspiracy with himself. Plaintiffs' Trademark Infringement Claims (Counts Ten, Eleven and Twelve) fail because GGT's use of the Xfinity logo still falls within the parameters of nominative fair use.

## I. INTRODUCTION.

GlobalGuruTech, LLC ("GGT") is in the business of buying cell phones from individuals that are the legal and rightful owners of the device they are seeking to sell and then reselling them for a profit. Plaintiffs' Complaint does not allege that the Defendants purchased any phones directly from Xfinity or from a Xfinity dealer.

## II. LEGAL ARGUMENT

### A. Legal Standard

In a Motion to Dismiss based on Rule 12(b)(6), "the tenet that a court must accept as true all of the allegations contained in a complaint, is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. The Court must analyze each cause of action in Plaintiffs' Complaint to determine "whether the complaint's well-pleaded facts are sufficient to state a claim." *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1005 (9th Cir. 2010). If not, the claim should be dismissed.

To survive a Fed. R. Civ. P. ("Rule") 12(b)(6) motion for failure to state a claim, the Complaint must contain specific factual allegations, not merely legal conclusions. *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010); *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). After eliminating

such unsupported legal conclusions, the Court identifies "'well-pleaded factual allegations,' which we assume to be true, 'and then determine whether they plausibly give rise to an entitlement to relief.'" *Telesaurus*, 623 F.3d at 1003, quoting *Ashcroft, 1*29 S.Ct. at 1950.

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft*, 29 S. Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. "*The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* quoting *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007).*

As a general rule, "unless futile, courts generally allow one chance to amend deficient pleadings before dismissing with prejudice." *Floyd v. Dillmann*, 614 F. Supp. 3d 454, 462 (E.D. La. 2022); quoting *Buc-ee's, Ltd. v. Bucks, Inc.,* 262 F. Supp. 3d 453, 467 (S.D. Tex. 2017).

**B. Plaintiffs' Civil Conspiracy claim (Count Four) should be dismissed again because the Amended Complaint contains insufficient factual matter to indicate a conspiracy is plausible.**

In the Amended Complaint, Plaintiffs alleged that Jakob Zahara is the sole owner of both GGT and Guru Holdings, LLC. Paragraph 19 states "Defendant Jakob Zahara ("Zahara") is an individual residing in Fountain Hills, Arizona. Upon information and belief, he is the owner and manager of SellLocked [GGT] and Guru Holdings, and is personally engaged in, and helps facilitate, the improper conduct described herein."

In the original Complaint, there were no other alleged co-conspirators named as Defendants. In the Amended Complaint there still are no other co-conspirators named

as Defendants. With respect to the alleged civil conspiracy, the Amended Complaint states: "[t]he names and identities of these individuals and companies will be identified in discovery." (Doc 39 at 23). In other words, Plaintiffs have no facts to support their civil conspiracy claim. For the first time, the Amended Complaint refers to a company named "SNU Unlockers" and individuals named "Juanita S." and "Morgan G." But there are no facts to indicate that the Defendants made any sort of agreement with any of these people or entities and Plaintiffs have not named any of these people or entities as Defendants. Plaintiffs are so uncertain of their conspiracy theory, they refuse to even provide the full names of the alleged co-conspirators.

With respect to "SNU Unlockers" the Amended Complaint simply states that SNU Unlockers is "a notorious overseas bulk unlocker." (Doc. 39 at 23) But how is this notorious overseas phone unlocker connected with any of these Defendants? The Amended Complaint does not say. Similarly, the Amended Complaint alleges that "Juanita S." and "Morgan G." "used fraud and deception to unlawfully acquire brand new XM Phones with the sole intention to resell them at a substantial profit." Again, how are these alleged fraudsters connected with any of the named Defendants? The Amended Complaint does not tell us that either. In fact, Plaintiffs are not even sure that "Juanita S." and "Morgan G." are the actual fraudsters, but may have been victims of identity theft, so Plaintiffs are not disclosing their full names. (Doc. 39 at 23, footnote 3). The Amended Complaint then simply states "[a]n agreement and conspiracy existed and continues to exist between and among the Defendants and other co-conspirators. . ." (Doc. 39 at 22) This is pure speculation.

Upon information and belief, Plaintiffs are intending to conduct an inordinate amount of discovery that would include talking to every single person from whom GGT has ever bought a phone as well as every person to whom GGT has sold a phone. Allowing Plaintiffs to conduct discovery on speculative conspiracy claims will unnecessarily drive up litigation costs. These tactics can be abused, especially when the Plaintiff is a multi-billion-dollar company and the defendant is a single-member LLC. If

Plaintiffs have no facts to support a conspiracy, the Court should not allow them to go on a fishing expedition that will cost the Defendants tens of thousands of dollars and will also have a chilling effect on GGT's relationships with its customers.

