**CARLTON FIELDS, P.A.**
1201 West Peachtree Street, Suite 3000
Atlanta, GA 30309
Tel: (404) 815-3400

Gail Podolsky
*Admitted pro hac vice*
Email: gpodolsky@carltonfields.com
Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

Xfinity Mobile, et al.,

Plaintiffs,

v.

Globalgurutech LLC, et al.,

Defendants.

No. CV-22-01950-PHX-SMB

**RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNTS FOUR, TEN, ELEVEN, AND TWELVE OF PLAINTIFFS' AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiffs Comcast OTR1, LLC and Comcast Cable Communications, LLC for themselves and their Xfinity Mobile brand and Comcast Corporation (collectively, "Plaintiffs") hereby file this response in opposition to Defendants' Motion to Dismiss Counts Four, Ten, Eleven and Twelve of Plaintiffs' Amended Complaint for Damages and Injunctive Relief (the "Motion") [D.E. 44], showing the Court has follows:

**INTRODUCTION**

As set forth in greater detail in Plaintiffs' Amended Complaint for Damages and Injunctive Relief ("Complaint") [D.E. 39], Defendants Globalgurutech LLC d/b/a SellLocked.com f/n/a iBuyLocked.com, Guru Holdings LLC, and Jakob Zahara (collectively, "Defendants") and their co-conspirators are engaged in, and knowingly facilitate and encourage others to engage in, unlawful business practices involving the unauthorized and deceptive purchase and resale of wireless communications handsets under the brand Xfinity Mobile ("XM Phones"), the theft of Xfinity Mobile's investment and incentives, the unlawful access of Xfinity Mobile's protected computer systems and wireless network, the trafficking of Xfinity Mobile's protected and confidential computer codes, and the willful infringement of Plaintiffs' trademarks (collectively, the "Scheme").

On December 20, 2022, Defendants moved to dismiss Plaintiffs' twelve-count Complaint. In an order dated June 14, 2023 ("Order"), the Court found that the majority of the claims were properly pled and granted Plaintiffs leave to amend their conspiracy and trademark claims. D.E. 35 at pp. 7, 10-11. The Order outlined what the Court found lacking in the original Complaint. D.E. 35 at pp. 7, 10-11.

For example, the Court stated that the Complaint "fail[ed] to assert enough individuals to comprise a conspiracy." *Id.* at p. 7. In response, Plaintiffs' Amended Complaint identifies three additional co-conspirators: (1) SNU Unlockers; (2) Juanita S.; and (3) Morgan G. Amended Complaint at ¶ 107. The Amended Complaint further details the actions taken by these co-conspirators and Defendants, namely, to unlawfully acquire brand new XM Phones with the sole intention to resell them at a substantial profit and to illicitly unlock XM Phones for resale overseas. *Id.*

With respect to the trademark claims, the Court said that there were insufficient allegations to apply the material difference exception as there were "no allegations that GGT has used Xfinity's mark to resell the phones it purchases." D.E. 35 at p. 10. The Amended Complaint explicitly states that Defendants use at least one of the Xfinity Mobile Marks when they are advertising and selling their materially-different XM Phones. Amended Complaint at ¶¶ 37-38, 70, 162-163, 172-173, 176, 182, 184. The Amended Complaint further states that Defendants use the Xfinity Mobile Marks in numerous ways outside of their public facing website and such use exceeds fair use. *Id.* at ¶¶ 70-71. Accordingly, Defendants' Motion should be denied as Plaintiffs fully addressed the deficiencies outlined in the Order and have properly pled their conspiracy and trademark claims.

Defendants' Motion should also be denied on procedural grounds for failing to comply with Local Rule 12(c). The parties only met and conferred prior to Defendants filing their first motion to dismiss. The parties did not meet and confer after Plaintiffs filed their Amended Complaint.

## ARGUMENT AND CITATION OF AUTHORITY

### A. Legal Standard

Motions to dismiss for failure to state a claim are disfavored, and are proper only in "extraordinary" cases. *See Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir. 1997). The pleading threshold of "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Bell Atlantic v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 8(a) "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements. *Twombly*, 550 U.S. at 545.

