# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| XFINITY MOBILE, a brand of COMCAST OTR1, LLC, COMCAST CABLE COMMUNICATIONS, LLC and COMCAST CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>DEVIN TECH INC., ABUZER EMRE OZER, SAMET ERASLAN and MEHMET TASKIN,<br><br>Defendants. | CIVIL ACTION NO.<br>1:19-cv-03294-JPB |

**ORDER DENYING PARTIAL MOTION TO DISMISS**

Before the Court is Defendants Devin Tech Inc., Abuzer Emre Ozer, Samet Eraslan and Mehmet Taskin's (collectively "Defendants") Partial Motion to Dismiss Complaint ("Motion"). ECF No. 25. Having reviewed and fully considered the papers filed therewith, the Court finds as follows:

## I. BACKGROUND

Plaintiffs Xfinity Mobile ("XM"), Comcast Cable Communications, LLC and Comcast Corporation (collectively "Plaintiffs") filed a complaint alleging several causes of action against Defendants, including unfair competition, tortious interference with business relations and trademark infringement, in connection

with Defendants' unauthorized acquisition and resale of XM branded mobile telephones.

As alleged in the Complaint, XM's business model is to provide its branded phones to customers through incentives such as discount pricing and zero-interest installment payment plans with the anticipation that it will recoup the incentives in part through profits earned from the sale of XM monthly service plans, which are required to use the phones. XM is able to offer these incentives only if the phones are used as intended on the XM network. To that end, the manufacturers of XM's phones install software on the phones that prevents their use outside the XM network without authorization. XM uses certain trademarks in providing its goods and services.

XM phones are sold to customers subject to specified terms and conditions that restrict the sale and use of the phones, including requiring the customer to use the phones only on XM's network and pay related monthly service charges; restricting resale of the phones; and prohibiting any actions that may damage or otherwise be adverse to XM or its customers' interest.

Plaintiffs assert that Defendants are not and have never been authorized XM distributors or retailers but are engaged in the practice of fraudulently acquiring XM phones in bulk and selling them for a substantial profit either domestically or

overseas to be used on other carriers' networks. The phones are taken out of their original packaging, and all accessories, warranties and manuals are removed. The software installed on the phones is also "unlocked" or altered to allow the phones to be used on networks other an XM's.

An investigator for XM was able to purchase five such phones from Defendants. Defendants also offered to sell the investigator additional phones and conveyed that they traffic in approximately forty to fifty new XM phones per week. XM's research of thirty-two XM phone identification codes Defendants provided to the investigators revealed that the phones had been fraudulently acquired through XM's telephone sales department.

Plaintiffs further allege that they have suffered substantial damages, including being deprived of the opportunity to recoup their substantial investment in new XM phones and to earn profits through the provision of monthly services to customers; lost business of customers who Defendants encouraged or caused to breach their contracts with XM; lost prospective sales to customers whose orders XM could not fill because Defendants' fraudulent acquisition of XM phones caused insufficient supply of phones to meet legitimate customer demand; harm to their goodwill, image and reputation as a result of Defendant's infringement of

XM's marks; and harm to their existing customer relationships due to unauthorized fraudulent phone purchases made on customers' accounts.

## II. ANALYSIS

Defendants filed the instant Motion seeking dismissal of Count Two (Tortious Interference with Business Relationships and Prospective Advantage), Count Three (Tortious Interference with Contractual Relations), Count Seven (Conversion), Count Twelve (Federal Trademark Infringement) and Count Thirteen (Federal Common Law Trademark Infringement and False Advertising). Their arguments are addressed in turn below.

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." *Traylor v. P'ship Title Co., LLC*, 491 F. App'x 988, 989 (11th Cir. 2012). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief[, however,] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal punctuation omitted). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (A complaint does not suffice "if it tenders naked assertions devoid of further factual

enhancement.") (internal punctuation omitted) (quoting *Twombly*, 550 U.S. at 557).

Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. "This standard does not require a party to plead facts with such particularity to establish a significant probability that the facts are true, rather, it requires a party's pleading of facts to give rise to a 'reasonable expectation that discovery will reveal evidence [supporting the claim].'" *Burch v. Remington Arms Co., LLC*, No. 2:13-cv-00185, 2014 WL 12543887, at *2 (N.D. Ga. May 6, 2014) (quoting *Twombly*, 550 U.S. at 555) (alteration in original). *See also Twombly*, 550 U.S. at 570 (dismissing complaint because the plaintiffs did not state facts sufficient to "nudge[] their claims across the line from conceivable to plausible").

At bottom, the complaint must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" (*Iqbal*, 556 U.S. at 678) and must instead "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Traylor*, 491 F. App'x at 990 (quoting *Iqbal*, 556 U.S. at 678).

### A. Count Two (Tortious Interference with Business Relationships and Prospective Advantage) and Count Three (Tortious Interference with Contractual Relations)

Defendants argue that Counts Two and Three should be dismissed because: (i) they are surplusage in that they are not separate causes of action under Georgia law; and (ii) Plaintiffs' conclusory assertions are not sufficient to plead key elements of these counts—that a third party breached a contract, discontinued a business relationship or failed to enter into same with Plaintiffs and that Plaintiffs suffered damages as a result.

Plaintiffs respond that the two counts are, in fact, separate causes of action under Georgia law and that the Complaint adequately pleads the disputed elements. Plaintiffs point to the Complaint's allegations that Defendants have caused customers to breach contracts with XM or prevented such relationships from occurring, causing XM damaged goodwill and lost profits, among other things.

