**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Xfinity Mobile, et al., | No. CV-22-01950-PHX-SMB |
| Plaintiffs, | **ORDER** |
| v. | |
| Globalgurutech LLC, et al., | |
| Defendants. | |

Pending before the Court is Defendants' Motion to Dismiss Counts Four, Ten, Eleven and Twelve of Plaintiffs' Amended Complaint for Damages and Injunctive Relief (Doc. 44).  Plaintiffs have filed a response (Doc. 51) and Defendants filed a reply (Doc. 54).  Oral argument was requested, but the Court will exercise its discretion to resolve these motions without oral argument.  *See* LRCiv 7.2(f) ("The Court may decide motions without oral argument.").  After reviewing the briefing and relevant law, the Court will grant the Motion.

**I.      BACKGROUND**

Plaintiffs sell cell phones to customers that buy its high-speed internet service.  (Doc. 39 at 2 ¶ 1.)  Customers are offered financial incentives to purchase the phones, and Plaintiffs recoup their investment by servicing customer accounts on its mobile wireless network.  (*Id.*)  Through operation of the websites SellLocked.com and iBuyLocked.com, Globalgurutech LLC ("GGT") buys and resells cell phones.  (*Id.* ¶ 4; Doc. 1 at 5 ¶ 17.)  Plaintiffs accuse GGT of unlawfully obtaining cell phones to be lucratively resold.  GGT

is solely owned and operated by Defendant Jakob Zahara.  (*Id.* at 5 ¶ 19.)  More broadly, Plaintiffs allege GGT is fraudulently acquiring and reselling Xfinity Mobile ("XM") phones in bulk (*id.* at 9 ¶ 41) and that GGT "unlocks" those phones before reselling them abroad for a profit.  (*Id.* at 9–10 ¶ 41.)  Plaintiffs also allege that GGT is infringing on its trademarks in the process.  (*Id.* at 16–17 ¶¶ 70–71.)

Plaintiffs originally filed this lawsuit November 2022, alleging twelve claims.  After ruling on Defendants previous motion to dismiss, the following counts were dismissed with leave to amend: (4) civil conspiracy; (10) federal trademark infringement; (11) federal common law trademark infringement and false advertising; and (12) contributory trademark infringement.  (Doc. 35.)  On July 7, 2023, Plaintiffs filed an Amended Complaint re-alleging each of those counts.  (Doc. 39.)  Defendants now move to dismiss those counts, again arguing that Plaintiffs have not cured any of the deficiencies in the original Complaint.  (*See* Doc. 44.)

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2).  Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  Facial plausibility exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Id.* Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## III.  DISCUSSION

### A.  Civil Conspiracy Claim (Count Four)

Civil conspiracy requires that "two or more individuals agree and thereupon accomplish an underlying tort which the alleged conspirators agreed to commit." *Wojtunik v. Kealy*, 394 F. Supp. 2d 1149, 1172 (D. Ariz. 2005) (cleaned up).  Plaintiffs allege that Defendants have an agreement with other co-conspirators to unlawfully acquire and resell unlawfully unlocked XM phones.  (Doc. 39 at 38–39 ¶ 107.)  Plaintiffs state that the full names and identities of these co-conspirators are to be identified through discovery.  (*Id.*)  Plaintiffs give three representative examples of potential co-conspirators.  (*Id.*)  The first is SNU Unlockers—which Plaintiffs allege is involved in a conspiracy to unlock XM phones for overseas resale.  (*Id.*)  The second and third are Juanita S., with a Michigan address, and Morgan G. with a Texas address.  (*Id.*)  Plaintiffs allege that these two individuals conspired with Defendants to unlawfully acquire brand new XM Phones with the sole intention to resell them at a substantial profit.  (*Id.*)

