**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Xfinity Mobile, et al., | No. CV-22-01950-PHX-SMB |
| Plaintiffs, | **ORDER** |
| v. | |
| Globalgurutech LLC, et al., | |
| Defendants. | |

Pending before the Court is Defendants' Motion to Compel Plaintiffs' Production of Private Investigator Documents (Doc. 68). Plaintiffs filed a response (Doc. 76), and Defendants filed a reply (Doc. 78). The Court exercises its discretion to resolve this Motion without oral argument. *See* LRCiv 7.2(f) ("The Court may decide motions without oral argument."). After consideration of the pleadings and relevant law, the Court will grant the Motion.

**I.   BACKGROUND**

This case is about Defendants' alleged scheme to sell improperly procured cell phones. (Doc. 39.) This Motion stems from a discovery dispute whereby Defendants are requesting the Court to compel Plaintiffs to produce "all communication, including emails, letters and texts between you and the undercover investigator referenced in your Amended Complaint." (Doc. 68-2.) Plaintiffs' counsel hired Ina Xhoxhaj from Stumar Investigation and Detective Agency ("Stumar") to investigate Defendants prior to filing their Complaint. (Doc. 76 at 1.) Plaintiffs plan to have Xhoxhaj testify at trial and included her declaration

1 in support of their Motion for Expedited Discovery. (Doc. 16.) In her declaration, she
2 outlined what she believed to be Defendants' scheme of selling XM phones overseas. (*Id.*)
3 Her declaration includes many of the facts Plaintiffs allege in their Amended Complaint.
4 (*Id.*; Doc. 39.)

Defendants initially requested Plaintiffs produce the communications between Stumar investigations and the firm. (Doc.68-2.) Plaintiffs, however, declined to produce this information and instead submitted to Defendants one invoice from Stumar and submitted a supplemental response whereby they claimed without waiver that the remainder of the requested documents were privileged. (Doc. 68-4.) They also declined to produce a privilege log for the request "until it is narrowly tailored in time and scope and defined in relevance." (Doc 68-3.) Defendants now move to compel Plaintiffs to produce the remainder of the documents falling under their request, arguing that Plaintiffs only produced the documents they need for trial, but refuse to produce documents that Defendants need for trial. (Doc. 68 at 4.)

## II. LEGAL STANDARD

Determining the scope of discovery is within the trial court's discretion. *Hallett v. Morgan*, 296 F.3d 732, 750–51 (9th Cir. 2002). Under Federal Rule of Civil Procedure 37, a party may file a motion to compel when the opposing party fails to provide a response, or provides an incomplete response, to interrogatories or requests for documents. Fed. R. Civ. P. 37(a).

Notably, Rule 26(b) of the Federal Rules of Civil Procedure accords that discovery should be given a broad scope "to provide both parties with information essential to the proper litigation of all relevant facts, to eliminate surprise, and to promote settlement." *Matter of Hawaii Corp.*, 88 F.R.D. 518, 524 (D. Haw. 1980). Accordingly, the Court is to construe discovery under Rule 26 "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). This broad scope of discovery will be curtailed where there is a privilege involved. *See* Fed. R. Civ. P.

26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant. . . ."). Additionally, a party *may* be unable to obtain documents which were prepared in anticipation of litigation. *See* Fed. R. Civ. P. 26(b)(3). That said, privileges will be construed narrowly because they impede full and free discovery of the truth. *Eureka Fin. Corp. v. Hartford Acc. & Indem. Co.*, 136 F.R.D. 179, 183 (E.D. Cal. 1991).

Further the party asserting privilege has the burden of establishing that it exists. *Brooks v. San Joaquin*, 275 F.R.D. 528, 530 (E.D. Cal. 2011). When a party invokes a privilege, they must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and in doing so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). This is also known as a privilege log. *James River Ins. Co. v. Thompson*, No. CV-20-01052-PHX-DGC, 2021 WL 5771148, at *4 (D. Ariz. Dec. 6, 2021). Further, the federal rules specifically state that if a party objects to portions of a Rule 34 document production, it must "permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C). In other words, where a party claims a privilege, they must produce the non-privileged portions of the requested documents and list the rest in a privilege log. *James River Ins. Co.*, 2021 WL 5771148, at *4.

