**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Xfinity Mobile, et al.,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>Globalgurutech LLC, et al.,<br><br>　　　　Defendants. | No. CV-22-01950-PHX-SMB<br><br>**ORDER** |

Before the Court is Plaintiffs' Motion for Leave to File Second Amended Complaint (Doc. 87), Defendants' Response (Doc. 92), and Plaintiffs' Reply (Doc. 94). The Court will exercise its discretion to resolve the Motion without oral argument. *See* LRCiv 7.2(f) ("The Court may decide motions without oral argument."). After reviewing the briefing and relevant law, the Court will grant, in part, Plaintiffs' Motion for the following reasons.

**I.　BACKGROUND**

The Court set forth the background facts of the case in its June 14, 2023 Order striking portions of Plaintiffs' Complaint with leave to amend and dismissing a civil conspiracy claim (Count 4) and trademark claims (Counts 10, 11, and 12) (Doc. 35). Plaintiffs then timely filed their Amended Complaint (Doc. 39). Defendants moved to dismiss those same claims in Plaintiffs' Amended Complaint (Doc. 44), which the Court granted (Doc. 77). Plaintiffs are now seeking leave again to amend their Complaint to add back the dismissed Counts. (Doc. 87.) The relevant new alleged facts are addressed in turn.

## II. LEGAL STANDARD

The grant or denial of an opportunity to amend a complaint is within the Court's discretion, but it "should freely give leave when justice so requires." *Foman v. Davis*, 371 U.S. 178, 183 (1962); Fed. R. Civ. P. 15(a)(2). In exercising that discretion, "a court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities." *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987) (citation omitted). The Court considers five factors to evaluate a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the plaintiff previously amended the complaint. *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004) ("Futility alone can justify the denial of a motion for leave to amend.").

An amendment is futile where it is "subject to dismissal" *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998); *see also Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("[A] court does not abuse its discretion in denying a motion to amend where the movant presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally."). "[T]he proper test to be applied when determining the legal sufficiency of a proposed amendment is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)." *Do v. Ariz. State Univ.*, No. CV-22-00190-PHX-JJT, 2023 WL 8622628, at *2 (D. Ariz. Dec. 13, 2023) (quoting *Nordyke v. King*, 644 F.3d 776, 788 n.12 (9th Cir. 2011), *aff'd on reh'g en banc on other grounds*, 681 F.3d 1041 (9th Cir. 2012)). Surviving a Rule 12(b)(6) motion requires a complaint to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## III. DISCUSSION

### A. Timeliness

Plaintiffs first argue that the Court should strike Defendants' Response because it is untimely under Local Rule 7.2(c), which requires serving and filing a responsive pleading fourteen days after initial service. (Doc. 94 at 2–3.) Plaintiffs filed and served their Motion

for Leave to Amend on March 29, 2024. (Doc. 87.) The deadline to file a responsive pleading was April 12, 2024. LRCiv. 7.2(c); Fed. R. Civ. P. 6(a)(1). Defendants did not file their Response until April 15, 2024. (Doc. 92). Although Defendants did not file and serve its Response in time, the Court will use its discretion to not find the non-compliance with the filing deadline constitutes consent to granting Plaintiffs' Motion. LRCiv. 7.2(i); *Buchanan v. Ghandi*, No. CV-22-01482-PHX-SMB, 2024 WL 1240192, at *2 (D. Ariz. Mar. 22, 2024).

The Court cautions against untimely filings, but whether the Court strikes Defendants' Response is not dispositive in this matter. Even so, granting a motion to strike is discretionary, *Sunburst Mins., LLC v. Emerald Copper Corp.*, 300 F. Supp. 3d 1056, 1059 (D. Ariz. 2018), and is generally disfavored absent prejudice to the non-moving party, *Cooper v. Window Rock Unified Sch. Dist.*, No. CV-20-08346-PCT-DJH, 2023 WL 2463765 (D. Ariz. Mar. 10, 2023), *aff'd*, No. 23-15527, 2024 WL 575138 (9th Cir. Feb. 13, 2024). Plaintiffs did not directly move to strike Defendant's Response, instead they opted to raise the issue in their Reply, which thoroughly addressed the merits of Defendants' untimely arguments. Therefore, because no prejudice would result, the Court declines to strike Defendants' Response.

