**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Xfinity Mobile, et al., | No. CV-22-01950-PHX-SMB |
| Plaintiffs, | **ORDER** |
| v. | |
| Globalgurutech LLC, et al., | |
| Defendants. | |

Pending before the Court is Plaintiffs Xfinity Mobile and Comcast Corporation's (collectively, "Plaintiffs") Motion to Quash Defendants Jakob Zahara, Globalgurutech, LLC, and Guru Holdings, LLC's (collectively, "Defendants") subpoena duces tecum to Stumar Investigations (the "Subpoena") (Doc. 115). Defendants responded (Doc. 121) and Plaintiffs replied (Doc. 135). Also pending before the Court is Defendants' Motion to Compel Plaintiffs and Stumar Investigation's ("Stumar") to produce Stumar's investigation documents (Doc. 121). Plaintiffs responded (Doc. 139; *see* Doc. 135) and Defendants replied (Doc. 150). After considering the briefings and the relevant case law, the Court will deny both Motions.

**I.   BACKGROUND**

The Court has previously described the background in this case in various orders. (Doc. 77; Doc. 96; Doc. 131.) The facts relevant to these Motions are as follows: In August 2023, Defendants served Plaintiffs with their First Set of Requests for Production of "all communication, including emails, letters and texts between you and the undercover

investigator referenced in your Amended Complaint." (Doc. 68 at 3.) In response, Plaintiffs sent several objections, arguing that the attorney-client privilege and the work product privilege protection the requested documents. (*Id.* at 3–4.) Thereafter, Defendants filed a Motion to Compel (Doc. 68) the requested documents, which included an investigative report by Sumar investigator Ina Xhoxhaj. This Court granted Defendants' Motion, reasoning:

> Plaintiffs intend to call Xhoxhaj as a witness and intentionally included large portions of her findings in their Amended Complaint. *See United States v. Reyes*, 239 F.R.D. 591, 599 (N.D. Cal. 2006) (privilege "may be waived, for example, when an attorney attempts to use the work product *as testimony or evidence*, or reveals it to an adversary to gain an advantage in litigation") (emphasis added). Further, the disclosed information and the information from the report and communications sought by Defendant undoubtedly are on the same subject. Each of these are Plaintiffs indisputably "injecting" the substance of potential work-product into this litigation. And as explained throughout this Order, it is only fair to Defendants that all of the information surrounding Xhoxhaj's communications and report be considered together. Accordingly, even if the information sought fell under some privilege, Plaintiffs have waived it by making it the backbone of their factual allegations against Defendants.

(Doc. 96 at 8.) Thereafter, Plaintiffs disclosed email communications between Stumar and Plaintiffs from October 15, 2021 to November 14, 2022, two days before Plaintiffs filed suit. (Doc. 115 at 4; Doc. 121 at 5.) On August 5, 2024, Defendants served Stumar with the Subpoena at issue. (Doc. 121-1 at 1.) Therein, Defendants requested Stumar disclose:

> 1. All documents and communications, whether paper or electronically stored, relating to [its] investigation of Jakob Zahara, GlobalGuruTech, LLC or Guru Holdings, LLC, including, but not limited to, electronic records, e-mails, text messages, WhatsApp messages, written statements, notes, reports, correspondence, invoices, payment records, surveillance footage.
>
> 2. All documents and communications, whether paper or electronically stored, relating to any communication between anyone at Stumar Investigations and anyone at Carlton Fields, P.A. relating to or referencing Jakob Zahara, GlobalGuruTech, LLC or Guru Holdings, LLC.

3. All documents and communications, whether paper or electronically stored, relating to any communication between anyone at Stumar Investigations and anyone at Xfinity Mobile, a brand of Comcast OTR1, LLC, Comcast Cable Communications, LLC or Comcast Corporation.

4. All invoices to and evidence of any payments from anyone, including Carlton Fields, for work Stumar Investigations performed investigating Jakob Zahara, GlobalGuruTech, LLC or Guru Holdings, LLC

5. All reports, including any and all drafts of reports, Stumar Investigation prepared that reference Jakob Zahara, GlobalGuruTech, LLC or Guru Holdings, LLC.

6. All documents and communications, whether paper or electronically stored, relating to any communication between anyone at Stumar Investigations and any third parties relating to or referencing Jakob Zahara, GlobalGuruTech, LLC or Guru Holdings, LLC.

7. All documents relating to any bank account searches or credit report searches of Jakob Zahara, GlobalGuruTech, LLC or Guru Holdings, LLC.