Although Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," the Rules do require more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–56, 127 S. Ct. 1955, 1964–65, 167 L. Ed. 2d 929 (2007); see *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). "Factual allegations must be enough to raise a right to relief above the speculative level", see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed.2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). Bell Atl. Corp., 550 U.S. at 554–56.

In Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), the United States Supreme Court addressed the factual pleading requirement to overcome a motion to dismiss on a conspiracy claim. Although the Court was dealing with a conspiracy claim under the Sherman Act, the analysis should be the same for the civil conspiracy claim in the Amended Complaint.

The complaint in Twombly alleged that certain phone companies conspired to restrain trade by supposedly inflating charges for local telephone and high-speed Internet services and by agreeing to refrain from competing against one another. Twombly, 550 U.S. 544 at 550–51. The complaint also alleged that the phone companies "have entered into a contract, combination or conspiracy to prevent competitive entry into their ... markets and have agreed not to compete with one another." *Id.* at 565. The complaint must contain "enough factual matter (taken as true)

to suggest that an agreement was made" among the alleged co-conspirators. *Id*. at 545. Without any such "factual enhancements" the complaint does not meet the "plausibility" standard required to overcome a motion to dismiss. *Id*. at 546.

Regarding alleged co-conspirators, Plaintiffs state in their Amended Complaint, "[t]he names and identities of these individuals and companies will be identified in discovery." (Amended Complaint, page 23). Plaintiffs acknowledge they do not have any facts to show an agreement among the Defendants and any alleged co-conspirators, but they want the Court to allow them to conduct expansive discovery with the hope that they will find some evidence of an agreement. In Twombly, the U.S. Supreme Court outlined the perils of allowing extensive discovery on claims that do not have sufficient factual matter that an agreement even existed.

> The requirement of allegations suggesting an agreement serves the practical purpose of preventing a plaintiff with " 'a largely groundless claim' " from " 'tak[ing] up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value.' "
>
> *Id.* quoting *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 347, 125 S.Ct. 1627, 161 L.Ed.2d 577.

The Court continued "[i]t is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive." Twombly, 550 U.S. at 546. If Plaintiffs in this case are limited to claims against the named Defendants, discovery will be modest. However, if Plaintiffs are allowed to maintain their civil conspiracy claims, discovery will become exponentially larger in scope and expense and would take up the time of a large number of non-parties because GGT has purchased hundreds of cell phones in its history and Plaintiffs will be conducting discovery with each of those sellers. Also, Plaintiffs have a suspicion that there is an agreement between GGT and SNU Unlockers, who apparently is located somewhere overseas. So, Plaintiffs intend to

conduct discovery in other countries. The costs of defending this case will quickly get out of hand.

Plaintiffs will likely argue that they should be able to conduct all the discovery they want and then if they find no evidence of a conspiracy, they will dismiss the conspiracy claim. However, the Court should not allow this.

> It is no answer to say that a claim just shy of plausible entitlement can be weeded out early in the discovery process, given the common lament that the success of judicial supervision in checking discovery abuse has been modest. *Id.*; see, *e.g.*, Easterbrook, Discovery as Abuse, 69 B.U.L.Rev. 635, 638 (1989) ("Judges can do little about impositional discovery when parties control the legal claims to be presented and conduct the discovery themselves"). *Id.*

Involving the Court in all the discovery disputes that are sure to follow if the civil conspiracy claims remain will be expensive for Defendants and will unnecessarily consume the Court's time.

> [T]he threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching those proceedings. Probably, then, it is only by taking care to require allegations that reach the level suggesting conspiracy that we can hope to avoid the potentially enormous expense of discovery in cases with no " 'reasonably founded hope that the [discovery] process will reveal relevant evidence' " to support a [conspiracy] claim.

*Twombly*, 550 U.S. at 559–60 citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347, 125 S. Ct. 1627, 1634, 161 L. Ed. 2d 577 (2005).