In deciding a motion to dismiss, "the court must presume all factual allegations of

the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir. 1987). Even if the face of the pleading suggests that the chance of recovery is remote, the Court must allow plaintiff to develop its case at this stage of the proceeding. *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

**B. Other Courts Have Denied Similar Motions to Dismiss**

Several district courts have reviewed very similar allegations brought by Plaintiffs and other wireless handset carriers and found that they satisfy the federal pleading standards. *See, e.g., Xfinity Mobile v. Devin Tech Inc.,* Case No. 1:19-cv-03294 (N.D. Ga. Sept. 28, 2020) (denying partial motion to dismiss for failure to state a claim), a copy of which is attached hereto as **Exhibit A**). For example, in *Devin Tech*, Plaintiffs filed suit against defendants that were engaged in the unauthorized and deceptive purchase and resale of XM Phones. Plaintiffs' complaint in the *Devin Tech* case included the same claims as those brought here. The defendants in that case moved to dismiss Plaintiffs' tortious interference, trademark, and false advertising claims. The district court denied the defendants' motion and held that Plaintiffs' complaint satisfied the federal pleading standard under Rule 8. *See id.; see also Sprint Nextel Corp. v. Welch*, No. 1:13-CV-01174-AWI, 2014 WL 68957, at *3-5 (E.D. Cal. Jan. 8, 2014) (report and recommendation to grant partial default judgment in Sprint's favor on claims for, *inter alia,* civil conspiracy and trademark infringement); *Sprint Nextel Corp. v. Simple Cell, Inc.*, No. CIV. CCB-13-617, 2013 WL 3776933 (D. Md. July 17, 2013); *Sprint Nextel Corp. v. Carangi,* Case No. 12-6473 (E.D. Pa. May 3, 2013) (denying motion to dismiss for failure to state a claim), a copy of which is attached hereto as **Exhibit B**; *TracFone Wireless, Inc. v. Zip Wireless Prods., Inc.*, 716 F. Supp. 2d 1275, 1282-83, 1288 (N.D. Ga. 2010) (same).

**C. The Complaint Sufficiently Alleges Facts to Support Plaintiffs' Claims**

**1. Civil Conspiracy (Count Four)**

"Under Arizona law, civil conspiracy requires that 'two or more individuals agree and thereupon accomplish an underlying tort which the alleged conspirators agreed to

commit.'" *Health Indus. Bus. Commc'ns Council Inc. v. Animal Health Inst.*, 481 F. Supp. 3d 941, 959 (D. Ariz. 2020) (quoting *Wojtunik v. Kealy*, 394 F. Supp. 2d 1149, 1172 (D. Ariz. 2005) (citations omitted)). If a plaintiff fulfills "the specificity requirements as to the trademark infringement, misappropriation, and tortious interference claims, they need not allege additional facts in support of their civil conspiracy claim." *Your Town Yellow Pages, LLC v. Liberty Press, LLC*, No. 409CV00642TUCRCC, 2010 WL 11459928, at *2 (D. Ariz. Feb. 24, 2010) (denying motion to dismiss for failure to state a claim).

Defendants claim that Plaintiffs' conspiracy claim should be dismissed because the newly named co-conspirators are not defendants in this litigation and there are insufficient facts to support a conspiracy. Motion at p. 3-4. Defendants' arguments are contrary to the facts and the law.