As an initial matter, Georgia law is clear that "[t]ortious interference with business relations is a distinct and separate tort from that of tortious interference with contractual relations, although some of the elements of the two torts are similar." *Renden, Inc. v. Liberty Real Estate Ltd. P'ship III*, 444 S.E.2d 814, 817 (Ga. Ct. App. 1994). Thus, Defendants' first point of contention lacks merit.

Their second point similarly lacks merit. While it is true that a complaint that relies only on labels and conclusions or a formulaic recitation of the elements of a cause of action will not survive a motion to dismiss, it is also true that allegations need only raise the right to relief above the speculative level. The Court finds that Plaintiffs have met this bar. Construing the Complaint in the light most favorable to Plaintiffs, the allegations that each XM customer must agree to terms and conditions requiring a monthly service plan but that Defendants fraudulently acquired XM phones for resale and not for use with XM's wireless service are sufficient to show breached contracts by those customers who acquired the phones and did not follow through with the monthly service agreement. Likewise, the allegation that Defendants' scheme diminished the supply of XM phones such that XM could not fill legitimate customer orders is sufficient to show lost prospective business relationships or opportunity. These allegations are sufficient to raise XM's right to relief above the speculative level and show damages—all that is required at this stage.

Accordingly, the Court declines to dismiss Counts Two and Three of the Complaint.

### B. Count Seven (Conversion)

Defendants argue that Count Seven should be dismissed because Plaintiffs failed to allege a necessary element of such claim—that Defendants currently have actual possession of XM's phones. Defendants further contend that even if Plaintiffs were able to allege that they had actual possession of the phones, their claim would nevertheless fail because they have neither demanded the return of the phones nor have Defendants refused such demand. Additionally, they argue that to the extent Plaintiffs contend that Defendants have converted proceeds from the resale of the phones, their claim similarly fails because a conversion cause of action does not support a claim for the return of money.

Plaintiffs, on the other hand, point to *Williams v. Nat'l Auto Sales, Inc.*, 651 S.E.2d 194, 197 (Ga. Ct. App. 2007), where the court expressly stated that "conversion does not require a showing of a demand and refusal; it requires only that the defendant, who comes into possession of the property unlawfully, disposes of the property without authority and retains the proceeds."

In that case, the court reasoned that "beyond the fact that an unauthorized sale of the property is itself an unlawful exercise of dominion over the property, selling the property puts it out of the defendant's power to return the property, rendering a demand a futile gesture." *Id.* (finding that the plaintiff stated a claim

for conversion where she alleged that the defendant unlawfully repossessed and resold her car). As such, it is of no moment that Defendants have sold the fraudulently acquired phones and no longer have them in their possession or that Plaintiffs have not made a demand for the return of the phones. Those allegations are not necessary where, as here, the Complaint asserts that Defendants resold the phones without authorization, and Plaintiffs are seeking relief other than the return of the phones. *See id*. Accordingly, the Court will not dismiss Count Seven of the Complaint.

### C. Count Twelve (Federal Trademark Infringement) and Count Thirteen (Federal Common Law Trademark Infringement and False Advertising)

The crux of Defendants' argument here is that Plaintiffs' claims for trademark infringement should be dismissed because Plaintiffs cannot show the cornerstone of such a claim—whether Defendants' use of the marks is likely to cause confusion. Defendants maintain that there can be no likelihood of confusion because the communications between Defendants and Plaintiffs' investigators, which are attached to the Complaint, reflect that Defendants explicitly disclosed the differences between genuine XM phones and the phones they were offering for sale. Defendants, however, concede "for the purposes of the motion to dismiss" that the phones they sold were "materially different" from genuine XM phones.

Pointing to the Complaint's allegations that Defendants continue to traffic XM phones, Plaintiffs respond that the allegations in the Complaint are not limited to the phones sold to Plaintiffs' investigators. Thus, Defendants' conclusion that because they disclosed the differences in the phones they sold to XM's investigators, the investigators were not confused by such sales is not dispositive of the central issue, which is the likelihood of confusion for all purchasers of XM phones.

The Court agrees with Plaintiffs. The allegations in the Complaint are clearly not limited to the phones Plaintiffs' investigators purchased from Defendants. For example, Plaintiffs specifically allege that "Defendants' conduct leads to post-sale confusion by causing consumers in the United States who purchase XM Phones from Defendants or their co-conspirators to believe that they are purchasing legitimate XM Phones approved by Plaintiffs that can be activated on Xfinity Mobile service and contain original warranties." Indeed, it is not clear why messages attached to the Complaint as examples of Defendants' conduct would serve to limit the express allegations in the Complaint.

In any event, the Eleventh Circuit has held that "the resale of a trademarked product that is materially different can constitute a trademark infringement" because "materially different products that have the same trademark may confuse

Case 2:19-cv-00294-JPB Document 50 Filed 09/28/20 Page 11 of 11

consumers and erode consumer goodwill toward the mark." *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1302 (11th Cir. 2001). Given Defendants' concession that the products they resold were "materially different" from genuine XM phones and Plaintiffs' allegations that such sales have led to post-sale confusion among consumers, the Court finds that Plaintiffs have stated a claim for trademark infringement above the speculative level. Accordingly, the Court declines to dismiss Counts Twelve and Thirteen of the Complaint.

Based on the foregoing analysis, Defendants' Partial Motion to Dismiss Complaint (ECF No. 25) is **DENIED**.

**SO ORDERED** this 28th day of September, 2020.

**J. P. BOULEE**
United States District Judge