Defendants argue that these allegations are nothing more than speculation and are intended to bury them in discovery costs.  (Doc. 44 at 4–5.)  Defendants also note that there are no factual allegations that tie SNU Unlockers, Juanita S., or Morgan G. to Defendants.  (*Id.* at 6–8.)  The Court agrees.  Plaintiffs do not allege that any of the potential co-conspirators communicated with Defendants, had an agreement with Defendants, or transacted business with Defendants.  While the Amended Complaint uses the word "conspiracy," it is used in the form of a legal conclusion.  *See Twombly*, 550 U.S. at 564. Plaintiffs' Amended Complaint does nothing more than create "a suspicion of a legally cognizable right of action" which is insufficient.  *Id.* at 555 (citing 5 Charles Alan Wright

& Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)).

Plaintiffs argue that it is not necessary for all co-conspirators to be named as defendants in the lawsuit, citing *Temple v. Synthes Corp*., 498 U.S. 5, 7 (1990) (per curiam). (Doc. 51 at 5–6.)  The Supreme Court indeed said what Plaintiffs cited above.  However, that is not the issue in this case.  It is not merely that there are no joint tortfeasors named— there are no facts to support more than a *suspicion* of a conspiracy.  Just because Juanita S. or Morgan G. purchased from or sold an XM phone to Defendants, that does not mean they are anything more than clients.  The same rationale applies to SNU Unlockers.  Just because Defendants may have used SNU Unlockers to facilitate unlocking XM phones, it does not mean there is an agreement between the two to commit some tort.

Plaintiffs also rely on the ruling in *Your Town Yellow Pages, LLC v. Liberty Press, LLC*, No. 4:09-CV-00642-TUC-RCC, 2010 WL 11459928 (D. Ariz. Feb. 24, 2010).  In that case, the district court held that if the underlying tort has been adequately pled, then no additional facts need to be alleged to support the civil conspiracy claim.  *Id.* at *2. However, that case is not binding on this Court, there is no citation to support such a broad statement, and the case is factually distinguishable.  Additionally, earlier in that ruling, the court described how three defendants worked together to commit the underlying tort.  *Id.* Here, Plaintiffs assert nothing more than that Defendants have clients and hires SNU Unlockers to unlock phones.  Therefore, the Court declines to follow the reasoning of *Your Town Yellow Pages* and will dismiss Count Four without prejudice.

**B.  Trademark Claims (Counts Ten, Eleven and Twelve)**

These trademark claims were previously dismissed based on the fair use doctrine and the Court's finding that the allegations in the Complaint did not support a finding of material difference between the product sold and the Xfinity product.  (Doc. 35 at 8–11.) Defendants again move to dismiss these counts under the doctrine of nominative fair use. (Doc. 44 at 8.)  Plaintiffs respond by arguing that neither normative fair use nor the first sale doctrine apply.  (Doc. 51 at 8.)

To establish a nominative fair use defense, a defendant must prove the following

three elements:

> First, the [plaintiff's] product or service in question must be one not readily identifiable without use of the trademark; second, only so much of the mark or marks may be used as is reasonably necessary to identify the [plaintiff's] product or service; and third, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.

*Health Indus. Bus. Commc'ns Council Inc. v. Animal Health Inst.*, 481 F. Supp. 3d 941, 955 (quoting *New Kids on the Block v. News Am. Pub., Inc*., 971 F.2d 302, 308 (9th Cir. 1992)).  This defense is designed to protect a defendant's use of a plaintiff's mark "to describe the plaintiff's product, even if the defendant's goal is to describe its own product." *Id.*  And although rare, the Court may determine nominative fair use at the dismissal stage. *Id.*; *see also Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939 (9th Cir. 2008).  The Court will again turn to the Ninth Circuit's fair use test.