### III.  DISCUSSION

In support of their Motion, Defendants argue that Plaintiffs' communications with the third-party investigator are not privileged, or alternatively that Plaintiffs have waived this privilege by inserting portions of the communications into their Amended Complaint and by having the investigator testify as a witness. (Doc. 68 at 5.) In response, Plaintiffs assert that the communications are privileged because both Arizona law and Federal law protect a private investigator's communications with counsel, and that they did not waive this privilege because they only produced communications between the investigator and Defendants. (Doc. 76 at 3.)

First, Plaintiffs assert that Ariz. Rev. Stat. § 32-2455(A) prohibits the disclosure of a private investigator's report to anyone other than the client. (Doc. 76 at 4.) Under this

statute "no licensee, associate, registrant or employee of a licensee may divulge or release to anyone other than his client or employer the contents of an investigative file acquired in the course of licensed investigative activity." Ariz. Rev. Stat. § 32-2455(A). Plaintiff further alleges that disclosing the requested communications for discovery purposes would subject Stumar to a potential misdemeanor charge. (*Id.*)

The Court disagrees with Plaintiffs' interpretation of the statute. A plain reading of the statute is that the person(s) or company conducting the licensed investigation may not divulge information gathered during the investigation to anyone other than a client. It does not state, or even imply, that a *client* may not divulge this information as needed once they are the ones in possession of the information. In other words, the Court is not convinced that this statute creates an express privilege providing a blanket prohibition on discovery of a private investigator's reports or communications. *See also Curtis v. McHenry*, 172 F.R.D. 162, 164 (W.D. Pa. 1997) (noting that several state statutes, including the one implicated here, relating to private investigator disclosure do not "expressly create" privilege).

Next, Plaintiffs assert that even without the statutory protection their communications with the investigator are protected under attorney-client privilege. Under Arizona law, communication "between an attorney for a corporation" and "any employee, agent or member of the entity" if the communication is either "[f]or the purpose of providing legal advice to the entity" or "[f]or the purpose of obtaining information in order to provide legal advice to the entity" is protected by this privilege. Ariz. Rev. Stat. § 12-2234(B). Plaintiffs also assert that under *Salvation Army v. Bryson*, 273 P.3d 656 (Ariz. Ct. App. 2012) and *Pearson v. Arizona*, No. CV-20-00237-PHX-MTL, 2020 WL 5544373 (D. Ariz. Sept. 16, 2020) this privilege applies to the requested communications. Alternatively, Defendants argue that while privilege applied in these cases, they are factually dissimilar to the investigation at issue here and should not be used to find that the communications with Stumar are privileged. (Doc. 78 at 6.) The Court agrees with the reasoning of these cases for the principle that investigative communications may

1  sometimes be privilege. However, for the reasons discussed below, any privilege the
2  communications had has been waived.

3  In *Salvation Army*, the plaintiff sought summaries of interviews from Salvation
4  Army *employees* that were taken by a private investigator. 273 P.3d at 657. The court
5  there held that even in redacted form those summaries were privileged because "any
6  communications between an attorney and an employee or agent of the corporation, made
7  for the purpose of providing legal advice or obtaining information to provide legal advice,
8  are protected." *Id.* at 662 (quoting *Roman Cath. Diocese of Phx. v. Superior Ct.*, 62 P.3d
9  970, 973 (Ariz. Ct. App. 2003)). Similarly, in *Pearson*, the defendant requested the
10  plaintiff company's internal report which encompassed interviews from the plaintiff's
11  employees. 2020 WL 5544373, at *2. The *Pearson* court found that because the "The
12  regional investigator acted at the direction of [defendant's] Assistant General Counsel so
13  that she, in turn, could provide legal advice to [defendant]" the report was privileged. *Id.*

14  These facts have marked differences from the facts here. First, in *Salvation Army*,
15  the reports sought were created *after* Salvation Army had already been sued. *Salvation*
16  *Army*, 273 P.3d at 658. Second, the report only contained interviews with the defendant's
17  own employees and volunteers, not with anyone outside the organization or with plaintiff
18  agents. *Id.* In other words, the finding that the report was privileged centered on the fact
19  that the interviews were between the client's employees (the client portion of client-
20  attorney privilege) and the investigator. As Defendant notes, *Salvation Army* cannot be
21  read to create a blanket privilege for counsel-hired investigator reports. The same can be
22  said about *Pearson*, where the privilege issue involved an internal report and interviews
23  between an investigator and client employees. 2020 WL 5544373, at *2. Finally, in both
24  *Salvation Army* and *Pearson*, the investigative reports at issue were not created by the
25  Plaintiff to use affirmatively in support their claims, but rather were used by the defense to
26  help prepare them to defend themselves in litigation. The investigations in both cases were
27  conducted to give counsel information needed to provide an adequate defense to their
28  clients.