**B. Bad Faith, Undue Delay, and Prejudice**

Plaintiffs argue that they moved in good faith without intending to cause undue delay and that granting the Motion would not cause prejudice to the Defendants. (Doc. 87 at 3–5.) The Court finds no reason to disagree with Plaintiffs' position, nor do the Defendants argue otherwise. (Doc. 92.) Further, given the Court's disposition in this matter, Defendants suffer no prejudice. Therefore, the court finds that Plaintiffs' Motion was made in good faith and would not cause undue delay or prejudice.

**C. Previous Amendments to the Complaint**

Plaintiffs argue that their proposed amendments address the Court's dismissal of the conspiracy and trademark claims (Docs. 35, 77). (Doc. 94 at 3–4.) Defendants argue that Plaintiffs rely on the same speculation to establish the alleged conspiracy and they simply

identify people and entities that Defendants have done business with. (Doc. 92 at 5–6.) Defendants also point to Seventh Circuit case law to argue repeated failures to cure the deficiencies warrants denial of leave to amend but such a reliance is unnecessary. *See Lee v. Ne. Illinois Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1052–53 (7th Cir. 2019) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Weighing repeated opportunities to cure a defect in a complaint is consistent with this Circuit's treatment of the *Foman* factors, which includes "repeated failure to cure deficiencies by amendments previously allowed." *See Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (citing *Foman*, 371 U.S. at 182)); *see also Nunes*, 375 F.3d at 808.

Although the substance to Plaintiffs' changes is relevant, the Court will address the substance in the proposed changes under the futility factor. Relevant here are Plaintiffs' previous attempts to cure the deficiencies in their claims. *See Brown*, 953 F.3d 574 (analyzing the futility of a proposed third amended complaint after the plaintiff alleged new evidence). As Defendants highlight, the Court previously found Plaintiffs' conspiracy claim deficient and too speculative, first in failing to name a sufficient number of co-conspirators (Doc. 35 at 7), then, after they named potential co-conspirators, they failed to provide facts to support more than a suspicion of a conspiracy (Doc. 77 at 3–4). Granting leave to file a Second Amended Complaint is effectively a third attempt for Plaintiffs to establish their conspiracy and trademark claims. The Court finds this factor weighs against granting Plaintiffs' Motion.

**D. Futility of the Conspiracy Claim**

Plaintiffs argue that since the Court's prior finding that they only held mere suspicions of a conspiracy (Doc. 77 at 3–4), newly produced purchase and sales records show transactions involving sales of their phones procured through fraud. (Doc. 87 at 6.) Plaintiffs also argue that they alleged "specific unlawful conduct in which two co-conspirators engaged to demonstrate that Defendants operate an identical scheme of common design and are engaged in similar or identical unlawful conduct with their co-conspirators." (Doc. 94 at 6.) Defendants argue that Plaintiffs have only established

the existence of arms-length business transactions but not the existence of communications or an agreement between Defendants to commit an underlying tort. (Doc. 92 at 6–7.)

Defendants are correct. Civil conspiracy requires that "two or more individuals agree and thereupon accomplish an underlying tort which the alleged conspirators agreed to commit." *Wojtunik v. Kealy*, 394 F. Supp. 2d 1149, 1172 (D. Ariz. 2005) (cleaned up). A conspiracy may also be reasonably inferred if "parties have reached 'a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement.'" *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1055–56 (9th Cir. 1981) (quoting *American Tobacco Co. v. United States*, 328 U.S. 781, 809–10 (1946)).

First, Plaintiffs mistakenly rely on *William Inglis & Sons Baking Co.* In that case, the plaintiff had named defendants involved in an alleged "horizontal" conspiracy between three baking companies. *See William Inglis & Sons Baking Co.*, 668 F.2d at 1023–24. In responding to a motion for summary judgment, plaintiff alleged a "vertical" conspiracy between one of the baking companies, its parent company, and a consulting firm not named in the complaint. *Id.* at 1023–24, 1052–54. The Ninth Circuit found it was proper for the district court to allow the plaintiff to use the vertical conspiracy to defeat summary judgment. *Id.* at 1053–54 (reasoning that alleging the "horizontal" conspiracy provided defendants with notice because plaintiff previously named the parent company and consulting firm as unnamed co-conspirators in an interrogatory). The Ninth Circuit concluded that a "vertical" conspiracy could exist, plaintiff must show that the subsidiary and parent company had a mutual understanding "with the specific intent of each to restrain trade." *Id.* at 1054–55.