(*Id.* at 2–3.) Defendants and Stumar exchanged emails wherein Stumar stated that it already provided all relevant documents as to requests 1, 2, 3, 5, and 6. (Doc. 121-2 at 1.) Stumar maintained that, if Defendants sought additional disclosure of those documents, Comcast and Carton Fields asserted privilege. (*Id.*) Stumar noted that there are no documents for request 7, and that it would provide redacted documents for request 4. (*Id.*) Thereafter, Plaintiffs moved to quash the Subpoena against Stumar, asserting attorney-client and work product privilege. (Doc. 115 at 1.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 45(d)(3) governs quashing or modifying a subpoena. Generally, only the party served with a subpoena has standing to quash it. *See Briggs v. County of Maricopa*, No. CV-18-02684-PHX-EJM, 2021 WL 1192819, *2 (D. Ariz. March 30, 2021). Rule 45(d)(3)(A) mandates that the Court must quash or modify a subpoena that: (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden. "Rule 26 of the

1  Federal Rules of Civil Procedure is also relevant when considering a motion to quash
2  because it defines the permissible scope of discovery and that same scope of discovery
3  applies to a Rule 45 subpoena." *Brown v. Sperber-Porter*, No, CV-16-02801-PHX-SRB,
4  2017 WL 10409840, at *2 (D. Ariz. Nov. 6, 2017).  "Rule 26(b) allows for 'discovery
5  regarding any nonprivileged matter that is relevant to any party's claim or defense and
6  proportional to the needs of the case, considering,' among other factors, 'the importance of
7  the discovery in resolving the issues, and whether the burden or expense of the proposed
8  discovery outweighs its likely benefit.'" *Hausauer v. City of Mesa*, No. CV-15-01796-
9  PHX-ROS, 2017 WL 6515963, at *1 (D. Ariz. Apr. 5, 2017) (quoting Fed. R. Civ. P.
10  26(b)).

11  The party asserting privilege has the burden of establishing that it exists. *Brooks v.
12  San Joaquin*, 275 F.R.D. 528, 530 (E.D. Cal. 2011).  When a party invokes a privilege,
13  they must "describe the nature of the documents, communications, or tangible things not
14  produced or disclosed—and in doing so in a manner that, without revealing information
15  itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P.
16  26(b)(5)(A)(ii).  This is also known as a privilege log. *James River Ins. Co. v. Thompson*,
17  No. CV-20-01052-PHX-DGC, 2021 WL 5771148, at *4 (D. Ariz. Dec. 6, 2021).  Further,
18  the federal rules specifically state that if a party objects to portions of a Rule 34 document
19  production, it must "permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C).  In other
20  words, where a party claims a privilege, they must produce the non-privileged portions of
21  the requested documents and list the rest in a privilege log. *James River Ins.*, 2021 WL
22  5771148, at *4.

23  **III.  DISCUSSION**
24  **A. Plaintiffs' Motion to Quash**
25  As an initial matter, the Court must determine whether Plaintiffs have standing to
26  quash the Subpoena.  "A party normally does not have standing to seek to quash a subpoena
27  issued to a nonparty unless it has some personal right or privilege with regard to the
28  documents sought." *Ocean Garden Prod. Inc. v. Blessings Inc.*, No. CV-18-00322-TUC-

RM, 2020 WL 4933646, at *2 (D. Ariz. Aug. 24, 2020). However, if a party "can show it has a personal right or privilege regarding the subject matter of the subpoena," it may move to quash a subpoena served on another party. *Blotzer v. L-3 Commc'ns Corp.*, 287 F.R.D. 507, 509, at *2 (D. Ariz. 2010); *Delta Mech., Inc. v. Garden City Group, Inc.*, No. 2:05-cv-01095 JWS, 2010 WL 2609057, *2 (D. Ariz. June 28, 2010) (finding that a party "ha[d] standing to challenge the subpoena issued to [a non-party law firm] to the extend they seek to enforce the attorney-client privilege and work-product privilege").

As Defendants correctly note, standing exists when a party claims privilege or a privacy interest in the documents being sought. *See Briggs*, 2021 WL 1192819, at *2. Here, it is imperative that Plaintiffs assert and establish that a privilege for standing to exist. *See Ocean Garden Prod.*, 2020 WL 4933646, at *2.