If Plaintiffs had anything more than an unsubstantiated hunch or a suspicion, "SNU Unlockers" "Juanita S." and "Morgan G." would have all been named as Defendants in the Amended Complaint as co-conspirators. The Amended Complaint must contain "enough factual matter (taken as true)" to suggest there was a conspiracy and requires the Amended Complaint to contain "enough fact to raise a reasonable expectation that discovery will reveal evidence of" a conspiracy." *Twombly*, 550 U.S. at 556. Ultimately, the U.S. Supreme Court determined in Twombly that "nothing

contained in the complaint invests either the action or inaction alleged with a plausible suggestion of conspiracy." *Id*. at 566. Similarly, in this case, there are insufficient facts in the Amended Complaint to raise a reasonable expectation that discovery will reveal any agreement or conspiracy among GGT, Juanita S., Morgan G. and SNU Unlockers, so Count IV should be dismissed with prejudice.

**C. Plaintiffs' Trademark Infringement Claims (Counts Ten, Eleven and Twelve) should be dismissed because GGT's use of the Xfinity logo on its website is permissible under the doctrine of nominative fair use.**

Counts Ten, Eleven and Twelve all involve alleged trademark infringement. Count Ten is Federal Trademark Infringement. Count Eleven is Federal Common Law Trademark Infringement and False Advertising and Count Twelve is Contributory Trademark Infringement. The Court previously dismissed Counts Ten, Eleven and Twelve because "GGT's use of Xfinity's mark was limited to the website's categorizing the phones GGT would purchase." (Doc. 35 at 10). However, in its Amended Complaint Plaintiffs allege "Defendants advertise and sell materially different Phones bearing the Xfinity marks." (Doc. 39 at 8). But "the resale of genuine trademarked goods generally does not constitute infringement." *Davidoff & CIE, S.A. v. PLD Int'l Corp.,* 263 F.3d 1297, 1301 (11th Cir. 2001); *see Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.,* 988 F.2d 587, 590 (5th Cir.1993); *NEC Electronics v. CAL Circuit Abco,* 810 F.2d 1506, 1509 (9th Cir.1987). GGT buys phones second-hand and resells them. The GGT website simply uses the Xfinity mark to identify the types of phones it is willing to purchase second-hand. The Amended Complaint also alleges, without any factual basis, that Defendants use the Xfinity mark in re-selling phones. (Doc. 39 at 8, 31, 33, 35) Although Plaintiffs' private investigator investigated Defendants for over a year before they filed this lawsuit, the Complaint contains no facts to support their speculation that Defendants use Xfinity marks in reselling the phones. But even if they did, "the resale of genuine trademarked goods generally does not constitute infringement." *Davidoff & CIE, S.A. v. PLD Int'l Corp.,* 263 F.3d 1297, 1301 (11th Cir.

2001); *see Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.,* 988 F.2d 587, 590 (5th Cir.1993); *NEC Electronics v. CAL Circuit Abco,* 810 F.2d 1506, 1509 (9th Cir.1987). "This is for the simple reason that consumers are not confused as to the origin of the goods: the origin has not changed as a result of the resale." *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1301 (11th Cir. 2001); *See Enesco Corp. v. Price/Costco Inc.,* 146 F.3d 1083, 1085 (9th Cir.1998) (quoting *NEC,* 810 F.2d at 1509). Plaintiffs are admitting that the origin of the phones GGT is reselling is Xfinity. The fact that GGT resells them does not mean that GGT is infringing on Xfinity's marks. "[e]ven though a subsequent sale is without a trademark owner's consent, the resale of a genuine good does not violate the Act." *Id*. at 1302.

In *Volkswagenwerk Aktiengesellschaft v. Church,* 411 F.2d 350 (9th Cir.1969), the Ninth Circuit held that Volkswagen could not prevent an automobile repair shop from using the Volkswagen mark. The Court recognized that in "advertising [the repair of Volkswagens, it] would be difficult, if not impossible, for [Church] to avoid altogether the use of the word 'Volkswagen' or its abbreviation 'VW,' which are the normal terms which, to the public at large, signify appellant's cars." *Volkswagenwerk Aktiengesellschaft v. Church*, 411 F.2d 350, 352 (9th Cir.), *supplemented,* 413 F.2d 1126 (9th Cir. 1969). The analysis would be no different if Church was buying and reselling Volkswagen vehicles instead of repairing them. The vehicle was originally made by Volkswagen and the origin has not changed as a result of the resale. Even if someone makes aftermarket modifications to the vehicle, it is still a Volkswagen.