The Amended Complaint identifies three additional co-conspirators (SNU Unlockers, Juanita S., and Morgan G.) and the tortious actions they have taken with Defendants, namely, to unlawfully acquire brand new XM Phones with the sole intention to resell them at a substantial profit and to illicitly unlock XM Phones for resale overseas. Amended Complaint at ¶ 107. The Amended Complaint further states that "[b]y its nature, fraud schemes, such as the one perpetrated by the Defendants, are intentionally concealed to avoid detection" and "discovery, including third party depositions and other discovery, will be necessary to identify all of Defendants' co-conspirators and determine the extent of their activity, and to quantify the totality of the harm they caused to Xfinity Mobile, its customers, and United States consumers." *Id.* at ¶ 49, 72.[1]

"It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." *Temple v. Synthes Corp.,* 498 U.S. 5, 7 (1990) (per curiam); *see also Andrade v. Station Casinos LLC*, 20-CV-06495-EMC, 2021 WL 4441990, at *2 (N.D. Cal. Mar. 22, 2021) (same); Fed.R.Civ.P. 19 advisory committee's

[1] Defendants' claim that Plaintiffs are using their conspiracy claim to conduct an improper fishing expedition is completely baseless.

note to 1966 amend. (noting that "a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability"). Moreover, in *Your Town Yellow Pages,* this District held that "because Plaintiffs have fulfilled the specificity requirements as to the ... tortious interference claims, they need not allege additional facts in support of their civil conspiracy claim." 2010 WL 11459928, at *2.

The same holdings should apply in this case. Plaintiffs are not required to sue all of Defendants' co-conspirators in a single lawsuit to maintain a conspiracy claim. *Temple v. Synthes Corp.,* 498 U.S. at 7. Further, this Court previously found that Plaintiffs adequately pled their tortious interference claims. As a result, Plaintiffs' conspiracy claim should be deemed sufficiently pled. *Your Town Yellow Pages*, No. 409CV00642TUCRCC, 2010 WL 11459928, at *2; *see also Health Indus. Bus. Commc'ns Council Inc. v. Animal Health Inst.*, 481 F. Supp. 3d 941, 959 (D. Ariz. 2020).

Even without the presumption afforded under *Your Town Yellow Pages*, the Amended Complaint provides explicit allegations relating to Defendants and their co-conspirators actions. Plaintiffs' conspiracy claim incorporates the allegations in Paragraphs 1-78 and further alleges the following:

> 106. An agreement and conspiracy existed and continues to exist between and among the Defendants and other co-conspirators to unlawfully acquire in bulk, traffic, and resell unlawfully unlocked and materially-altered XM Phones, which results in unfair competition, tortious interference with business relationships and prospective advantage, tortious interference with contract, unjust enrichment, and violation of the federal Computer Fraud and Abuse Act, among other things.
>
> 107. Defendants' co-conspirators include, but are not limited to, the individuals and companies, whose identities are known to Defendants, that: (a) unlawfully obtained and sold XM Phones to the Defendants; (b) unlawfully unlocked the XM Phones to enable Defendants to resell devices; (c) knowingly shipped fraudulently acquired XM Phones to and from

Defendants; and (d) purchased and resold materially-different XM Phones from Defendants. The names and identities of these individuals and companies will be identified in discovery. Representative examples include:

a. Upon information and belief, Defendants conspired with notorious overseas bulk unlocker SNU Unlockers, to unlock illicitly obtained XM Phones for overseas resale.

b. Upon information and belief, Defendants conspired with an individual identified to Xfinity Mobile as Juanita S. with a Michigan address to engage in the Scheme, namely, to use fraud and deception to unlawfully acquire brand new XM Phones with the sole intention to resell them at a substantial profit.[2]

c. Upon information and belief, Defendants conspired with an individual identified to Xfinity Mobile as Morgan G. with a Texas address to engage in the Scheme, namely, to use fraud and deception to unlawfully acquire brand new XM Phones with the sole intention to resell them at a substantial profit.

108. Each Defendant knowingly agreed to engage, and did engage, in one or more overt acts in pursuit of the conspiracy as set forth with more particularity in this Amended Complaint.

109. Plaintiffs have been proximately damaged by the conspiracy and Defendants' actions in furtherance thereof.

110. There is no adequate remedy at law to fully compensate Plaintiffs for the harm caused by Defendants' conspiracy.

Amended Complaint at ¶¶ 106-110.

[2] Out of an abundance of caution, in the event the co-conspirators engaged in identity theft, Xfinity Mobile is not publicly disclosing the full names and other information it received as part of the account opening process.