First, in their Amended Complaint, Plaintiffs do not appear to add any facts to contest the application of the first fair use element.  (*See* Doc. 39.)  Defendants repeat their argument that the phones that they are buying and selling are not readily identifiable without the use of the Xfinity mark. (Doc. 44 at 11.)  The Court agrees.  Here, Defendants are using the mark to identify the types of phones it buys and sells.  Given that the product at issue here are general cell phones, the mark's use is to differentiate the carrier of origin for the phones.  Moreover, the mere fact that Defendants resell Xfinity phones does not automatically constitute infringement.  *See NEC Electronics v. CAL Circuit Abco*, 810 F.2d 1506, 1509 (9th Cir. 1987); *Enesco Corp. v. Price/Costco Inc.*, 146 F.3d 1083, 1085 (9th Cir. 1998).

Second, Plaintiffs allege that it is unnecessary for Defendants to use the Xfinity logo on their website and that use of the logo suggests an affiliation or endorsement where none exists.  (Doc. 39 at 12 ¶ 53.)  The Amended Complaint again provides a snapshot into GGT's website's use of the Xfinity mark.  (*See id.* at 11 ¶ 52.)  This web feature of allowing site visitors to select their carrier allegedly "allow[s] co-conspirators to sell brand new carrier-locked phones by clicking on their respective logos."  (*Id.*)

This still represents the only specific use of Xfinity's mark by Defendants.  In fact, Plaintiffs used this exact snapshot in its Amended Complaint.  (*Id.*)  Defendants again point to *Volkswagenwerk Aktiengesellschaft v. Church*, 411 F.2d 350 (9th Cir. 1969) for the proposition that that using Xfinity's logo adjacent to the logos of other carriers—namely AT&T, Verizon, Sprint, and T-Mobile—does not suggest an endorsement on Xfinity's behalf.  (*Id.* at 9–10.)  Defendants argue that they are instead using the mark to identify the types of phones it buys and sells and are not using the mark for any advertising purpose.  (*Id.*; Doc. 54 at 6–7.)  The Court agrees.  Again, the mark's use is to differentiate the carrier of origin for the phones.  The use of Xfinity's mark is for the limited purpose of differentiation and identification.

Third, Plaintiffs assert that "[u]pon information and belief, Defendants use the Xfinity Mobile Marks in the advertising, promotion and resale of their materially-different phones."  (Doc. 39 at 16 ¶ 70.)  Defendants argue that the Amended Complaint lacks any specific allegations of actions taken in conjunction with the use of the mark that would constitute sponsorship or endorsement.  (Doc. 54 at 7.)  These types of actions, of course, would constitute a violation of the third element under the above-referenced test.  *See Health Indus. Bus. Commc'ns Council Inc.*, 481 F. Supp. 3d at 955.  However, this merely represents another of Plaintiffs' conclusory allegations.  Plaintiffs provide no facts to support this allegation, which appears designed solely to reach the third element's bar.  *See id.*  Again, mere conclusory statements do not suffice.  *Iqbal*, 556 U.S. at 678.

Additionally, Plaintiffs argue that the first sale doctrine is inapplicable.  (Doc. 51 at

8–11.)  However, Defendants did not argue for application of the first sale doctrine as a basis for dismissal of the claims.  (*See* Doc. 44.)  Rather, Defendants solely relied on the normative fair use doctrine.  (*Id.* at 8–11; Doc. 54 at 6–10.)  Therefore, the Court will not analyze the potential application of the first sale doctrine.  The Court concludes that application of the normative fair use doctrine warrants dismissal of Counts Ten, Eleven, and Twelve.  Accordingly, the Court will dismiss these claims without prejudice.

**IV.    CONCLUSION**

For the reasons discussed above,

**IT IS HEREBY ORDERED granting** Defendants' Motion to Dismiss Counts Four, Ten, Eleven and Twelve of Plaintiffs' Amended Complaint for Damages and Injunctive Relief (Doc. 44).

**IT IS FURTHER ORDERED dismissing** Counts Four, Ten, Eleven, and Twelve without prejudice.

Dated this 17th day of January, 2024.

Honorable Susan M. Brnovich
United States District Judge