Here, Stumar's report resulted from "a sting operation" where Plaintiffs' attorneys hired a private investigator to go undercover and gather information *from Defendant*. (Doc. 68 at 5.; Doc. 39 at 14.) Plaintiffs then affirmatively used the investigator's information in their Complaint. (Doc. 39 at 14–16.) Stumar's report was *not* conducted with Plaintiff-client's employees internally solely for the purpose of getting legal advice but was for the purpose of bringing a lawsuit. Therefore, the privilege analysis used in both *Pearson* and *Salvation Army* is not on point. Further, in neither case did Defendants or defense counsel put the reports at issue like Plaintiffs here are doing by continuously referencing it throughout their Amended Complaint. Instead, the Court finds the analysis in *Itskin v. Gibson*, No. 2:10-CV-00689, 2011 WL 5326165 (S.D. Ohio Nov. 7, 2011), *aff'd* 2012 WL 787400 (S.D. Ohio Mar. 9, 2012) more factually similar and therefore persuasive. There, the defendant moved to compel production of a private investigator's report and communications that took place before plaintiff filed her lawsuit. *Id.* at *1. Like here, the plaintiff used this investigator to gather information on the defendant prior to bringing suit. *Id.* The plaintiff there, like here, argued that this information was privileged under a similar state statute, attorney-client privilege, and the work product doctrine. *Id.* at *1–4. The plaintiff further claimed that he did not need to provide this information because he was not planning on calling the investigator as a witness. *Id.* The court found there was no blanket privilege for private investigator reports, that the report did not fall under the work-product doctrine, and further that because Plaintiff failed to file a privilege log, he failed to meet his burden of establishing privilege. *Id.* at *5.

Like in *Itskin*, Plaintiffs here also failed to establish how Ariz. Rev. Stat. § 32-2455(A) carte blanche protects private investigator reports from discovery and failed to meet their burden of establishing privilege without the statute in part by failing to produce a privilege log as required by Fed. R. Civ. P. 26(b)(5)(A). Instead, they submitted a "boilerplate" refusal to provide the requested documents in its response to Defendant's request for production. (Doc. 68-3); *see also Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) ("[B]oilerplate objections

or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege."); *G&G Closed Cir. Events, LLC v. Cal. Ctr. for the Arts, Escondido, Found.*, No. 20cv2137-JLS (NLS), 2021 WL 4690503, at *3 (S.D. Cal. Oct. 7, 2021) (finding the attorney-client privilege and work product privilege are not "wholesale" bars to discovery and a party must produce objections in a privilege log when raising privilege issues.) Additionally, the *Itskin* plaintiff was not even planning on bringing the investigator in as a witness. Here, Plaintiffs are planning on using the Stumar investigator as a witness, further underscoring the inherent unfairness of Defendant being unable to examine her report prior to trial. Again, despite Plaintiffs' contention Defendants have failed to show how they have been unfairly prejudiced at this stage, or that they cannot obtain the information through depositions, the burden here is on Plaintiff to prove the information is privileged which they have failed to meet. (Doc. 76 at 12.)

Even if the Court found these documents were privileged, it also finds that Defendants waived both the attorney-client privilege and the work-product privilege by disclosing such information to Defendant and third parties via its Amended Complaint. *See Itskin*, 2011 WL 5326165, at *5 ("Because the purpose of the work-product doctrine is to protect the relevant work from falling into the hands of an adversary, disclosure of protected materials to a third-party will often waive the protection of the work-product doctrine.") (internal quotation marks omitted). Where a party discloses portions of evidence that could fall under the work-product protection via a proceeding, here the Amended Complaint and Xhoxhaj's forthcoming testimony, waiver will extend to the undisclosed portion of that communication where: (1) waiver is intentional; (2) the disclosed and undisclosed information contain the same subject matter and (3) they ought in fairness to be considered together. Fed. R. Evid. 502(A); *see also B.H. ex rel. Holder v. Gold Fields Mining Corp.*, 239 F.R.D. 652, 655 (N.D. Okla. 2005) (recognizing waiver can occur "where a party injects the substance of work-product into litigation or other adversary proceedings, or makes a partial disclosure of work-product while seeking to maintain protection of work-product related to the same subject") (cleaned up).