Plaintiffs flip that case on its head. This is not an issue of notice of potential co-conspirators. The issue is Plaintiffs' factual support in alleging an agreement to support their conspiracy claims, of which Defendants are actively defending themselves against. Plaintiffs first claimed the named Defendants "acted as a single entity," owned and managed by a single Defendant, Jakob Zahara, to advance the conspiracy. Plaintiffs then

alleged three third-party co-conspirators (Doc. 39 at 22–23 ¶ 107), but as this Court found, they failed to allege any communications, agreement, or business transactions between Defendants and the third-party co-conspirators (Doc. 77 at 3).  Now, Plaintiffs allege that Defendants sold locked phones to an international company, purchased fraudulently obtained phones and sold them to a "known handset traffick[ing]" company, and engaged in substantial business transactions with a company previously indicted for selling stolen phones.  (Docs. 87-1 at 16 ¶ 69, 17–19 ¶¶ 73–79; 89-1 at 16 ¶ 69, 17–19 ¶¶ 73–79.) Plaintiffs also attach documents identifying transactions where Defendants purchased, shipped, or sold Plaintiffs' phones with various parties, including those companies. (Docs 87-24 to -26; Docs 89-3 to -5.)   These facts address transactions and possibility communications as they relate to the bare fact that a transaction occurred, but they do not show an agreement.

Plaintiffs have not shown that Defendants had knowledge of the other companies' misconduct to infer intent to engage in a common unlawful scheme. *See In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 52–54 (9th Cir. 2022) (finding that overlap involving the same actors between prior price fixing conspiracies and a subsequent alleged conspiracy supported the subsequent allegation but was not dispositive because defendants conduct was "more likely explained by lawful, unchoreographed free-market behavior" (citation omitted)); *McClure Enterprises, Inc. v. Gen. Ins. Co. of Am.*, No. CV05-3491-PHX-SMM, 2009 WL 73677, *1, 9–10 (D. Ariz. Jan. 9, 2009) (finding a defendant's knowledge of another defendant's misclassification scheme and concealment of that scheme to secure government contracts supported a conspiracy allegation).  Plaintiffs do not allege Defendants' involvement in alleged prior misconduct of the other companies. Although Defendants advertise to the public that they will purchase blocklisted[1] or unlocked phones, this does not suggest Defendants agreed to participate in an unlawful scheme.  Although Plaintiffs' own analysis revealed that some

---

[1] Plaintiffs describe a "blocklisted" phone as "one that will be denied service on a US wireless network because it was stolen, reported as lost, or connected with certain unlawful conduct, i.e., identity theft or payment fraud." (Doc. 87 at 7 n.8.)

- 6 -

of the phones sold to Defendants were obtained fraudulently (Doc. 87-1 at 18 ¶ 78), this says nothing about Defendants' knowledge of or role in a purported conspiracy.

Plaintiffs once again rely on the legal conclusion that a "conspiracy" exists and supports it with the same allegation that business transactions exist without any evidence to establish an agreement to engage in an unlawful scheme. *See Twombly*, 550 U.S. at 564. Therefore, the repeated opportunities and Plaintiffs' proffered reasons for a Second Amended Complaint are futile and do not support granting leave to amend as to Count Four.

### E. Futility of the Trademark Claims

This Court previously found that Defendants established nominative fair use of Plaintiffs' mark, and thus dismissed all trademark claims. (Doc. 77 at 4–7.) Nominative fair use by definition is not infringement. *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1175 (9th Cir. 2010). Finding nominative fair use requires the Court to ask "whether (1) the product was 'readily identifiable' without use of the mark; (2) defendant used more of the mark than necessary; or (3) defendant falsely suggested he was sponsored or endorsed by the trademark holder." *Id.* at 1175–76 (noting the consumers may infer sponsorship or endorsement if a defendant uses "more" of a mark than necessary). The analysis "is appropriate where a defendant has used the plaintiff's mark to describe the plaintiff's product, even if the defendant's ultimate goal is to describe his own product." *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002). Once nominative fair use is established, the burden "reverts to the plaintiff[s] to show likelihood of confusion." *Toyota Motor Sales*, 610 F.3d at 1183.