In its prior Order, the Court found that Plaintiffs waived the attorney-client privilege and the work-product privilege by disclosing the private investigator documents to Defendants and third parties via its Amended Complaint. (Doc. 96 at 7–8.) Now, Plaintiffs argue that the Court's prior Order limited their waiver to information gathered prior to filing its Amended Complaint. (Doc. 115 at 11.) In response, Defendants argue that Plaintiffs' waiver amount to a subject matter waiver that destroyed privilege on the entire Stumar investigation directed at Defendants. (Doc. 121 at 8.)

There are several ways parties may waive the attorney-client privilege or work-product privilege. *See United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020) (citing *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1126 (9th Cir. 2012)). First, express waiver destroys the privilege where a party "voluntarily disclos[es] privileged documents to third parties." *Id.* (citation omitted); *see also B.H. ex rel. Holder v. Gold Fields Mining Corp.*, 239 F.R.D. 652, 655 (N.D. Okla. 2005) (recognizing waiver can occur "where a party injects the substance of work-product into litigation or other adversary proceedings or makes a partial disclosure of work-product while seeking to maintain protection of work-product related to the same subject" (internal citation omitted)). In contrast, waiver by implication, or implied waiver, is based on the rule that "a litigant

waives the attorney-client privilege by putting the lawyer's performance at issue during the course of litigation." *Sanmina Corp.*, 968 F.3d at 1117 (quoting *Bittaker v. Woodford*, 331 F.3d 715, 718 (9th Cir. 2003)); *see also Weil v. Investment/Indicators, Research & Management, Inc.*, 647 F.2d 18, 24 (9th Cir. 1981) ("[T]he federal cases presuppose that waiver may be effected by implication."). Implied waivers rest upon the "fairness principle," which prevents a party from "using the privilege as both a shield and sword." *Sanmina Corp.*, 968 F.3d at 1117 (quoting *Bittaker*, 331 F.3d at 719). The "fairness principle . . . animates the concept of subject matter waiver, in which 'voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communication on the same subject.'" *Id.* (quoting *Weil*, 647 F.2d at 24); *see also United States v. Plache*, 913 F.2d 1375, 1380 (9th Cir. 1990) (finding disclosure of a privileged communication waived the privilege "on all other communications on the same subject"); *Genentech, Inc. v. U.S. Int'l Trade Comm'n*, 122 F.3d 1409, 1416 (Fed. Cir. 1997); *In re Grand Jury Proceedings*, 78 F.3d 251, 255 (6th Cir. 1996); *In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1314 n.18 (7th Cir. 1984).

Plaintiffs' arguments are best understood as follows: (1) their waiver was not a subject matter waiver; and (2) any waiver should be limited in temporal scope, as Defendants' request only implicated communications with Stumar that pre-date filing the Amended Complaint. The disclosed information, including its purpose and scope, informs whether a party suffered a subject matter waiver. *See Sanmina Corp.*, 968 F.3d 1107, 1117 (finding the content, scope, and purpose of a disclosed memorandum amounted to subject matter waiver); *Plache*, 913 F.2d at 1380 (finding that testimony to a grand jury about conversations with counsel waived the attorney-client privilege as to all related communications on that subject). The Court's previous findings are illuminative here. The Court reasoned that Plaintiffs had waived any claimed privileges regarding the Stumar investigation because they "disclos[ed] such information to Defendant[s] and third parties via its Amended Complaint." (Doc. 96 at 7.) After all, the information sought formed "the backbone of [Plaintiffs'] factual allegations against Defendants." (*Id.* at 8.) Moreover,

because Plaintiffs intend to call Xhoxhaj as a witness, and their Amended Complaint contains large portions of her findings, the Court considered the information from the report and communications to undoubtedly be on the same subject. (*Id.*)