Similarly, in GGT's business it would be nearly impossible to avoid using Xfinity's name, which is a normal term which the public at large uses to identify particular phones. As in the *Church* case, GGT does not suggest to customers that it is part of the Xfinity organization or that GGT is an authorized Xfinity dealer. In fact, paragraph 52 of the Amended Complaint shows that alongside the Xfinity logo on GGT's website are the AT&T logo, the Verizon logo, the Sprint logo and the T-Mobile logo. Because the logos of all carriers are used (not just Xfinity's), no reasonable person

would believe that GGT was a Xfinity dealer or part of the Xfinity organization. GGT simply uses the Xfinity mark (and the other marks) to identify the types of phones it buys and sells. Therefore, as a matter of law, GGT's use of the Xfinity trademark is not an infringing use.

Additionally, there are no factual allegations that any of the named Defendants sell any phones to individual downstream customers. Rather, Plaintiffs allege that Defendants sell the phones in bulk. The Amended Complaint alleges:

> As part of the Defendants' Scheme, XM Phones are resold multiple times, usually in larger and larger consolidated lots by and among various other handset traffickers who know or should have known the unlawful status of the Phones. (Doc. 39 at 3)

Because there are no allegations that Defendants are marketing and selling the Xfinity phones they purchase to any individuals, there can be no violation of the Lanham Act. Furthermore, the Amended Complaint alleges that the people that buy phones from Defendants know "the unlawful status of the Phones." With these allegations, there is no way the buyers of the phones believe they are purchasing a phone through an authorized Xfinity dealer.

The Amended Complaint also alleges "Ultimately, the Phones are sold at or above market value to an end user in a foreign country who believes they are purchasing a new phone. . ." (Doc. 39 at 3). First, Plaintiffs admittedly do not know who Defendants are selling the phones to so it would be impossible for them to know or even have a good faith belief that that allegation is true. There are no facts to support that conclusory statement. But secondly, even if it were true, the named Defendants in this case are not selling phones to any individual end users so those allegations could not be the basis for trademark infringement claims in this case. Again, Plaintiffs are trying to hold these Defendants liable for the actions and misconduct of other, unrelated non-parties.

To the extent Defendants use the Xfinity mark, it is merely to identify the phone. So, Defendants' use of the mark is permissible under the doctrine of nominative fair

use. The Court may determine nominative fair use at the dismissal stage. *Health Indus. Bus. Commc'ns Council Inc. v. Animal Health Inst.*, 481 F. Supp. 3d 941 (D. Ariz. 2020). The doctrine of nominative fair use applies when a third party uses a mark for the purpose of referring to the mark-owner's product or service and creates no likelihood of consumer confusion. *See Adobe Systems Inc. v. Christenson*, 891 F. Supp. 2d 1194, 84 A.L.R. Fed. 2d 587 (D. Nev. 2012). To establish a nominative fair use defense, a defendant must prove the following three elements:

> First, the [plaintiff's] product or service in question must be one not readily identifiable without use of the trademark; second, only so much of the mark or marks may be used as is reasonably necessary to identify the [plaintiff's] product or service; and third, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.

*Health Indus. Bus. Commc'ns Council Inc., 481 F. Supp. 3d 941 at 955, quoting New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992). Here, the phones Defendants are buying and selling are not readily identifiable without the use of the Xfinity mark. Defendants are using only so much of the Xfinity mark that is reasonably necessary to identify the type of phone being bought or sold. And there are no factual allegations in the Amended Complaint that would indicate Defendants are suggesting sponsorship or endorsement by Xfinity of the GGT business. Accordingly, Counts Ten, Eleven and Twelve should be dismissed with prejudice based on the doctrine of nominative fair use.

## V. CONCLUSION.

By dismissing speculative claims that do not meet the plausibility standard, Courts can reduce the cost of litigation and make justice more accessible to individuals and organizations seeking resolution to their disputes. It also minimizes the waste of judicial resources and the inconvenience and expense to non-parties.

Plaintiffs' Civil Conspiracy claim (Count Four) should be dismissed because 1) the Amended Complaint contains no factual allegations to suggest an agreement among

Defendants, SNU Unlockers and "Juanita S." and "Morgan G" and 2) Jakob Zahara and his LLCs are still the only named Defendants in this lawsuit and Mr. Zahara cannot have a conspiracy with himself. Plaintiffs' Trademark Infringement Claims (Counts Ten, Eleven and Twelve) should be dismissed because GGT's use of the Xfinity logo falls within the parameters of nominative fair use. Because the Court already gave Plaintiffs the chance to amend these claims, the dismissals should be with prejudice.

DATED: July 21, 2023.

**RADIX LAW**

*/s/ C. Adam Buck*
C. Adam Buck
*Attorney for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 21, 2023, the attached document was electronically transmitted to the Clerk of the Court using the CM/ECF System which will send notification of such filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

By: */s/ K. Edmondson*