Based on the foregoing, Plaintiffs made a sufficient showing of civil conspiracy to prevail on a motion to dismiss. *See Animal Health Inst.*, 481 F. Supp. 3d at 959; *Your Town Yellow Pages*, No. 409CV00642TUCRCC, 2010 WL 11459928, at *2; *In re Arizona Dairy Prod. Litig.*, No. CIV 74-569 A PHX CAM, 1984 WL 21984, at *2 (D. Ariz. Nov. 5, 1984).

**2. Federal Trademark Infringement Claims (Counts 10-12)**

Defendants claim that Plaintiffs' trademark claims, as amended, should be dismissed based on the first sale doctrine and the doctrine of nominative fair use. Neither of these legal doctrines apply in this case.

**a. The Material Difference Exception Bars Defendants' Reliance on the First Sale Doctrine**

"The first sale doctrine does not apply when an alleged infringer sells trademarked goods that are materially different than those sold by the trademark owner." *TracFone Wireless, Inc. v. Pak China Group Co. Ltd.*, 843 F.Supp.2d 1284, 1296-97 (S.D. Fla. 2012). This is known as the material difference exception, which is expressly recognized in the Ninth Circuit. *See Enesco Corp. v. Price/Costco Inc.,* 146 F.3d 1083, 1087 (9th Cir. 1998) (quoting *Warner–Lambert Co. v. Northside Dev. Corp.,* 86 F.3d 3, 6 (2d Cir. 1996) (holding that a non-conforming product is not genuine and "its distribution constitutes trademark infringement"); *Mercado Latino, Inc. v. Indio Products, Inc.*, No. CV 13-01027 DDP RNBX, 2013 WL 5352713, at *3 (C.D. Cal. Sept. 24, 2013) ("when products are sold under a producer's trademark but are distributed in a manner that does not meet the trademark holder's quality control standards . . . the non-conforming product should not be considered genuine, and the first sale doctrine will not apply."); *see also Davidoff & CIE, S.A. v. PLD Int'l Corp.,* 263 F.3d 1297, 1301 (11th Cir. 2001); *Iberia Foods Corp. v. Romeo,* 150 F.3d 298, 302–03 (3d Cir. 1998); *Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.,* 112 F.3d 1296, 1302 (5th Cir. 1997); *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.,* 982 F.2d 633, 644 (1st Cir. 1992);

*Original Appalachian Artworks, Inc. v. Granada Electronics, Inc.,* 816 F.2d 68, 73 (2d Cir. 1987).

"Although no mechanical process exists for determining the threshold for materiality, a difference is material if 'consumers [would] consider [it] relevant to a decision about whether to purchase a product.' Because many factors influence such considerations, the threshold 'must be kept low to include even subtle differences between products.'" *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1072 (10th Cir. 2009) (quoting *Davidoff*, 263 F.3d at 1302). Even minor alterations of a product that voids a warranty or otherwise effects the services attendant to a trademarked product have been held to constitute a material difference barring a defense under the first sale doctrine. *See Bel Canto Design, Ltd. v. MSS Hifi, Inc.*, 837 F. Supp. 2d 208, 231 (S.D.N.Y. 2011) (alteration of serial numbers on product which voided the warranty constituted a material difference); *Beltronics*, 562 F.3d at 1073 (affirming trial court's finding that alteration of serial numbers which voided product warranty and eliminated eligibility for other services constituted a material difference). Likewise, reselling products without the documentation and packaging that accompanies genuine goods renders the first sale doctrine inapplicable. *See*, *e.g., TracFone Wireless, Inc. v. Pak China Grp. Co. Ltd*., 843 F. Supp. 2d 1284, 1298 (S.D. Fla. 2012) ("Defendants knowingly played a significant role in the resale of TracFone Phones that are materially different than those sold by TracFone….For instance, the warranty information is removed, which invalidates the warranty in its entirety….Furthermore, the TracFone packaging is removed and the handsets are sold in packaging that is not approved by TracFone's quality controls."); *TracFone Wireless, Inc. v. SND Cellular, Inc.*, 715 F. Supp. 2d 1246, 1258-1259 (S.D. Fla. 2010) (same).