Here, Plaintiffs intend to call Xhoxhaj as a witness and intentionally included large portions of her findings in their Amended Complaint. *See United States v. Reyes*, 239 F.R.D. 591, 599 (N.D. Cal. 2006) (privilege "may be waived, for example, when an attorney attempts to use the work product *as testimony or evidence*, or reveals it to an adversary to gain an advantage in litigation") (emphasis added). Further, the disclosed information and the information from the report and communications sought by Defendant undoubtedly are on the same subject. Each of these are Plaintiffs indisputably "injecting" the substance of potential work-product into this litigation. And as explained throughout this Order, it is only fair to Defendants that all of the information surrounding Xhoxhaj's communications and report be considered together. Accordingly, even if the information sought fell under some privilege, Plaintiffs have waived it by making it the backbone of their factual allegations against Defendants.

As to Plaintiffs' argument that this type of information should not be discoverable because it is "more akin to the types of reports and communications that occur between law enforcement and prosecutors," the Court is not persuaded. (Doc. 76 at 12.) *See Guerrero v. United States*, No. 12-CV-370-TUC-RCC, 2013 WL 12173597, at *1 (D. Ariz. Feb. 6, 2013) (granting protective order where materials may "reference various techniques and methods, which, if disclosed, could compromise law enforcement efforts"). First, Plaintiffs are not a law enforcement agency, and this is not a case brought by prosecutors. Therefore, it will not be treated as such. Next, although the Court sees the potential harm disclosing Stumar's report could have to plaintiffs bringing these cases against future defendants, this cannot disparately impact Defendants' ability to defend themselves in the instant case. That said, a protective order may "strike the appropriate balance between the need for information and [privacy interests]" regarding how Plaintiff investigates these types of claims. *G&G*, 2021 WL 4690503, at *3 (cleaned up); *see also Mohideen v. Calnet, Inc.*, No. 13CV799 MMA NLS, 2014 WL 1028638, at *3 (S.D. Cal. Mar. 14, 2014) (explaining that when a protective order exists, "there is a minimal encroachment of the privacy right because any sensitive information can be labeled 'Confidential'"). Plaintiffs

have yet to move for a protective order over this information and these documents.

In sum, Plaintiffs have failed to establish the work-product doctrine or attorney-client privilege by failing to produce even a threadbare privilege log or persuade the Court that there is an outright ban on disclosure via statute. The Court will not allow Plaintiffs to use a 'privileged report as a sword to prevent Defendant from adequately defending against the claims largely bolstered by said report. *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) ("The privilege which protects attorney-client communications may not be used both as a sword and a shield. Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived.") (internal citation omitted); *Arizona ex rel. Goddard v. Frito-Lay, Inc.*, 273 F.R.D. 545, 556–57 (D. Ariz. 2011) (finding that by introducing an investigating attorney as a fact witness and using some of her reports as evidence while also claiming privileges over such information plaintiffs were attempting to use privilege "as both a sword and a shield, an act that the Ninth Circuit has specifically cautioned against").

The Court, using its broad discretion to control discovery, finds that the private investigator documents are not privileged, and in any event any privilege has been waived. Accordingly, the Court will grant Defendants' Motion. However, to balance Plaintiffs' concerns over future investigations with Defendants need to defend themselves now, the Court will order the parties to meet and confer on a protective order. *G&G*, 2021 WL 4690503, at *3.

## IV. CONCLUSION

For the above reasons,

**IT IS ORDERED granting** Defendants' Motion to Compel Plaintiffs' Production of Private Investigator Documents (Doc. 68).

…

…

…

- 9 -

**IT IS FURTHER ORDERED** that the parties meet and confer on a protective order and submit a proposed order not later than May 20, 2024.

Dated this 24th day of April, 2024.

_____
Honorable Susan M. Brnovich
United States District Judge