Plaintiffs now assert they have alleged new specific facts that Defendants' use exceeds fair use and is false adverting. (Doc. 87 at 6–7.) First, Plaintiffs note that the Defendants' website states in its terms of service that "[a]ll trademarks and registered trademarks relating to products and services available through our Website are the sole property of selllocked.com." (*Id.* at 7.) They argue this statement and use of the marks on the website falsely represent a connection or affiliations between the parties and mislead

the public about the origin of the products or sponsorship. (*Id.*) Plaintiffs also argue that rather than using a generic identifier or have customers type in the carrier's name, Defendants chose to copy and paste the mark on their website. (Doc. 94 at 8.) This issue is two-fold; Defendants' use of the mark in buying phones and their use in selling.

Starting with the buy-side use of the mark. First, the Court notes that it previously ruled that nominative fair use was applicable. (Docs. 35 at 9–10; 77 at 4–6.) The Court, however, erred in finding Defendants used only as much as the mark as reasonably necessary. *Toyota Motor Sales*, 610 F.3d at 1175. The Ninth Circuit has consistently found that using only the words of a mark, without using the stylized mark, is nominative fair use. *Volkswagenwerk Aktiengesellschaft v. Church*, 411 F.2d 350, 352 (9th Cir. 1969) (finding relevant that "[defendant] did not use Volkswagen's distinctive lettering style or color scheme, nor did he display the encircled 'VW' emblem"); *Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 895 (9th Cir. 2019) (concluding that using only the words of a mark and not the distinctive lettering was sufficient to support nominative fair use); *Playboy Enterprises, Inc. v. Welles*, 279 F.3d 796, 802 (9th Cir. 2002) ("[D]efendant's banner advertisements and headlines satisfy [the second] element because they use only the trademarked words, not the font or symbols associated with the trademarks."). But using a mark's distinctive lettering, copying the logo, or copying images may result in using more than reasonably necessary. *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 309 n.7 (9th Cir. 1992) ("[A] soft drink competitor would be entitled to compare its product to Coca-Cola or Coke, but would not be entitled to use Coca-Cola's distinctive lettering."); *Toyota Motor Sales*, 510 F.3d at 1881–82 (finding the use of the stylized "Lexus L" was more use of the mark than necessary); *Walt Disney Prods. v. Air Pirates*, 581 F.2d 751, 758 (9th Cir. 1978) ("By copying the images in their entirety, defendants took more than was necessary to place firmly in the reader's mind the parodied work and those specific attributes that are to be satirized.").

Despite its prior rulings, the Court is cognizant that Defendants have essentially copy and pasted the stylized marks of Defendants along with those of other carriers on their

website in the device selection menu when customers look to sell their phones to Defendants. As Plaintiffs note, Defendants "could use generic identifiers for carrier selection, or even have customers fill out a text field with their carrier, but instead choose to copy and paste the Xfinity Mark on their website." (Doc. 94 at 8.) Therefore, Defendants used more than reasonably necessary to identify Plaintiffs' products and services and nominative fair use is not available for its use in offering its services in buying various phones or to the extent it is used to sell phones. *But see Church*, 411 F.2d at 352 (refusing to enter an injunction where the defendant abandoned the infringing use without indicating an intent to resume the infringing use at a later time).