Nevertheless, Plaintiffs maintain that their waiver did not amount to a subject matter waiver because Defendants' Request for Production and the Court's prior Order was limited to the investigation occurring prior to the filing of this lawsuit. (Doc. 135 at 5–6.) Defendants requested "all communication, including email, letters and texts between [Plaintiffs] and the undercover investigator referenced in your Amended Complaint." (Doc. 68-2 at 5.) Plaintiffs interpret the "referenced in your Amended Complaint" language as a production request for information related only to allegations in the Amended Complaint. Not so. The Court found that Plaintiffs "indisputably 'inject[ed]' the substance of potential work-product into this litigation" and that "it is only fair the Defendants that *all* of the information surrounding Xhoxhaj's communications and report be considered together." (Doc. 96 at 8 (emphasis added).) This finding is still insofar as Plaintiffs continue to communicate with Stumar regarding the investigation of Defendants and still intend to call Xhoxhaj as a witness at trial. (*See* Doc. 115 at 11; Doc. 121-2 at 1.) Thus, contrary to Plaintiffs' contention, the Court did not order Plaintiffs to produce only documents that were referenced in their Amended Complaint but ordered them to produce documents and communications between Plaintiffs and Stumar related to the investigation of Defendants. (*Id.* at 9.) And in fact, Defendants Subpoena served on Stumar, although more detailed than the request served on Plaintiffs, requests documents with the same information that this Court ordered Plaintiffs to produce. It is therefore without merit to assert that the documents Defendants now request from Stumar pertaining to its investigation of Defendants are of a different subject matter of those referenced in the Amended Complaint.

Plaintiffs also argue that their waiver must be confined to investigation information obtained prior to this lawsuit. (Doc. 135 at 7.) In other words, Plaintiffs seek to limit the temporal scope of their waiver. Courts in the Ninth Circuit have generally refused to

prescribe a temporal scope to waiver when subject matter waiver has occurred. *Bd. of Trs. of Leland Stanford Junior Uni. v. Roche Molecular Sys., Inc.*, 237 F.R.D. 618, 626–27 (N.D. Cal. 2006) (noting that a party repeatedly filing, or putting at issue, otherwise privileged information constitutes a waiver that does not limit the temporal scope); *id.* at 627 ("Once a waiver has occurred, 'it is inappropriate to limit waiver on a temporal basis.'" (citation omitted)); *see also McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 765 F. Supp. 611, 613 (N.D. Cal. 1991) (noting that after waiver occurs, "in light of policy considerations, it is not appropriate thereafter for the waiving parties or judge to limit the waiver on a temporal basis"). As discussed, Plaintiffs undoubtedly waived their attorney-client privilege and the work-product privilege by injecting the substance of the reports and communications into litigation through their Amended Complaint. *See Gold Fields Mining Corp.*, 239 F.R.D. at 655. And, as this Order explains, the extent of Plaintiffs' waiver was to the subject matter of the Stumar investigation, not simply the portions occurring prior to filing suit. (Doc. 96 at 7–8.) Thus, Plaintiffs cannot engage in a piecemeal disclosure premised on what it considers to be waiver limited in temporal scope. *See Roche Molecular Sys.*, 237 F.R.D. at 626.

Because Plaintiffs have waived the attorney-client privilege and work-product privilege, it is doubtful that they have standing to move to quash the Subpoena. Even if Plaintiffs had standing, the Subpoena does not require Stumar to open its vaults and allow Defendants to abscond with a lion's share. It merely requests Stumar disclose documents over which Plaintiffs knew it had waived privilege.[1]

## B. Defendants' Motion to Compel

Defendants embedded a Motion to Compel in their response to Plaintiffs' Motion to Quash. (Doc. 121.) Therein, Defendants move to compel Plaintiffs and Stumar to produce all documents and communications relating to Stumar's investigation of

---

[1] Because Plaintiffs lack standing to quash the Subpoena, they likewise lack standing to argue about the breadth of the requests. *Jiae Lee v. Dong Yeoun Lee*, No. CV 19-8814 JAK (PVCx), 2020 WL 7890868, *5 (C.D. Cal. Oct. 1, 2020) ("[O]nly the party to which the subpoena is directed has standing to object to the request on the grounds that they are irrelevant, vague, overbroad, duplicative, unduly burdensome, etc.")

Defendants. (Doc. 121 at 11.) As to Plaintiffs, the Motion to Compel is moot, as they are required to disclose the communications at issue under this Court's prior Order. (Doc. 96.) The Court summarily denies Defendants' Motion as to Stumar because it is lodged against Stumar in response to Plaintiffs' Motion. If Stumar refuses to comply with the Subpoena after learning that the Motion to Quash was denied, then Defendants must file and serve a Motion to Compel on the subpoenaed party.

## IV.     CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** denying Plaintiffs' Motion to Quash Defendants' Subpoena Duces Tecum to Stumar Investigations (Doc. 115).

**IT IS FURTHER ORDERED** denying, without prejudice, Defendants' Motion to Compel Plaintiffs and Stumar to produce all documents and communications relating to Stumar's investigation of Defendants (Doc. 121).

Dated this 23rd day of October, 2024.

Honorable Susan M. Brnovich
United States District Judge