Courts applying the material difference exception find that materially different products that have the same trademark may confuse consumers and erode consumer goodwill toward the mark. *See Iberia Foods,* 150 F.3d at 303; *Nestle,* 982 F.2d at 638. In

virtually identical situations to the one here, other District Courts have previously held that reselling wireless handsets without their warranty information and in packaging not approved by the wireless carrier's quality controls is sufficient to overcome a motion to dismiss based on the first sale defense. *See, e.g.*, *Devin Tech Inc.,* Case No. 1:19-cv-03294 (N.D. Ga. Sept. 28, 2020) (attached hereto as **Exhibit A**); *Welch*, 1:13-CV-01174-AWI, 2014 WL 68957, at *4; *Simple Cell, Inc.*, CIV. CCB-13-617, 2013 WL 3776933, at *8; *Pak China Group Co. Ltd.*, 843 F. Supp. 2d at 1296-98; *TracFone v. Anadisk,* 685 F. Supp. 2d 1304, 1313-15 (S.D. Fla. 2010); *SND Cellular, Inc.*, 715 F. Supp. 2d at 1258-1259.

The Amended Complaint alleges, among other things, that Defendants sell and offer to sell unlocked, materially-different XM Phones, which downstream customers will discover have been altered from their original state and do not include the warranties, accessories, manuals and related items that constitute part of the XM Phone package and that such conduct has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendants' infringing products, and the relationship between Xfinity Mobile and Defendants. *See* Amended Complaint at ¶¶ 38, 41, 76, 159-163; 169-173.[3] The Amended Complaint further alleges that Defendants' use of certain federally registered XFINITY® marks in connection with the unlocked, materially-different XM Phones, which do not include warranties, manuals, accessories and related items made part of the XM Phone package, and may have been flagged as "Bad IMEI" Phones and not able to be activated with Xfinity Mobile service, constitutes a misappropriation of Xfinity Mobile's distinguishing and identifying federally registered trademarks that were created as a result of significant effort and expense over a long period of time. *Id.* at ¶¶ 162, 172. Moreover, the Amended Complaint alleges that many

---

[3] The Court's prior Order did not address the applicability of the material difference exception because it found that there were no allegations that Defendants used the Xfinity Mobile Marks to resell the phones they purchased. Order at p. 10. The Amended Complaint contains numerous references to Defendants using the Xfinity Mobile Marks in connection with the reselling of their materially different phones. Amended Complaint at ¶¶ 37-38, 70, 162-163, 172-173, 176, 182, 184.

of the Xfinity Mobile Phones that Defendants sell and ship overseas are not factory-sealed. *Id.* at ¶ 69.

Therefore, construing all reasonable inferences in Plaintiffs' favor, the first sale doctrine does not apply and Plaintiffs' adequately pled their trademark claims.

**b. The Nominative Fair Use Defense is Inapplicable**

To establish the nominative fair use defense, a defendant must prove the following three elements:

> 1. the product or service in question must be one not readily identifiable without use of the trademark;
>
> 2. only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and
>
> 3. the user must do nothing that would, in conjunction with the use of the mark, suggest sponsorship or endorsement by the trademark holder.

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1175–76 (9th Cir. 2010) (citing *New Kids on the Block v. New America Pub., Inc.,* 971 F.3d 302, 308 (9th Cir.1992)). Defendant cannot meet all of these elements and, at the very least, when all reasonable inferences of fact are drawn in Plaintiffs' favor, there are disputed issues of fact that preclude dismissing Plaintiffs' trademark claims based on the nominative fair use defense. *See Slep-Tone Entm't Corp. v. U.R. Entm't Inc.*, CV-13-00885-PHX-ROS, 2014 WL 11514489, at *4 (D. Ariz. Sept. 4, 2014) (denying motion to dismiss trademark claims based on nominative fair use defense)*; Designer Skin, LLC v. S&L Vitamins, Inc.*, CV 05-3699 PHXJAT, 2007 WL 841471, at *2 (D. Ariz. Mar. 19, 2007) (same).