Regarding Defendants use of Plaintiffs' marks in selling phones, Plaintiffs argue Defendants advertise and sell materially different phones bearing Plaintiffs' mark. (Doc. 87 at 7.) Plaintiffs contend that Defendants sold over twenty phones they "knew or should have known" were blocklisted and did not notify the purchasing customers of the defect. (*Id.* at 8.) Defendants argue the phones do not bear Plaintiffs' mark, rather they bear Apples' because the phones at issue are iPhones. (Doc. 92 at 8.) But Plaintiffs alluded to a "representative example of Defendants' product packaging," which indicates "Apple iPhone 11 Pro Max (X-Finity) 256GB Silver," to argue Defendants advertise the devises as "genuine XM Phones." (Docs 87-1 at 12 ¶ 53; 87-7.) Presumably then, although not expressly stated, "(X-Finity)" is the purported use of the mark in the sales. *See* U.S.C. § 1114(1)(b) (relating to infringing use of a mark on a label in connection with distribution of goods with the intent to confuse, mislead, or deceive). Without more, it is pure speculation that this label did not accurately identify the contents of the package or that Defendants intended to cause confusion, mistake, or to deceive. Further, this use of the mark does not copy or recreate the mark, unlike the mark used on the website, and serves purely identification purposes the Ninth Circuit has approved of previously as discussed.

Plaintiffs' proffered evidence does not highlight any buyers of Defendants' phones that were mislead into thinking they bought phones operable on Plaintiffs' network. Plaintiffs offered evidence of an investigator who intentionally sold blocklisted phones to

Defendants and then discussed buying locked and unlocked phones from them, noting that he was the only person that could unlock Plaintiffs' phones. (Docs. 87-12; 87-13; 87-14.) This is a far cry from establishing confusion or mistake and suggests the Defendants' buyers are aware of the nature of the phones Defendants sell. Additionally, Defendants' use of the mark on the website for buying phones is too far attenuated from their sales and Plaintiffs have not established evidence otherwise to suggest sponsorship or endorsement.

As to false advertising, it requires the Defendants to misrepresent an affiliation in connection with their goods or services or to "misrepresent the nature, characteristic, qualities, or geographic origin of [its] . . . goods, services, or commercial activities." 15 U.S.C. 1125(a)(1)(A)–(B). The terms of service do ambiguously reference "all trademarks . . . relating to products . . . available through [the] Website," but in context, as Defendants' argue, this refers to use Defendants' trademarks and not Plaintiffs'. (Doc. 92 at 8.) The marks in isolation, as this Court reasoned, is used to differentiate the carriers of origin for the phones Defendants would buy—it says nothing about Defendants selling those phones. (Doc. 77 at 5.) For these reasons, the vague terms of service coupled with the use of the mark on the website or packaging does not lead to a reasonable inference that Plaintiffs sponsor or endorse Defendants in buying phones and is too far attenuated from the sales. *See* 15 U.S.C. § 1125(a)(1)(A); *Toyota Motor Sales*, 610 F.3d 1171, 1176 (9th Cir. 2010) (finding inferring sponsorship or endorsement more than necessary may overcome nominative fair use).

Plaintiffs have not established evidence of confusion in Defendants selling phones to third parties. Instead, Plaintiffs argue Defendants sell materially different phones, relying on Plaintiffs' marks for advertisement and sales, but as discussed, this argument lacks factual support. Additionally, the evidence they proffered from their investigator supports inferring Defendants' buyers are aware of the conditions and limits of the phones they are buying. Therefore, Plaintiffs' have failed to meet their burden to overcome nominative fair use with regards to the use on the packaging in selling the phones. *Toyota Motor Sales*, 610 F.3d at 1183.

Finally, to the extent Plaintiffs raise arguments against application of the first sale doctrine (Doc. 94 at 9), Defendants—again—have not argued first sale doctrine (Doc. 92 at 7–11). The Court refuses to address these arguments.

**IV.     Amendment**

The Court will grant Plaintiffs' Motion for Leave to Amend in part only as it relates to the trademark claims and use of the mark on the website consistent with the reasoning above. The Court declines to grant Plaintiffs' Motion in all other respects. Therefore, Plaintiffs will have fourteen (14) days from the date of entry of this Order to submit the Second Amended that is consistent with this order.

**V.     CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED granting in part and denying in part** Plaintiffs' Motion for Leave to Amend (Doc. 87).

**IT IS FURTHER ORDERED** Defendants file an Answer no later than 20 days after the new complaint is filed.

Dated this 29th day of August, 2024.

_____
Honorable Susan M. Brnovich
United States District Judge