The Amended Complaint alleges that:

- Defendants use the Xfinity Mobile Marks in numerous ways outside of their public facing website. Upon information and belief, Defendants use the Xfinity Mobile Marks in the advertising, promotion, and resale of their materially-different Phones.

- Defendants' use of the Xfinity Mobile Marks exceeds fair use.

- It is unnecessary for Defendants to use the carriers' logos as part of their business. Using the Xfinity logo suggests an affiliation or endorsement by Plaintiffs when there is none.
- Other than to further illicit commercial activity—to gauge the difficulty of illegally unlocking the phones, the likelihood the phones will relock after being unlawfully unlocked, or the possible ramifications or repercussions of dealing in particular phones—the name of the carrier is irrelevant to Defendants' business as these phone are ultimately unlocked for use on other networks.
- Defendants' and/or their co-conspirators' use of at least one of the Xfinity Mobile Marks in the advertising and sale of their materially-different XM Phones evokes an immediate, favorable impression or association and constitutes a false representation that the products and business of Defendants have some connection, association or affiliation with Plaintiffs, and thus constitutes false designation of origin and is likely to mislead the trade and public into believing that Defendants' products and services originate from, are affiliated with, or are sponsored, authorized, approved or sanctioned by Plaintiffs. Defendants are not affiliated with Plaintiffs in any way.

Amended Complaint at ¶¶ 53-54; 70-71, 163, 173.

Recognizing that these additional allegations nullify Defendants' nominative fair use defense, Defendants pivot and now claim that these allegations are insufficient and require more specificity. Defendants are essentially asking this Court to impose a heightened pleading standard on their trademark claims where none exists. *BBK Tobacco & Foods LLP v. Cent. Coast Agric. Inc.*, CV-19-05216-PHX-MTL, 2021 WL 1751134, at *2 (D. Ariz. May 4, 2021) ("A complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle it to relief.'") (quoting *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir. 2000)); *IFIXITUSA LLC v. iFixit Corp.*, CV-21-00887-PHX-DGC, 2022 WL 2117845, at *2 (D. Ariz. June 13, 2022) ("Although the plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully, it is not akin to a

probability requirement.") (internal quotations and citations omitted); *Zeltiq Aesthetics, Inc. v. Pobra Enters., LLC*, 2017 WL 238138, at *3 (M.D. Fla. Jan. 19, 2017) (declining to engage in a fact-intensive analysis on a motion to dismiss in a trademark infringement case where the claims were plausible); *Slep-Tone Entm't Corp.*, CV-13-00885-PHX-ROS, 2014 WL 11514489, at *4 ("Rule 8(a) does not require a statement of precisely when the alleged infringement took place, and Defendant can easily uncover such facts during discovery.").

As detailed above, Defendants are not selling genuine Xfinity Mobile Phones; they are selling materially-different Phones that are unlawfully altered from their original state. Amended Complaint at ¶ 38. They are unlocked, they are not approved by Xfinity Mobile's quality controls, they do not include the warranties, accessories, manuals, and related items that constitute part of the XM Phone package, and/or they are inoperable on Xfinity Mobile service. *Id.*

Moreover, nominative fair use "is not available when the use suggests sponsorship or endorsement.'" *Chiro-Med Centers, P.C. v. Healthy You MD, LLC*, No. CV-12-00375-PHX-ROS, 2012 WL 12871655, at *2 n.2 (D. Ariz. June 28, 2012) (citing *Toyota Motor Sales, U.S.A. v. Tabari*, 610 F.3d 1171, 1176 (9th Cir. 2010)). In *Chiro-Med Centers*, the Court denied the request to dismiss the plaintiff's trademark and false advertising claims because the complaint contained allegations that defendant suggested that plaintiff endorsed or approved defendant when it did not. 2012 WL 12871655, at *2 (rejecting defendant's fair use defense). Contrary to Defendants' assertions, the Amended Complaint alleges that Defendants' actions suggest sponsorship and endorsement when there is none and Defendants' actions are likely to cause consumer confusion. Amended Complaint at ¶¶ 53, 163, 174.

Furthermore, the Ninth Circuit has repeatedly held that the nominative fair use defense does not apply when a defendant uses the plaintiff's logo, distinctive lettering, fonts, symbols, and other unique design elements. *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1181 (9th Cir. 2010) ("As for the second and third steps of our

nominative fair use analysis, Toyota suggests that use of the stylized Lexus mark and "Lexus L" logo was more use of the mark than necessary and suggested sponsorship or endorsement by Toyota. This is true: The Tabaris could adequately communicate their message without using the visual trappings of the Lexus brand."); *Playboy Enterprises, Inc. v. Welles*, 279 F.3d 796, 802 (9th Cir. 2002) (discussing the second element of the nominative fair use test and saying that the element was met "because they use only the trademarked words, not the font or symbols associated with the trademarks"); *New Kids on the Block v. New Am. Pub., Inc.*, 971 F.2d 302, 308 n. 7 (9th Cir. 1992) (holding that under "nominative fair use" a soft drink competitor would be entitled to compare its product to Coca-Cola, but would not be entitled use Coca-Cola's distinctive lettering); *Chiro-Med Centers, P.C. v. Healthy You MD, LLC*, No. CV-12-00375-PHX-ROS, 2012 WL 12871655, at *2 n.2 (D. Ariz. June 28, 2012) ("[T]his defense is not available when the use suggests sponsorship or endorsement."); *Heisman Trophy Trust v. Smack Apparel Co.*, 595 F. Supp. 2d 320, 328-329 (S.D.N.Y. 2009) (holding that defendant's t-shirts and website were not protected under nominative fair use because "the T-shirts printed with the same type of font as used by [plaintiff] on its licensed T-shirts and its website, and the references to [plaintiff's marks] go beyond merely providing information as to the T-shirts' purpose"); *Audi AG v. Shokan Coachworks, Inc.*, 592 F. Supp. 2d 246, 269-270 (N.D.N.Y. 2008) (stating that defendant's use of Audi's trademarked logo on their website was not nominative fair use). In this case, Defendants fail to establish why they need to use Plaintiffs' logo and distinctive typeface. Accordingly, Defendants cannot meet the second element of the test because they used more than what was reasonably necessary to identify Plaintiffs' products. *Id.*

Accordingly, when construing all reasonable inferences in Plaintiffs' favor, Defendants' nominative fair use defense fails at the motion to dismiss stage. *Id.*[4]

---

[4] Defendants' reliance on *Volkswagenwerk Aktiengesellschaft v. Church*, 411 F.2d 350 (9th Cir. 1969) is misplaced because the defense was presented at a bench trial, not a motion to dismiss. *Id.* at 351-52. In addition, the holding actually supports Plaintiffs' position with respect to the second element because the Ninth Circuit specifically noted

**c. Plaintiffs' Properly Plead Their Trademark Claims**

The Amended Complaint alleges that Plaintiffs have valid and protectable marks. It clearly states that Comcast Corporation obtained registered XFINITY® and XFINITY MOBILE® trademarks, Xfinity Mobile has a license to use said trademarks, and the Marks acquired secondary meaning. Amended Complaint at ¶¶ 31-38. The Lanham Act and the Ninth Circuit strongly presume registered marks to be valid. 15 U.S.C. § 1057(b) and *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1022 (9th Cir. 2018). Moreover, the Amended Complaint alleges that Defendants' use of at least one of the Xfinity Mobile Marks in connection with the sale of unlocked, materially-different XM Phones has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendants' materially-different products and services, and the relationship between Plaintiffs and Defendants, thereby alleging facts in support of Plaintiffs' trademark infringement claims. Amended Complaint at ¶¶ 160, 170.

Plaintiffs also properly alleged a claim for contributory trademark infringement. "[C]ontributory trademark liability is applicable if defendant (1) intentionally induces another to infringe on a trademark or (2) continues to supply a product knowing that the recipient is using the product to engage in trademark infringement." *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996) (citing *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844, 854 (1982)).

Plaintiffs allege that by misappropriating and using at least one of the Xfinity Mobile Marks in their advertising and resale of materially-different XM Phones, Defendants knowingly aided and enabled distributors and/or sellers of their materially-different products to market them to members of the general public in a way that infringes the Xfinity Mobile Marks by placing in the hands of distributors and/or sellers an instrument of consumer deception. Amended Complaint at ¶ 182. Plaintiffs also allege

---

that the defendant "did not use Volkswagen's distinctive lettering style or color scheme, nor did he display the encircled 'VW' emblem." *Id.* Defendants, on the other hand, utilize Plaintiffs' logo and distinctive lettering and, therefore, their use falls outside the holding in *Volkswagenwerk*.

that Defendants' unlawful, unauthorized, and unlicensed sale of unlocked and materially-different XM Phones has contributed to the creation of express and implied misrepresentations that the XM Phones, as sold by Defendants, were created, authorized or approved by Plaintiffs, may be activated on Xfinity Mobile service, and include warranties. *Id.* at ¶ 183. The Complaint further alleges that in their commercial advertising, Defendants have misrepresented the nature of their products by referring to specific mobile phones as XM Phones when they are, in fact, not XM Phones and Defendants' conduct leads to post-sale confusion by causing consumers in the United States who purchase materially-different XM Phones from Defendants or their co-conspirators to believe that they are purchasing legitimate XM Phones approved by Plaintiffs that can be activated on Xfinity Mobile service and contain original warranties. *Id.* at ¶¶ 184-185. Therefore, Plaintiffs properly pled a claim for contributory infringement.

Plaintiffs also properly pled a claim for false advertising. Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)(1)(B)) makes it unlawful for "[a]ny person who … in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). The Complaint specifically states that Defendants' use of at least one of the Xfinity Mobile Marks in commercial advertising and/or promotion, including, but not limited to, their efforts to sell their materially-different XM Phones, misrepresents the nature, characteristics, and/or qualities of their infringing products, such advertising and/or promotion is false and/or misleading and deceives, or has the capacity to deceive, consumers, and the deception and misrepresentations have a material effect on the purchasing decisions and affect interstate commerce. Amended Complaint at ¶ 176. The Complaint further alleges that in their commercial advertising, Defendants have misrepresented the nature of their products by referring to specific mobile phones as XM Phones when they are, in fact, not XM Phones. *Id.* at ¶ 184. Thus, Plaintiffs properly pled a claim for false advertising.

Accordingly, the Court should deny Defendants' Motion with respect to Plaintiffs' trademark and unfair competition claims.

## CONCLUSION

Based upon the foregoing, Plaintiffs respectfully request that this Court deny Defendants' Motion in its entirety. To the extent the Court believes that additional factual allegations are needed, Plaintiffs respectfully request leave to amend. *See, e.g., Dobson Med. Grp., Inc. v. Midland Risk Ins. Co.*, 173 F.3d 860 (9th Cir. 1999) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) ("In dismissing for failure to state a claim, 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'")).

Respectfully submitted this 4th day of August, 2023.

By: /s/ Gail Podolsky
Bryan F. Murphy
BURCH & CRACCHIOLO, P.A.
1850 North Central Avenue
Suite 1700
Phoenix, Arizona 85004

Gail Podolsky
*Admitted pro hac vice*
Georgia Bar No. 142021
CARLTON FIELDS, P.A.
Email: gpodolsky@carltonfields.com
1201 West Peachtree Street, Suite 3000
Atlanta, GA 30309
Tel: (404) 815-3400
Fax: (404) 815-3415

Attorneys for Xfinity Mobile, brand of Comcast OTR1, LLC Comcast Cable Communications, LLC and Comcast Corporation

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2023, the attached document was electronically transmitted to the Clerk of the Court using the CM/ECF System which will send notification of such filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

By: /s/ Gail Podolsky
Gail Podolsky
CARLTON FIELDS, P.A.